**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MICHAEL DEINNOCENTIS, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>              v.<br><br>DROPBOX, INC., ANDREW W. HOUSTON, AJAY V. VASHEE, TIMOTHY J. REGAN, ARASH FERDOWSI, ROBERT J. MYLOD, JR., DONALD W. BLAIR, PAUL E. JACOBS, CONDOLEEZZA RICE, R. BRYAN SCHREIER, MARGARET C. WHITMAN, SEQUOIA CAPITAL XII, L.P., SEQUOIA CAPITAL XII PRINCIPALS FUND, LLC, SEQUOIA TECHNOLOGY PARTNERS XII, L.P., and SC XII MANAGEMENT, LLC,<br><br>                              Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933<br><br><u>DEMAND FOR JURY TRIAL</u> |

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Plaintiff Jason Michael Deinnocentis ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Dropbox, Inc. ("Dropbox" or the "Company"), Company press releases and earning calls, and analyst and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased Dropbox Class A common stock pursuant or traceable to the Registration Statement (defined below) issued in connection with the Company's March 23, 2018 initial public offering (the "IPO").  This action asserts claims under the Securities Act of 1933 ("Securities Act") against Dropbox, the Company's senior executive officers and directors, and venture capital sponsors of the IPO.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

4.     Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b).  Dropbox is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

5.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly,

2

1
2

used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

3

### THE PARTIES

4
5

6.      Plaintiff acquired Dropbox Class A common stock pursuant and/or traceable to the Registration Statement and was damaged thereby.

6
7

**Dropbox Defendants**

8
9
10

7.      Dropbox is a Delaware corporation with principal executive offices located at 1800 Owens Street, Suite 200, San Francisco, California 94158.  Dropbox securities trade in an efficient market on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "DBX."

11
12
13
14

8.      Defendant Andrew W. Houston ("Houston") is a co-founder of Dropbox and served as its Chief Executive Officer ("CEO") and Chairman of the Board at the time of the IPO.  Defendant Houston sold over 2.3 million Dropbox shares in the IPO for nearly $49 million in gross offering proceeds.

15
16

9.      Defendant Ajay V. Vashee ("Vashee") served as the Chief Financial Officer ("CFO") of Dropbox at the time of the IPO.

17
18

10.      Defendant Timothy J. Regan ("Regan") served as Chief Accounting Officer ("CAO") of Dropbox at the time of the IPO.

19
20
21
22

11.      Defendant Arash Ferdowsi ("Ferdowsi") is a co-founder of Dropbox and its former Chief Technology Officer.  He served as a director of Dropbox at the time of the IPO.  Defendant Ferdowsi sold over 2.3 million Dropbox shares in the IPO for nearly $49 million in gross offering proceeds.

23
24

12.      Defendant Robert J. Mylod, Jr. ("Mylod") served as a director of Dropbox at the time of the IPO.

25
26

13.      Defendant Donald W. Blair ("Blair") served as a director of Dropbox at the time of the IPO.

27
28

14.      Defendant Paul E. Jacobs ("Jacobs") served as a director of Dropbox at the time of the

3

IPO.

15.     Defendant Condoleezza Rice ("Rice") served as a director of Dropbox at the time of the IPO.

16.     Defendant R. Bryan Schreier ("Schreier") served as a director of Dropbox at the time of the IPO.

17.     Defendant Margaret C. Whitman ("Whitman") served as a director of Dropbox at the time of the IPO.

18.     Defendants Houston, Vashee, Regan, Ferdowsi, Mylod, Blair, Jacobs, Rice, Schreier, and Whitman are collectively referred to herein as the "Individual Defendants." Each of the Individual Defendants signed the Registration Statement.  As directors, executive officers and/or major shareholders of the Company, the Individual Defendants participated in the solicitation and sale of Dropbox stock in the IPO for their own benefit and the benefit of Dropbox.  The Individual Defendants were key members of the IPO working group and executives of Dropbox who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

**The Sequoia Capital Defendants**

19.     Defendant Sequoia Capital XII, L.P. ("SC XII") held over 76.1 million shares of Dropbox Class B common stock at the time of the IPO.

20.     Defendant Sequoia Capital XII Principals Fund, LLC ("SC XII PF") held over 8.1 million shares of Dropbox Class B common stock at the time of the IPO.

