**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: amccall@zlk.com
Email: aapton@zlk.com

*Attorneys for Movant Ognjen Kuraica*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MICHAEL DEINNOCENTIS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>DROPBOX, INC., ANDREW W. HOUSTON, AJAY V. VASHEE, TIMOTHY J. REGAN, ARASH FERDOWSI, ROBERT J. MYLOD, JR., DONALD W. BLAIR, PAUL E. JACOBS, CONDOLEEZZA RICE, R. BRYAN SCHREIER, MARGARET C. WHITMAN, SEQUOIA CAPITAL XII, L.P., SEQUOIA CAPITAL XII PRINCIPALS FUND, LLC, SEQUOIA TECHNOLOGY PARTNERS XII, L.P., and SC XII MANAGEMENT, LLC.,ACADEMY SECURITIES, INC., BTIG, LLC, CANACCORD GENUITY LLC, CASTLEOAK SECURITIES, L.P.,<br><br>Defendants. | No. 5:19-cv-06348-BLF<br><br>Hon. Beth Labson Freeman<br><br>**MOVANT OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHROITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF**<br><br>Date: January 30, 2019<br>Time: 9:00 a.m.<br>Courtroom: 3-5th Floor |

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW

| | |
|---|---|
| BRYAN PIKAL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>DROPBOX, INC., ANDREW W. HOUSTON, AJAY V. VASHEE, TIMOTHY J. REGAN, ARASH FERDOWSI, ROBERT J. MYLOD, JR., DONALD W. BLAIR, PAUL E. JACOBS, CONDOLEEZZA RICE, R. BRYAN SCHREIER, MARGARET C. WHITMAN, SEQUOIA CAPITAL XII, L.P., SEQUOIA CAPITAL XII PRINCIPALS FUND, LLC, SEQUOIA TECHNOLOGY PARTNERS XII, L.P., SC XII MANAGEMENT, LLC, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, ALLEN & COMPANY LLC, RBC CAPITAL MARKETS, LLC, JEFFERIES LLC, MACQUARIE CAPITAL (USA) INC., CANACCORD GENUITY LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and PIPER JAFFRAY & CO.,<br><br>Defendants. | No. 4:19-cv-06360-JSW<br><br>Hon. Jeffrey S. White |

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
Nos. 3:19-cv-06348-BLF, 3:19-cv-06360-JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   ARGUMENT ........................................................................................................ 2

    A.  The PSLRA Process for Selecting a Lead Plaintiff ...................................................... 2

    B.  Kuraica Is the Most Adequate Plaintiff to Serve as Lead Plaintiff Because Chavez Does Not Have Standing ................................................................................... 2

    C.  No Other Movant Can Credibly Contest Kuraica's Adequacy or Typicality ............. 5

    D.  Approval of Kuraica Choice of Counsel Is Appropriate. ........................................... 6

III.  CONCLUSION ................................................................................................... 6

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
Nos. 3:19-cv-06348-BLF, 3:19-cv-06360-JSW

# TABLE OF AUTHORITIES

**Cases**

*Abbey v. Computer Memories, Inc.,*

    634 F. Supp. 870 (N.D. Cal. 1986)........................................................................................ 4

*Abrams v. Intuitive Surgical, Inc.,*

    No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873 (N.D. Cal. Nov. 18, 2013).......... 2

*Ali v. Intel Corp.,*

    No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401 (N.D. Cal. May 29, 2018)................ 5

*Armour v. Network Assocs.,*

    171 F. Supp. 2d 1044 (N.D. Cal. 2001)................................................................................ 5

*In re Cavanaugh,*

    306 F.3d 726 (9th Cir. 2002) ..................................................................................... 2, 4, 5, 6

*In re Century Aluminum Co. Sec. Litig.,*

    729 F.3d 1104 (9th Cir. 2013) .......................................................................................... 1, 3