21.     Defendant Sequoia Technology Partners XII, L.P. ("STP XII") held over 2.8 million shares of Dropbox Class B common stock at the time of the IPO.

22.     Defendant SC XII Management, LLC is the general partner of SC XII and STP XII and the managing member of SC XII PF.  It was thus deemed to share beneficial ownership of the Dropbox

shares held by SC XII, STP XII and SC XII PF at the time of the IPO, making it the largest outside shareholder of the Company.

23.     Defendants SC XII, SC XII PF, STP XII, and SC XII Management, LLC are collectively referred to herein as the "Sequoia Capital Defendants."  The Sequoia Capital Defendants are related entities that are part of the Sequoia Capital venture capital firm located in Menlo Park, California.  The Sequoia Capital Defendants were early investors in Dropbox and are controlling persons of Dropbox due to their large equity stake in the Company, certain shareholder agreements that they have entered into with the Company, and their influence over the Board, including through their representation on the Board by Defendant Schreier, a Sequoia Capital partner.  Before and after the IPO, the Sequoia Capital Defendants controlled 25% of the voting shares of Dropbox and were in league with other large shareholders and Company insiders to further increase their control over Dropbox and its affairs.  The Sequoia Capital Defendants enjoyed significant rights by way of an Investors' Rights Agreement, including, for example, the right to force Dropbox to file the Registration Statement so that the IPO could be completed.  In addition, the Sequoia Capital Defendants were party to a Voting and Drag-Along Agreement with other large investors immediately prior to the IPO that allowed them to exercise even greater control and influence over the Company and its actions.

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Dropbox is a software and technology Company based in San Francisco, California.  Its Class A common stock trades on the NASDAQ under the ticker symbol "DBX."  The Company maintains a multi-share class voting structure designed to concentrate voting control in the hands of Company insiders and early investors, such as the Defendants, while transferring a disproportionate amount of the economic risk of investing in the Company onto outside investors.  Class A shares, which were sold in the IPO, have one vote each, while Class B shares, which are held by Company insiders and early stage

5

investors, have ten votes each.[1]   Following the IPO, outstanding shares of Class B common stock represented approximately 98.1% of the voting power of Dropbox's outstanding capital stock.

25.     Dropbox is most known for its eponymous file-sharing service.  Dropbox allows users to store and share files over the Internet.  Customers can upload photos, videos and other files from cameras, tablets, SD cards or smart phones using the Company's platform.  Dropbox operates a "freemium" business model whereby it offers its entry level products and services free of charge in the hope that customers will upgrade to paid products and services.  The Company's success has largely been the product of organic and viral adoption, rather than large marketing or sales efforts, which has allowed the Company to scale relatively efficiently.  Over 90% of the Company's revenues were derived from self-serve channels, meaning users who purchase a subscription through Dropbox's app or website.

26.     The Company had experienced significant growth since its founding in 2007.  As of December 31, 2017, Dropbox had accumulated over 500 million registered users, making it one of the largest dedicated file-sharing providers in the world.  The overwhelming majority of these users did not pay for the Company's products.  At the time, only 11 million Dropbox users were paying users, representing approximately 2.2% of all registered users.  However, this figure represented a rapid increase in the number of paying users in the lead-up to the IPO.  In 2017, the number of paying users had increased by 25% year over year, and in 2016 the number of paying users had increased by 35% year over year.

27.     As the Company increased the monetization of its massive user base, its revenues grew in tandem.  For fiscal 2016, Dropbox generated $845 million in annual revenues, representing a 40% year-over-year increase.  Similarly, for fiscal 2017, Dropbox generated over $1.1 billion in annual revenues, representing a 31% year-over-year increase.  The Company has experienced net losses in every year it

---

[1] The Company also has Class C shares, which have no voting rights but can be converted into Class A shares under certain circumstances.  The Company had no Class C shares outstanding immediately after the IPO.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

has been in operation and needed to generate substantial and cost-effective revenue growth to turn a profit.   Thus, it was critical to investors that Dropbox continue its torrid revenue growth rate and substantially increase the number of paid users from its registered user base to achieve positive earnings and generate profits.