*Doherty v. Pivotal Software, Inc.,*

    No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360 (N.D. Cal. Nov. 8, 2019)  1, 2, 3, 4

*In re LendingClub Sec. Litig.,*

    282 F. Supp. 3d 1171 (N.D. Cal. 2017)............................................................................... 1

*Sanders v. VeriFone Sys.,*

    No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000 (N.D. Cal. Oct. 7, 2013)............. 6

*In re Stitch Fix, Inc. Sec. Litig.,*

    393 F. Supp. 3d 833 (N.D. Cal. 2019)................................................................................. 2

**Statutes**

15 U.S.C. § 77z-1 ............................................................................................................... 2, 5, 6

## I.       PRELIMINARY STATEMENT

The Court should appoint Ognjen Kuraica ("Kuraica") to serve as lead plaintiff in this class action securities fraud lawsuit. The Securities Act of 1933, as modified by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), provides a straight-forward mandate as to how courts should appoint a lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). In any case subject to the PSLRA, the movant with the "largest financial interest" in the litigation that satisfies Rule 23's typicality and adequacy standards shall be appointed as the lead plaintiff. In this case, that movant is Kuraica.

Kuraica sustained a loss of nearly $11,500. While another movant, Luis Chavez, claims a slightly larger loss of $13,400, Chavez will not be able to "trace" his shares to Dropbox's Registration Statement filed in connection with its Initial Public Offering held on March 23, 2018 (the "IPO"), a fundamental element of the claims at hand. Therefore, Chavez cannot meet the applicable adequacy or typicality standards for lead plaintiff purposes. *See In re Century Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1106 (9th Cir. 2013) (a securities case claiming a violation of Section 11 of the Securities Act of 1933 "provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement").

Specifically, to prove the violation, a plaintiff must show that its securities can be traced to a registration statement. *See Doherty v. Pivotal Software, Inc.,* No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360, at *20 (N.D. Cal. Nov. 8, 2019) (citing *In re LendingClub Sec. Litig.,* 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017)). Chavez will be unable to trace his shares in this instance because he purchased his shares while other shares unrelated to the Registration Statement were trading in the market. Kuraica, however, does not suffer from this defect. This is true because Kuraica purchased the majority of his shares while ***only*** shares issued under the Registration Statement were trading in the market.

Thus, as the movant with the next largest financial interest that meets the typicality and adequacy requirements of Rule 23, Kuraica is entitled to the presumption of lead plaintiff. For

that reason, the Court should grant Kuraica's motion in its entirety.

## II.        ARGUMENT

### A.  The PSLRA Process for Selecting a Lead Plaintiff

Under the PSLRA, this Court is directed to "appoint as lead plaintiff 'the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members.'" 15 U.S.C. § 77z-(a)(3)(B)(i); *Wenderhold v. Cylink Corp. Inc.,* 188 F.R.D. 577, 584 (N.D. Cal. 1999).

In interpreting the PSLRA, the Ninth Circuit formulated a clear process for selecting a lead plaintiff. *See Pivotal Software*, 2019 U.S. Dist. LEXIS 195360, at *12-13; *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833 (N.D. Cal. 2019); *Abrams v. Intuitive Surgical, Inc.,* No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873, at *5 (N.D. Cal. Nov. 18, 2013) (citing *In re Cavanaugh*, 306 F.3d at 729-30). "[T]he court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements." *Id*. (citing *Cavanaugh,* 306 F.3d at 730). The movant with the largest financial interest and satisfies Rule 23, is then the "presumptive lead plaintiff". *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730.  "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Third, the court must then consider any competing lead plaintiff movants attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. *Id.*

### B.  Kuraica Is the Most Adequate Plaintiff to Serve as Lead Plaintiff Because Chavez Does Not Have Standing

While Chavez claims a greater loss than Kuraica, Chavez is not otherwise typical to represent the Class, and therefore the Court must consider the movant with the next largest

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW

financial interest – Kuraica:

| Movant | Claimed Loss |
|--------|--------------|
| 1. Luis Chavez | $ 13,405.86 |
| 2. Ognjen Kuraica | $ 11,490.30 |
| 3. Rick Gammiere | $ 3,060.00 |

//

A cursory review of Chavez's trading information shows that he cannot be considered typical under Rule 23 for the purposes of these Actions because he purchased his shares of DropBox while shares unrelated to the Registration Statement were trading in the market; therefore, Chavez has no practical way of "tracing" his shares to the Registration Statement. *See* Dkt. No. 39-2.