28.     Adding to the importance of Dropbox's monetization efforts, numerous other competitors had entered the field with similar file-sharing products, many of which were themselves free or offered paid subscriptions for similar services at competitive rates.   These competitors included tech behemoths such as Amazon, Apple, Google, and Microsoft, who could integrate file-sharing and collaboration platforms with their other product offerings, and niche service providers such as Box, which specialized in deployments by large enterprises.   However, the Company claimed to have several competitive advantages that would allow it to effectively implement its growth plans following the IPO despite these challenges.

29.     On February 23, 2018, Dropbox filed a registration statement for the IPO on Form S-1, which, after several amendments, was declared effective on March 22, 2018 (the "Registration Statement").   On March 23, 2018, Dropbox filed the prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement.   By way of the Registration Statement, Defendants offered and sold 41.4 million Class A shares at $21 per share for over $869 million in gross offering proceeds, which included the full exercise of underwriters' over-allotment option to sell an additional 5.4 million shares.   In addition, the Company conducted a private offering of Class A stock concurrently with the IPO in which it sold over 4.7 million shares to an institutional investor for an additional $100 million in gross proceeds.   Numerous Company insiders, including certain of the Individual Defendants, also sold stock in the IPO, raking in more than $184 million after applicable underwriting discounts.   Underwriters received more than $38.6 million in underwriting discounts and

7

fees from the IPO proceeds, and several, including lead underwriters Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC, received tens of millions of dollars more as a result of payments by Dropbox towards a revolving credit facility maintained by these investment banks.

**Materially False and Misleading Statements Issued in the Registration Statement**

30.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, the Registration Statement claimed that a significant proportion of the Company's registered user base was primed for monetization.  It claimed that 300 million of the Company's 500 million registered users had unique characteristics making them likely to be monetized over time, purportedly presenting a "significant opportunity to increase [the Company's] revenues."  The Registration Statement stated the following, in pertinent part, in a section entitled "Growth Strategy":

> We designed Dropbox to be easy to try, use, and buy. Anyone can create an account and be up and running in minutes. ***We believe that our current registered user base represents a significant opportunity to increase our revenue. We estimate that approximately 300 million of our registered users have characteristics — including specific email domains, devices, and geographies — that make them more likely than other registered users to pay over time.*** Substantially all of our paying users share at least one of these characteristics. We reach our users through in-product notifications on our website and across hundreds of millions of actively connected devices without any external marketing spend. We define an actively connected device as a desktop, laptop, phone, or tablet on which our app has been installed, and from which our app has been launched, and made a request to our servers at least once in the most recent quarter.[2]

31.     The Registration Statement also described Dropbox's business model as involving the "[i]ncrease conversion of registered users to [the Company's] paid subscription plans."  It highlighted the Company's increase of paid users from 6.5 million users in 2015 to 11 million users by 2017, representing 69% growth over two years.  It continued, in pertinent part:

---

[2] Emphasis has been added unless otherwise noted.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

*Dropbox Basic, the free version of our product, serves as a major funnel for conversions to our paid subscription plans.* It fosters brand awareness, product familiarity, and organic adoption of Dropbox. When they purchase a subscription, our users gain access to premium features such as richer collaboration tools, administrative controls, and advanced security features, as well as larger storage capacity. *We believe that our current registered user base represents a significant opportunity to increase our revenue. We estimate that approximately 300 million of our registered users have at least one characteristic that we believe makes them more likely than other registered users to pay over time. These characteristics include: (i) having signed up for Dropbox with a business domain email; (ii) having used specific types of computers or mobile devices to access our platform; or (iii) having signed up from certain countries in more developed markets in North America, Europe, and Asia Pacific, and having linked a desktop or laptop to our platform.* Substantially all of our paying users share at least one of these characteristics.

* * *

During the fourth quarter of 2017, hundreds of millions of devices — including computers, phones, and tablets — were actively connected to the Dropbox platform. *Because our users have installed Dropbox on many devices, we have multiple opportunities to inform them about new product experiences and premium subscription plans via in-product notifications, without any external marketing spend.*

*Our scale enables us to experiment and optimize the conversion marketing process. We run hundreds of product tests and targeted marketing campaigns simultaneously, and analyze usage patterns within our network to continually improve our user targeting and marketing messaging.*

32.     Similarly, the Registration Statement claimed that Dropbox was positioned to "[u]pgrade [its] existing customers," stating, in pertinent part:

We offer a range of paid subscription plans, from Plus and Professional for individuals, to Standard, Advanced, and Enterprise for teams. We analyze usage patterns within our network and run hundreds of targeted marketing campaigns to encourage paying users to upgrade their plans. For example, we prompt individual subscribers who collaborate with others on Dropbox to purchase our Standard or Advanced plans for a better team experience. In 2017, over 40% of new Dropbox Business teams included a member who was previously a subscriber to one of our individual paid plans.