For a plaintiff to adequately allege a Section 11 claim, the plaintiff must show with factual specificity that their shares are traceable to an offering. *Pivotal Software*, 2019 U.S. Dist. LEXIS 195360, at *20-21. If a company issues its shares in a single offering, with only one registration statement, then shares are "directly traceable" to the offering, just by the mere allegation by plaintiff. *Id*. at 21 (citing *Century Aluminum*, 729 F.3d at 1107). This is because, by definition, all of the company's shares are directly traceable to the offering, prior to co-mingling with other shares (such as pre-IPO shares that enter the market after the "lock-up" agreements expire). *Id*. at 21, 27.  Traceability is harder to prove in a mixed market, *i.e.* when a company issues shares in multiple offerings under more than one registration statement and requires the plaintiff to show traceability with a "greater level of factual specificity". *Id.* at 21.

In this instance, DropBox's Registration Statement (the "Prospectus" filed on Form 424(b)) was the Company's first and only Registration Statement. *See* Apton Decl. Ex. A Prospectus, Dated March 22, 2018. Following the completion of the IPO, there were 52,579,153 shares of Class A common stock outstanding, 339,323,858 shares of Class B common stock

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW

outstanding, and no shares of Class C common stock outstanding. *See* Apton Decl. Ex. A at 178. Out of the 52,579,153 shares of Class A common stock, 36,000,000 were sold and freely tradeable in the IPO. The remaining outstanding securities were deemed "restricted securities" and were unable to be traded on the market pursuant to DropBox's lock-up and standoff agreements (the "Lock-Up Agreements"). The Lock-Up Agreements prevented IPO shares and non-IPO shares from co-mingling until August 23, 2018. *See* Apton Decl. Ex. A at 41; Apton Decl. Ex. B, August 2018 10-Q at 74-75.[1] Therefore, any shares bought prior to August 23, 2018, whether they were purchased on March 23, 2018 or August 22, 2018, are ***directly traceable*** to the Registration Statement.

Chavez, according to his sworn certification, purchased shares of DropBox beginning on October 5, 2018 – over a month after the Lock-Up Agreements expired, when IPO shares were co-mingling with non-IPO shares. *See* Dkt. No. 39-2. Consequently, he will not be able to "trace" his purchased shares of DropBox to the Registration Statement under Ninth Circuit law "absent an individualized showing that post-lock-up purchases were individually traceable to the IPO." *Pivotal Software*, 2019 U.S. Dist. LEXIS 195360, at *27; *See also Abbey v. Computer Memories, Inc.,* 634 F. Supp. 870, 875 (N.D. Cal. 1986). Chavez does not have standing for the Section 11 claims alleged in the Actions and is atypical under Rule 23.

Following the process of appointing a lead plaintiff under *Cavanaugh,* because Chavez does not meet the requirements of Rule 23, the Court must then analyze the typicality and adequacy of the movant with the next-largest financial stake – Kuraica. *Cavanaugh*, 306 F.3d at 730. Kuraica, unlike Chavez, purchased the majority of his shares well within the lock-up period,

---

[1] Pursuant to the lock-up agreements with the underwriters, if (i) at least 120 days ha[d] elapsed since March 22, 2018, (ii) [DropBox] publicly released [its] earnings results for the quarterly period during which [its] IPO occurred, and (iii) such lock-up period [was] scheduled to end during or within five trading days prior to a broadly applicable period during which trading in [Dropbox] securities would not be permitted under [DropBox's] insider trading policy, or a blackout period, such lock-up period w[ould]end ten trading days prior to the commencement of such blackout period. The Lock-Up period was scheduled to end on September 18, 2018, within [DropBox's] quarterly blackout period that commence[d] at the close of trading on September 7, 2018. Therefore, in accordance with the lock-up agreements with the underwriters, the restricted period… end[ed] at the close of market on August 23, 2018, which [was] ten trading days prior to the commencement of [DropBox's] quarterly blackout period.