*We believe that a large majority of individual customers use Dropbox for work, which creates an opportunity to significantly increase conversion to Dropbox Business team offerings over time.* We also encourage existing Dropbox Business teams to purchase additional licenses or to upgrade to premium subscription plans.

33.     The Registration Statement also claimed that Dropbox offered "[a]ttractive [c]ohort [e]conomics," meaning that registered users consistently increased spending and converted to paying

9

users over time.  It highlighted a January 2015 cohort, which had purportedly "doubled in less than three years" its paid subscription amounts, as "representative of a typical cohort in recent periods."   The Registration Statement provided the following, in pertinent part:

**Our Attractive Cohort Economics**

We define a cohort as all registered users who signed up for Dropbox in a given period of time. We track the total monthly subscription amount of all paying users in each cohort as of the end of the month, or the monthly subscription amount. For paying users who opt for our monthly plans, the monthly subscription amount is equal to the price of the monthly plan. For paying users who opt for our annual plans, which a majority of our users do, the monthly subscription amount is equal to the price of the annual plan divided by twelve. These amounts increase as more registered users in each cohort convert to paying users, paying users upgrade to premium subscription offerings, and team administrators purchase additional licenses. These amounts decrease when paying users terminate their subscriptions, downgrade their subscriptions to a lower tier, or team administrators reduce the number of licenses on their subscription plans. ***We continuously focus on adding new users and increasing the value we offer to them. As a result, each cohort of new users typically generates higher subscription amounts over time.***

***The chart below reflects the monthly subscription amount from January 2013 to December 2017 of all paying users in each quarterly cohort, including those who signed up for our platform prior to 2013.***

10



We continuously focus on adding new users and increasing the value we offer to them. ***As a result, each cohort of new users typically generates higher subscription amounts over time. For example, the monthly subscription amount generated by the January 2015 cohort doubled in less than three years after signup. We believe this cohort is representative of a typical cohort in recent periods.***

Moreover, as we continue to innovate and optimize our go-to-market strategy, ***we have successfully increased monetization for subsequent cohorts.*** Comparing January cohorts from the last three years, at virtually every point in time after signup, the January 2017 cohort generated a higher monthly subscription amount than the January 2016 cohort, which in turn generated a higher monthly subscription amount than the January 2015 cohort.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1
2
3
4
5
6
7
8
9
10
11



12      34.     The statements in ¶¶ 30-33 were materially false and misleading at the time of the IPO,

13  because, as was demonstrated internally by data analytics employed by the Company at the time of the

14  IPO, the Company had materially overstated its ability to monetize its user base.  Less than 1% of the

15  "300 million" registered users were likely to be added to the Company's paying user base in the year

16  following the IPO, and internal Dropbox data had demonstrated that the Company was tracking behind

17  its budgeted monetization targets.   The Company's vaunted "product tests," "targeted marketing

18  campaigns," and ability to "analyze usage patterns" had provided Defendants with internal information

19  demonstrating that only a tiny fraction of Dropbox's registered user base would ever convert to paid

20  subscriptions, and in fact the vast majority of these users had *already* done so.  The purportedly valuable

21  "characteristics" highlighted by the Registration Statement thus had *de minimis* impact on whether

22  registered users would pay for the Company's services.  The Company was on track to convert only 1.7

23  million registered users to paying users in all of 2018, or approximately 0.6% of the 300 million

24  advertised figure, which represented a substantial deceleration from paying user additions in the periods

25  highlighted in the Registration Statement.  The lack of competitively distinguishing characteristics

26
27
28

12

offered by Dropbox's premium tiers and the glut of comparable or superior file-sharing services meant that the vast majority of registered users were not positioned to migrate to the Company's paid subscription services.  In addition, the basic free tiers offered by the Company were sufficient for the vast majority of registered users' needs, and as a result these users had no incentive to upgrade their accounts.