4

and therefore does not suffer from the standing defects that plague Chavez. The standing of a shareholder to allege claims under Section 11 does not change regardless of how far from, or how close to, the lock-up period expiration, as long as the shares were purchased before it. As evidenced in the Prospectus, when Kuraica purchased his shares, only IPO shares were freely tradeable on the market. Thus, he undoubtably purchased shares that were registered under the Registration Statement, giving him standing to pursue the Section 11 claims alleged in these Actions.

### C.  No Other Movant Can Credibly Contest Kuraica's Adequacy or Typicality

Pursuant to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). Of the four prerequisites, only two—typicality and adequacy—are relevant inquiries on a motion for lead plaintiff, as they address the personal characteristic of the class representative. See *Ali v. Intel Corp.,* No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401, at *5 (N.D. Cal. May 29, 2018) (focusing on typicality and adequacy). Here, Kuraica satisfies both requirements, triggering the presumption of Lead Plaintiff in his favor. As evidenced in his opening papers, Kuraica purchased shares of DropBox in the same manner as all other class members and holds no interest adverse to the rest of the class. *See* Dkt. No. 32 at 8-9.

In considering step three of the lead plaintiff appointment process laid out in *Cavanaugh*, competing movants may attempt to rebut the presumptive lead plaintiff's showing of typicality and adequacy only with actual ***proof*** that the presumptive lead plaintiff cannot effectively represent the class or is subject to a unique defense. *In re Cavanaugh*, 306 F.3d at 740-41 ("the presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class'"). "Speculative assertions" are insufficient to rebut the lead plaintiff presumption. See *Armour v. Network Assocs.,* 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (collecting cases).

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW

Accordingly, no such proof exists to rebut the presumption in favor of Kuraica, nor is he subject to a unique defense that would otherwise detract attention from the allegations of the Actions.

**D.  Approval of Kuraica Choice of Counsel Is Appropriate.**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  15 U.S.C. § 77z-1(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); *Sanders v. VeriFone Sys.,* No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000, at *11 (N.D. Cal. Oct. 7, 2013) ("'The district court does not select class counsel at all', and typically approves the lead plaintiff's selection of counsel") (citing *In re Cavanaugh*, 306 F.3d at 732-34).

Kuraica selected and retained Levi & Korsinsky to serve as Lead Counsel for the Class. As Levi & Korsinsky has extensive experience in litigating securities class actions, his choice of lead counsel should be approved. *See* Dkt. No. 33-4.

**III. CONCLUSION**

Based on the foregoing, Kuraica is the most adequate plaintiff to serve as Lead Plaintiff in the Actions. Chavez does not have standing to bring the Section 11 claims alleged in the Actions, and Kuraica has the next-largest financial interest that otherwise satisfies the requirements of Rule 23. Accordingly, Kuraica respectfully submit that the Court DENY the motions of the competing movants, and issue an Order GRANTING his motion in its entirety.

*[Signature on Following Page]*

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW

Dated: December 17, 2019          Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Movant Ognjen Kuraica
and Proposed Lead Counsel for the Class*

OGNJEN KURAICA'S MEMORANDUM OF POINTS AND AUTHRORITIES IN OPPOSITION TO COMPETING
MOTIONS FOR LEAD PLAINTIFF
NOS. 3:19-CV-06348-BLF, 3:19-CV-06360-JSW