35.    In addition, the Registration Statement highlighted the rapid pace of Dropbox's revenue growth leading up to the IPO, while failing to disclose worsening revenue trends that were negatively impacting the Company at the time of the IPO and the operational and competitive headwinds causing these trends.  For example, the Registration Statement stated that Dropbox's "revenue was $603.8 million, $844.8 million, and $1,106.8 million in 2015, 2016, and 2017, respectively, representing an annual growth rate of 40% and 31%, respectively."  It further claimed that the Company's products had "become invaluable to [its] users" and that "the need for [the Dropbox] platform will ***continue to grow*** as teams become more fluid and global, and content is increasingly fragmented across incompatible tools and devices."  The Registration Statement also represented that the "popularity of [the Dropbox] platform drives viral growth, which has allowed us to scale rapidly and efficiently."  It stated that the Company "believe[ed its] business model c[ould] continue to scale without a large outbound sales force."  In addition, the Registration Statement listed several "industry trends in [Dropbox's] favor" — such as an increasing need for content collaboration and dispersed workforces — and highlighted the Company's purported "[g]rowth [s]trategy," which included "[i]ncrease adoption and paid conversion."  The Registration Statement claimed that Dropbox had added 100 million users since the beginning of 2017, representing approximately 25% annual growth leading up to the IPO.

36.    The Registration Statement further claimed that Dropbox's unique business model and competitive advantages led to "linear and predictable revenue generation."  It also stated that Dropbox intended "to continue driving organic adoption by individual users and Dropbox Business teams through

[the Company's] self-serve model, and supplement this with [its] outbound sales force."  Similarly, it represented that the Company intended "to continue to make focused investments to increase revenue and scale operations to support the growth of our business."  The Registration Statement stated, in pertinent part:

**Our Predictable Subscription Revenue**

Taken together, ***our subscription revenue model, consistent cohort trends, self-serve monetization engine, and large and diversified global customer base resulted in linear and predictable revenue generation*** over the duration of the quarters presented in the chart below.



37.    Moreover, the Registration Statement highlighted competitive factors, but claimed that the Company would "compete favorably across these factors and [was] largely unhindered by legacy constraints."  The principal competitive factors highlighted by the Registration Statement in which Dropbox purportedly compared favorably with its peers included: "user-centric design; ease of adoption and use; scale of user network; features and platform experience; performance; brand; security and

14

privacy; accessibility across several devices, operating systems, and applications; third-party integration; customer support; continued innovation; and pricing."

38.     The statements in ¶¶ 35-37 were materially false and misleading at the time of the IPO because Dropbox was tracking below its internal revenue and monetization targets.  At the time of the IPO, Dropbox was already experiencing heightened pressures on its revenue growth as competitors such as Amazon, Microsoft, and Google had launched alternative products at competitive price points, which had undercut the Company's ability to grow its revenues.  The inability to monetize the Company's massive user base had also materially impaired its revenue growth trends, as the vast majority of Dropbox's existing registered user base would never be monetized and the majority of these users had *already* switched to paid subscriptions.  The Company's "fremium" model, reliance on self-service subscriptions, lack of a significant sales force, and dependence on individual users to grow revenues meant that the vast majority of its registered user base could not be converted to paying users to continue to accelerate revenue growth.  Furthermore, the Company was limited in its ability to increase subscription payments by current paying users because of the availability of more economical alternatives and/or offerings provided by competitors that were integrated with those competitors' other software and services.  In addition, the Company's addition of new registered users had dramatically slowed, handicapping the Company's so-called "major funnel" for revenue growth.  As a result, the Company's revenue growth was not predictable and linear, but was decelerating and poised to rapidly decelerate further, as the Company no longer maintained the ability to rapidly increase revenues at its historic clip. At the time of the IPO, Dropbox was on track to grow revenues by only 26% year over year for 2018 and by only 18% for 2019 (this despite several growth initiatives and the acquisition of e-signature startup HelloSign to grow revenues), compared with more than 31% revenue growth in the year immediately preceding the IPO.

39.    In addition, the Registration Statement provided several generic, boilerplate risk disclosures that misleadingly described contingent future risks and failed to disclose that the risks so described had *already* occurred and *were then* occurring, thereby adversely impacting the Company's business and operations.  For example, the Registration Statement stated, "[o]ur future growth *could* be harmed *if* we fail to attract new users or convert registered users to paying users," but, while it recognized the material importance to investors of paid user conversion, the Registration Statement failed to disclose that Dropbox's growth was *already* severely hampered by its inability to grow its user base or monetize customers away from the fremium model as indicated by internal data collected by the Company. Similarly, the Registration Statement stated, "[o]ur business depends on our ability to retain and upgrade paying users, and any decline in renewals or upgrades *could* adversely affect our future results of operations."  While this statement acknowledged the material importance to investors of monetizing the Company's user base, it misleadingly omitted current and historical trends that were *already* adversely impacting Dropbox's business and operations.  Likewise, the Registration Statement stated "[o]ur revenue growth rate has declined in recent periods and may continue to slow in the future," but failed to disclose that the Company's own internal analyses were showing that revenue growth deceleration was *then occurring*.  For example, in the first quarter of 2019 — the same quarter in which Dropbox conducted the IPO — the Company's revenue growth had decelerated to 27.6% year over year from 31% in 2017, and was primed to decelerate even further in subsequent quarters.

40.    Moreover, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), required disclosure of any known events or uncertainties that had caused, or were reasonably likely to cause, Dropbox's disclosed financial information not to be indicative of future results.  The failure of the Registration Statement to disclose the adverse trends discussed herein that were impacting the Company's revenues and monetization of its registered users violated Item 303.  The omitted material facts alleged

herein were reasonably expected to (and did) have an unfavorable impact on the Company's sales, revenues, and income from continuing operations.

41.     In addition, Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105 ("Item 105"), required, in the "Risk Factors" section of the Registration Statement, a discussion of the most significant factors that made the offering risky or speculative and that each risk factor adequately describe the risk.  Because the omitted material facts alleged herein were not disclosed, as well as the consequent material adverse effects on the Company's future results and prospects, Defendants violated Item 105.

### The Truth Begins to Emerge

42.     On August 27, 2019, Dropbox stock closed at $17.53 per share, representing a decline of **more than 16%** from the IPO price.  Shockingly, in connection with its second quarter 2019 earnings report, Dropbox still claimed to have "more than 500 million registered users" as of June 2019, indicating that the Company had experienced essentially no significant registered user growth **since December 31, 2017** — months prior to the IPO.  The Company had only converted an additional 2.6 million paid users in the year-and-a-half since the IPO, representing an annualized post-IPO growth rate of only 15% and less than 1% of the "300 million" figure provided in the Registration Statement.  Similarly, the Company's revenue growth rate had dramatically decelerated to only 18% for 2019, a sharp decline from the 40% and 31% annual growth rates highlighted in the Registration Statement.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Dropbox Class A common stock pursuant or traceable to the Registration Statement issued in connection with the IPO (the "C1ass").  Excluded from the Class are Defendants and their families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which

17

Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Dropbox stock is actively traded on the NASDAQ and 41.4 million of shares of Dropbox stock were sold in the IPO.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Dropbox or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)     whether Defendants violated the Securities Act;

b)     whether statements made by Defendants to the investing public in the Registration Statement misrepresented material facts about the business and operations of Dropbox; and

c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

18

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

**(Violations of Section 11 of the Securities Act Against All Defendants other than the Sequoia Capital Defendants)**

49.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

50.     This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants other than the Sequoia Capital Defendants.

51.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that the Individual Defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

52.     The Registration Statement was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     Dropbox is the registrant and issuer for the stock sold in the IPO.  As issuer of the stock, Dropbox is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Registration Statement.

54.     The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

55.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

56.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a

person who violated, Section 11 of the Securities Act.

57.     Plaintiff acquired Dropbox stock pursuant and/or traceable to the Registration Statement for the IPO.

58.     Plaintiff and the Class have sustained damages.  The value of Dropbox stock has declined substantially subsequent to and because of Defendants' violations.

59.     At the time of their purchases of Dropbox stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff filed this complaint.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff filed this complaint.

## SECOND CAUSE OF ACTION

### (Violations of Section 15 of the Securities Act Against the Individual Defendants and the Sequoia Capital Defendants)

60.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

61.     This Cause of Action is brought pursuant to Section 15 of the Securities Act against the Individual Defendants and the Sequoia Capital Defendants.

62.     The Individual Defendants were each control persons of Dropbox by virtue of their positions as directors, senior officers, major shareholders, and/or authorized representatives of Dropbox. Defendants Houston and Ferdowsi alone had over 42% of the voting control of the Company prior to the IPO and continued to hold over 41% voting control after the IPO.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Dropbox.

63.     The Individual Defendants had a financial interest in taking the Company's stock public, as alleged herein, and some, such as Defendants Houston and Ferdowsi, sold millions of dollars' worth of their personal Dropbox shares in the IPO.  The Individual Defendants were each critical to effecting the IPO, based on their signing or authorization of the signing of the Registration Statement, by voting (including voting their shares) to execute the IPO, and by having otherwise directed through their authority the processes leading to the successful execution of the IPO as executives and/or directors of Dropbox.

64.     The Sequoia Capital Defendants were also control persons of Dropbox by virtue of their ownership of a substantial equity interest in the Company before, during, and after the IPO; their influence over Dropbox's management and Board (including by way of their appointment of defendant Schreier, their Board nominee and a partner at Sequoia Capital); and the fact that they were party to several shareholder agreements that provided them with outsized influence and control over the Company and its actions.  For example, the Sequoia Capital Defendants owned approximately 25% of Dropbox's voting shares prior to the IPO, making them the Company's largest outside shareholders, and were previously party to a Voting and Drag-Along Agreement with other large shareholders pursuant to which they agreed to vote their shares in concert in certain matters, such as the election of directors, which effectively gave them voting control over the Company immediately prior to the IPO.  The Sequoia Capital Defendants were also parties to an Investors' Rights Agreement that gave them the right to force Dropbox to prepare and file the Registration Statement and conduct the IPO, which the Company did, and other special rights, such as a right of first refusal.

65.     Dropbox's multi-class voting structure further concentrated power over the Company and its affairs in the hands of the Individual Defendants and Sequoia Capital Defendants, as stated in the Registration Statement:

21

*The multi-class structure of our common stock will have the effect of concentrating voting control with those stockholders who held our capital stock prior to the completion of this offering and the concurrent private placement, and it may depress the trading price of our Class A common stock.*

Our Class A common stock, which is the stock we are offering in this offering and the concurrent private placement, has one vote per share, our Class B common stock has ten votes per share, and our Class C common stock has no voting rights, except as otherwise required by law. Following this offering and the concurrent private placement, our directors, executive officers and holders of more than 5% of our common stock, and their respective affiliates, will hold in the aggregate 75.7% of the voting power of our capital stock (including the Co-Founder Grants and the Co-Founder Voting Agreements). We are including the Co-Founder Grants in this calculation since they are legally issued and outstanding shares of our Class A common stock and our co-founders are able to vote these shares immediately upon grant and prior to their vesting. Because of the ten-to-one voting ratio between our Class B and Class A common stock, the holders of our Class B common stock collectively will continue to control a majority of the combined voting power of our common stock and therefore be able to control all matters submitted to our stockholders for approval so long as the shares of Class B common stock represent at least 9.1% of all outstanding shares of our Class A and Class B common stock. This concentrated control will limit or preclude your ability to influence corporate matters for the foreseeable future, including the election of directors, amendments of our organizational documents and any merger, consolidation, sale of all or substantially all of our assets, or other major corporate transaction requiring stockholder approval. In addition, this may prevent or discourage unsolicited acquisition proposals or offers for our capital stock that you may feel are in your best interest as one of our stockholders.

(Emphasis in original.)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Awarding compensatory damages in favor of the Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 4, 2019

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, JASON MICHAEL DEINNOCENTIS , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Dropbox, Inc. ("Dropbox" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Dropbox securities at the direction of plaintiffs' counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a class of investors who purchased or acquired Dropbox securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Dropbox securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

{00342489;1 }

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed  25 - SEPTEMBER - 2019
      **(Date)**

_____
      **(Signature)**

JASON MICHAEL DEINNOCENTIS
      **(Type or Print Name)**

{00342489;1 }

**Dropbox, Inc. (DBX)**                                          **Deinnocentis, Jason Michael**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 5/3/2018 | Purchase | 245 | $29.9600 |