**LEVI & KORSINSKY, LLP**
Adam M. Apton
Email: aapton@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: 415-373-1671

*Attorneys for Lead Plaintiff Ognjen Kuraica*
*and the Lead Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE DROPBOX, INC. SECURITIES LITIGATION | Case No. 5:19-cv-06348-BLF |
| | Hon. Beth Labson Freeman |
| | <u>CLASS ACTION</u> |
| | **CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | <u>Demand for Jury Trial</u> |

1  Lead Plaintiff Ognjen Kuraica and additional named plaintiffs Luis Chavez and Rick

2  Gammiere (collectively, "Plaintiffs"), by and through undersigned counsel, allege the following

3  upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged

4  upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, the

5  investigation made by and through Plaintiffs' attorneys, which includes without limitation: (a)

6  review and analysis of regulatory filings made by Dropbox, Inc. ("Dropbox") with the United States

7  Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media

8  reports issued and disseminated by Dropbox; (c) review of other publicly available information

9  concerning Dropbox.

10  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth

11  herein after a reasonable opportunity for discovery.

12  **I.     NATURE OF THE CLAIM**

13  1.     Plaintiffs bring this federal securities class action on behalf of a class consisting of

14  all persons who purchased and/or otherwise acquired Dropbox common stock pursuant or traceable

15  to the Registration Statement (the "Class").[1]

16  2.     Dropbox closed its IPO on March 27, 2018. In total, the company sold over $500

17  million of stock to the public, including Plaintiffs. The Registration Statement used by Dropbox to

18  register and sell these shares represented to investors that the company had been successful, and

19  would continue to be successful, in terms of converting its registered, non-paying users to

20  subscription, paying users. Given that this was one of the most fundamental components of

21  Dropbox's business strategy, this representation was highly material to investors, analysts, and the

22  market in general.

23  3.     However, absent from the Registration Statement was the fact that the rate at which

24  Dropbox was converting its non-paying registered users to paying subscription users was

25

---

26  [1] "Registration Statement" refers to the registration statement filed by Dropbox on February 23,
2018 on Form S-1 which, after several amendments, was declared effective on March 22, 2018. On
27  March 23, 2018, Dropbox filed the prospectus for the March 23, 2018 initial public offering (the
"IPO") on Form 424B4, which incorporated and formed part of the Registration Statement.
28

decelerating. This, in turn, was causing Dropbox to experience a material decline and/or slowdown in revenue growth.

4.     This material decline and/or slowdown continued to plague the company's earnings long after the IPO. Had Defendants properly disclosed this material information, Plaintiffs would not have purchased Dropbox's stock at the prices they did (if at all). To recover the losses they sustained, Plaintiffs assert strict liability claims under §§11 and 15 of the Securities Act of 1933 (the "Securities Act") against Dropbox and certain current and former officers and directors of Dropbox who signed the signed the Registration Statement. Plaintiffs' claims do not sound in fraud and Plaintiffs do not allege scienter on the part of any Defendant.

## II.     JURISDICTION AND VENUE

5.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k(a) and 77o(a).

6.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v and 28 U.S.C. §1331.

7.     Venue is proper in this District pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v and 28 U.S.C. §1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District. Further, Dropbox's principal executive offices are located within this District.

8.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## III.     PARTIES

### A.     Plaintiffs

9.     Lead Plaintiff Ognjen Kuraica purchased common stock traceable and/or pursuant to the Registration Statement and during the Class Period, and was damaged thereby. Lead Plaintiff's certification evidencing his transactions in Dropbox securities, previously filed with the Court in

1   connection with his motion for appointment as lead plaintiff, is incorporated herein by reference

2   (ECF No. 33-1).

3          10.    Plaintiff Luis Chavez purchased common stock traceable and/or pursuant to the

4   Registration Statement and during the Class Period, and was damaged thereby. Mr. Chavez's

5   certification evidencing his transactions in Dropbox securities, previously filed with the Court in

6   connection with his motion for appointment as lead plaintiff, is incorporated herein by reference

7   (ECF No. 39-2).

8          11.    Plaintiff Rick Gammiere purchased common stock traceable and/or pursuant to the

9   Registration Statement and during the Class Period, and was damaged thereby. Mr. Gammiere's

10  certification evidencing his transactions in Dropbox securities, previously filed with the Court in

11  connection with his motion for appointment as lead plaintiff, is incorporated herein by reference

12  (ECF No. 37-2).

13         **B.     Defendants**

14                 **1.      Dropbox**

15         12.    Dropbox is a Delaware corporation with principal executive offices located at 1800

16  Owens Street, Suite 200, San Francisco, California 94158. Dropbox securities trade in an efficient

17  market on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "DBX."

18                 **2.      The Registration Statement Defendants**

19         13.    Defendant Andrew W. Houston ("Houston") is a co-founder of Dropbox and served

20  as its Chief Executive Officer ("CEO") and Chairman of the Board at the time of the IPO. Defendant

21  Houston sold over 2.3 million Dropbox shares in the IPO for nearly $49 million in gross offering

22  proceeds.

23         14.    Defendant Ajay V. Vashee ("Vashee") served as the Chief Financial Officer ("CFO")

24  of Dropbox at the time of the IPO.

25         15.    Defendant Timothy J. Regan ("Regan") served as Chief Accounting Officer

26  ("CAO") of Dropbox at the time of the IPO.

27         16.    Defendant Arash Ferdowsi ("Ferdowsi") is a co-founder of Dropbox and its former

28  Chief Technology Officer. He served as a director of Dropbox at the time of the IPO. Defendant

-3-

1 | Ferdowsi sold over 2.3 million Dropbox shares in the IPO for nearly $49 million in gross offering

2 | proceeds.

3 |      17.     Defendant Robert J. Mylod, Jr. ("Mylod") served as a director of Dropbox at the time

4 | of the IPO.

5 |      18.     Defendant Donald W. Blair ("Blair") served as a director of Dropbox at the time of

6 | the IPO.

7 |      19.     Defendant Paul E. Jacobs ("Jacobs") served as a director of Dropbox at the time of

8 | the IPO.

9 |      20.     Defendant Condoleezza Rice ("Rice") served as a director of Dropbox at the time of

10 | the IPO.

11 |      21.     Defendant R. Bryan Schreier ("Schreier") served as a director of Dropbox at the time

12 | of the IPO.

13 |      22.     Defendant Margaret C. Whitman ("Whitman") served as a director of Dropbox at the

14 | time of the IPO.

15 |      23.     Defendants Houston, Vashee, Regan, Ferdowsi, Mylod, Blair, Jacobs, Rice, Schreier,

16 | and Whitman are collectively referred to herein as the "Registration Statement Defendants." Each

17 | of the Registration Statement Defendants signed the Registration Statement. As directors, executive

18 | officers and/or major shareholders of the company, the Registration Statement Defendants

19 | participated in the solicitation and sale of Dropbox stock in the IPO for their own benefit and the

20 | benefit of Dropbox. The Registration Statement Defendants were key members of the IPO working

21 | group and executives of Dropbox who pitched investors to purchase the shares sold in the IPO,

22 | including in IPO road shows.

23 |           **3.**     **The Sequoia Capital Defendants**

24 |      24.     Defendant Sequoia Capital XII, L.P. ("SC XII") held over 76.1 million shares of

25 | Dropbox Class B common stock at the time of the IPO.

26 |      25.     Defendant Sequoia Capital XII Principals Fund, LLC ("SC XII PF") held over 8.1

27 | million shares of Dropbox Class B common stock at the time of the IPO.

28 |

26.     Defendant Sequoia Technology Partners XII, L.P. ("STP XII") held over 2.8 million shares of Dropbox Class B common stock at the time of the IPO.

27.     Defendant SC XII Management, LLC is the general partner of SC XII and STP XII and the managing member of SC XII PF. It was thus deemed to share beneficial ownership of the Dropbox shares held by SC XII, STP XII and SC XII PF at the time of the IPO, making it the largest outside shareholder of the company.

28.     Defendants SC XII, SC XII PF, STP XII, and SC XII Management, LLC are collectively referred to herein as the "Sequoia Capital Defendants." The Sequoia Capital Defendants are related entities that are part of the Sequoia Capital venture capital firm located in Menlo Park, California. The Sequoia Capital Defendants were early investors in Dropbox and are controlling persons of Dropbox due to their large equity stake in the company, certain shareholder agreements that they have entered into with the Company, and their influence over the Board, including through their representation on the Board by Defendant Schreier, a Sequoia Capital partner. Before and after the IPO, the Sequoia Capital Defendants controlled 25% of the voting shares of Dropbox and were in league with other large shareholders and company insiders to further increase their control over Dropbox and its affairs. The Sequoia Capital Defendants enjoyed significant rights by way of an Investors' Rights Agreement, including, for example, the right to force Dropbox to file the Registration Statement so that the IPO could be completed. In addition, the Sequoia Capital Defendants were party to a Voting and Drag-Along Agreement with other large investors immediately prior to the IPO that allowed them to exercise even greater control and influence over the company and its actions.

### 4.     The Underwriter Defendants

29.     Defendants Goldman Sachs & Co. LLC ("Goldman Sachs"), J.P. Morgan Securities LLC ("JP Morgan"), Deutsche Bank Securities Inc. ("Deutsche Bank"), BofA Securities, Inc. (f/k/a Merrill Lynch, Pierce, Fenner Smith Incorporated) ("BofA Securities"), Allen Company LLC, RBC Capital Markets, LLC, Jefferies LLC, Macquarie Capital (USA) Inc., Canaccord Genuity LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Piper Sandler & Co. (f/k/a Piper Jaffray Co.) are collectively referred to herein as the "Underwriter Defendants."

30.     The Underwriter Defendants acted as underwriters for Dropbox's IPO by drafting, approving the content of, and disseminating the Registration Statement; by marketing the IPO; and by selling Dropbox common stock directly to investors. The Underwriter Defendants participated in the IPO, including the roadshows, due diligence, solicitation of the purchase of Dropbox common stock by the public, and/or assistance in the preparation of the Registration Statement.

31.     The Underwriter Defendants had an option to sell an additional 5.4 million Dropbox shares, which they exercised in full. The Underwriter Defendants received over $38.6 million in underwriting discounts and fees for conducting the IPO.

32.     Defendants Goldman Sachs and JP Morgan acted as underwriter representatives for the Underwriter Defendants and they, along with defendants Deutsche Bank and BofA Securities, received over 5% of net IPO proceeds in connection with the repayment of $213.4 million under the company's revolving credit facility.

33.     The Underwriter Defendants and their agents and representatives met with potential investors and presented favorable, but materially incorrect and/or misleading, information about the company, its business, products, plans, and financial prospects and/or omitted to disclose material information required to be disclosed under the federal securities laws. The Underwriter Defendants also purported to conduct an adequate and reasonable "due diligence" investigation into the company's business, operations, products, plans, and prospects. During the course of their "due diligence" investigation, the Underwriter Defendants had continual access to confidential corporate information concerning the company's business, operations, financial condition, products, plans, and prospects. Among other things, the Underwriter Defendants and/or their agents and representatives, including their counsel, had access to the company's management, directors, top executives, and lawyers to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which the company's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what company disclosures would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.

34.     As result of the constant access and constant communications between the Underwriter Defendants and the company's management, directors, top executives, and lawyers, at minimum, the Underwriter Defendants should have known of the company then-existing but undisclosed problem relating to the company's ability to monetize its existing user base and other risks that had already materialized and rendered the statements and omissions contained in the Registration Statement materially misleading, as detailed herein.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background

35.     Dropbox provides an electronic file-sharing service to its customers.

36.     Customers of Dropbox can use a basic version of the file-sharing service for free or advanced and/or premium versions of the file-sharing service for a fee.

37.     Dropbox's "business model" consists primarily of generating revenue by selling subscriptions to advanced and/or premium versions of its file-sharing service to its registered, non-paying customer user-base.

38.     As of December 31, 2017, Dropbox had over 500 million registered users, of which 11 million were paying users.

39.      On March 27, 2018, Dropbox closed its IPO. The company issued and sold 26,822,409 shares of Class A common stock at $21.00 per share. In total, Dropbox received aggregate proceeds of $538.2 million, net of underwriters' discounts and commissions, before deducting offering costs of $6.9 million, net of reimbursements.

40.     On March 28, 2018, the Underwriter Defendants exercised their option to purchase an additional 5,400,000 shares of Class A common stock at $21.00 per share. This transaction closed on April 3, 2018, resulting in additional proceeds of $108.4 million, net of underwriters' discounts and commissions.

41.     In the Registration Statement for the IPO, Dropbox represented that the company was excelling in terms revenue growth and subscription sales, primarily due to the company's internal data analytics and marketing strategies concerning Dropbox's registered users.

42.     In particular, Dropbox represented that "approximately 300 million of our registered users have at least one characteristic that we believe makes them more likely than other registered users to pay over time." These "characteristics," according to Dropbox, included: "(i) having signed up for Dropbox with a business domain email; (ii) having used specific types of computers or mobile devices to access our platform; or (iii) having signed up from certain countries in more developed markets in North America, Europe, and Asia Pacific, and having linked a desktop or laptop to our platform. Substantially all of our paying users share at least one of these characteristics."

43.     Dropbox's representation in this regard was material to investors. In the Registration Statement, Dropbox disclosed that its "average revenue per paying user" was between $110 and $114 for the years 2015, 2016, and 2017. Accordingly, if Dropbox was correct and approximately 300 million of its registered, non-paying users would become paying, subscription users over time, then the company was poised to attain approximately $33.3 billion in revenue. For context, Dropbox's revenue for 2017 was only $1.106 billion.

44.     In the Registration Statement, Dropbox attributed its ability to "[i]ncrease conversion of registered users to . . . paid subscription plans" to the company's "self-serve channels" and targeted marketing. In pertinent part, Dropbox explained that: "We generate over 90% of our revenue from self-serve channels—users who purchase a subscription through our app or website. We actively encourage our registered users to become paying users through in-product prompts and notifications, time-limited free trials of paid subscription plans, email campaigns, and lifecycle marketing. . . . During the fourth quarter of 2017, hundreds of millions of devices—including computers, phones, and tablets—were actively connected to the Dropbox platform. Because our users have installed Dropbox on many devices, we have multiple opportunities to inform them about new product experiences and premium subscription plans via in-product notifications, without any external marketing spend. . . . Our scale enables us to experiment and optimize the conversion marketing process. We run hundreds of product tests and targeted marketing campaigns simultaneously, and analyze usage patterns within our network to continually improve our user targeting and marketing messaging."

45.     Dropbox also disclosed that it tracks its user-conversions and revenue using "cohort economics." In pertinent part, Dropbox explained that: "We define a cohort as all registered users who signed up for Dropbox in a given period of time. We track the total monthly subscription amount of all paying users in each cohort as of the end of the month, or the monthly subscription amount. For paying users who opt for our monthly plans, the monthly subscription amount is equal to the price of the monthly plan. For paying users who opt for our annual plans, which a majority of our users do, the monthly subscription amount is equal to the price of the annual plan divided by twelve. These amounts increase as more registered users in each cohort convert to paying users, paying users upgrade to premium subscription offerings, and team administrators purchase additional licenses. These amounts decrease when paying users terminate their subscriptions, downgrade their subscriptions to a lower tier, or team administrators reduce the number of licenses on their subscription plans. We continuously focus on adding new users and increasing the value we offer to them. As a result, each cohort of new users typically generates higher subscription amounts over time."

46.     Dropbox's internal data analytics and marketing strategies, according to the Registration Statement, provided the company with "Predictable Subscription Revenue." In pertinent part, Dropbox explained that: "Taken together, our subscription revenue model, consistent cohort trends, self-serve monetization engine, and large and diversified global customer base resulted in linear and predictable revenue generation" over the course of 2017.

47.    In further explanation of how Dropbox tracks its revenue and user-conversions, Dropbox provided the following chart to illustrate just how "predictable" its revenue is:



48.    Notwithstanding Dropbox's insight into the company's revenue and user-conversions, the Registration Statement did not disclose that the rate at which Dropbox was converting its non-paying registered users to paying subscription users was decelerating and, in turn, Dropbox was experiencing a material decline and/or slowdown in revenue growth.

1          49.    The following chart illustrates Dropbox's number of paying users (in thousands) and

2  the rate at which Dropbox's paying users was declining (as a percentage) between the first quarter

3  of 2017 and the second quarter of 2019:



CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:19-cv-06348-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50.     As the above chart illustrates, the rate at which Dropbox was converting its non-paying registered users to paying subscription users was materially slowing during the time frame at issue. This, in turn, negatively impacted Dropbox's revenue growth (*i.e.*, Dropbox was experiencing weakening revenue growth). The following chart illustrates the decline in revenue growth that Dropbox experienced during the same time period:



CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:19-cv-06348-BLF

51.    The above charts illustrate that Dropbox was experiencing a material decline and/or slowdown in terms of user-conversions and revenue growth between the first quarter of 2017 and second quarter of 2019. Importantly, this material decline and/or slowdown was negatively affecting Dropbox during the company's IPO in the first quarter of 2018.

52.    The material decline and/or slowdown negatively affecting Dropbox during the company's IPO has only recently subsided. According to market analysts from D.A. Davidson & Co., Dropbox's earnings results for the third quarter of 2019 (ended September 30, 2019) and guidance for the fourth quarter of 2019 (ended December 31, 2019) ameliorated "investor concerns around continued deceleration." In pertinent part, D.A. Davidson's research report stated that: "this was the first quarter (in at least 11 quarters) where growth did not decelerate . . . . The continued deceleration has been an ongoing concern for investors and we believe stable revenue growth can help assuage investor fears of commoditization."

**B.      False Statements in the Registration Statement**

53.    Though Dropbox was experiencing a material decline and/or slowdown in terms of user-conversions and revenue growth at the time of the IPO, the Registration Statement did not disclose this fact. Instead, the Registration Statement represented that Dropbox was excelling in terms revenue growth and subscription sales and poised for substantial progress in terms of user-conversions and earnings going forward.

54.    By failing to disclose that Dropbox was experiencing a material decline and/or slowdown in terms of user-conversions and revenue growth at the time of the IPO, the Registration Statement violated Item 303 of Regulation S-K (17 C.F.R. § 229.303) of the Securities Act. Item 303 requires, in pertinent part, that a registrant "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). "A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both (1) presently known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operation." Management's Discussion and Analysis of Financial Condition,

-13-

1    Securities Act Release No. 6835 (May 18, 1989), Fed. Sec. L. Rep. (CCH) Par. 72,436, at 62,143,

2    reprinted at Par. 73,193, at 62,842.

3          55.    The Registration Statement also violated Section 11 of the Securities Act because it

4    contained untrue statements of material facts and/or omitted to state material facts necessary to make

5    statements not misleading.

6          56.    In particular, the "Prospectus Summary" of the Registration Statement identified

7    "Paying users" as one of the company's "Key Business Metrics." In pertinent part, Dropbox

8    explained that it "define[s] paying users as the number of users who have active paid licenses for

9    access to our platform as of the end of the period." Dropbox then provided the following table to

10   show the number of its paying users as of December 31, 2015, 2016, and 2017:

| | *2015* | *2016* | *2017* |
|---|---|---|---|
| *Paying users* | 6.5 million | 8.8 million | 11.0 million |

14   57.    The Registration Statement's description of Dropbox's paying users for the years

15   2015, 2016, and 2017, as excerpted above, was materially misleading in light of the fact that at the

16   time of the IPO the company was materially decelerating in terms of converting its non-paying

17   registered users to paying subscription users. By omitting this information, Dropbox provided

18   investors with a materially false understanding of the company's current and future prospects

19   concerning user conversions (*i.e.*, converting registered, non-paying users to subscription, paying

20   users) as well as failed to disclose the a material and negative trend in violation of Item 303 of

21   Regulation S-K.

22         58.    When discussing Dropbox's "Growth Strategy," the Registration Statement stated in

23   pertinent part as follows under the sub-heading "Increase adoption and paid conversion":

> We believe that our current registered user base represents a significant opportunity
> to increase our revenue. We estimate that approximately 300 million of our registered
> users have characteristics—including specific email domains, devices, and
> geographies—that make them more likely than other registered users to pay over
> time. Substantially all of our paying users share at least one of these characteristics.

-14-

59.     The portion of the Registration Statement quoted above disclosed that Dropbox believed "300 million of [its] registered users" were likely to become paying users which, based on the company's historical "average revenue per paying user" rates, amounted to revenue of approximately $33.3 billion. At the time of this statement however, Dropbox's user-conversion and revenue were flagging, thereby rendering Dropbox's statement about converting its registered users to paying subscription users materially misleading because it had become increasingly unlikely that the "300 million" registered users would convert to paying users. Specifically, at the time of the IPO, the rate at which Dropbox was converting its non-paying registered users to paying subscription users was decelerating and, in turn, Dropbox was experiencing a material decline and/or slowdown in revenue growth. By failing to disclose this deceleration, the Registration Statement omitted material information necessary to make the statement quoted above not misleading.

60.     Additionally, in the "Management's Discussion and Analysis" section, the Registration Statement stated as follows under the sub-heading "Our Attractive Cohort Economics":

> We define a cohort as all registered users who signed up for Dropbox in a given period of time. We track the total monthly subscription amount of all paying users in each cohort as of the end of the month, or the monthly subscription amount. For paying users who opt for our monthly plans, the monthly subscription amount is equal to the price of the monthly plan. For paying users who opt for our annual plans, which a majority of our users do, the monthly subscription amount is equal to the price of the annual plan divided by twelve. These amounts increase as more registered users in each cohort convert to paying users, paying users upgrade to premium subscription offerings, and team administrators purchase additional licenses. These amounts decrease when paying users terminate their subscriptions, downgrade their subscriptions to a lower tier, or team administrators reduce the number of licenses on their subscription plans. We continuously focus on adding new users and increasing the value we offer to them. As a result, each cohort of new users typically generates higher subscription amounts over time.

> The chart below reflects the monthly subscription amount from January 2013 to December 2017 of all paying users in each quarterly cohort, including those who signed up for our platform prior to 2013.

-15-

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15 We continuously focus on adding new users and increasing the value we offer to
16 them. As a result, each cohort of new users typically generates higher subscription
amounts over time. For example, the monthly subscription amount generated by the
17 January 2015 cohort doubled in less than three years after signup. We believe this
cohort is representative of a typical cohort in recent periods.

18 Moreover, as we continue to innovate and optimize our go-to-market strategy, we
19 have successfully increased monetization for subsequent cohorts. Comparing January
cohorts from the last three years, at virtually every point in time after signup, the
20 January 2017 cohort generated a higher monthly subscription amount than the
January 2016 cohort, which in turn generated a higher monthly subscription amount
21 than the January 2015 cohort.

22
23
24
25
26
27
28

CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:19-cv-06348-BLF

1
2
3
4
5
6
7
8
9
10
11



12   61.    The portion of the Registration Statement excerpted above falsely represented that

13  Dropbox's historical user-conversions and subscription revenue was indicative of current and future

14  results. Statements such as "each cohort of new users typically generates higher subscription

15  amounts over time," "the monthly subscription amount generated by the January 2015 cohort

16  doubled in less than three years after signup," "[w]e believe this cohort is representative of a typical

17  cohort in recent periods," and "at virtually every point in time after signup, the January 2017 cohort

18  generated a higher monthly subscription amount than the January 2016 cohort, which in turn

19  generated a higher monthly subscription amount than the January 2015 cohort," together with the

20  positive illustrative charts that accompanied these statements, represented to investors that Dropbox

21  was excelling in terms revenue growth and subscription sales and poised for substantial progress in

22  terms of user-conversions and earnings going forward.

23   62.    At the time of these statements however, the rate at which Dropbox was converting

24  its non-paying registered users to paying subscription users was decelerating and, in turn, Dropbox

25  was experiencing a material decline and/or slowdown in revenue growth. Consequently, Dropbox's

26  statements about its past progress in terms of user-conversions and subscription revenue were not

27  indicative of current and/or future results. By failing to disclose the deceleration that Dropbox was

28

experiencing at the time of the IPO, the Registration Statement omitted material information necessary to make the statements (and charts) quoted above not misleading.

## V.       COUNT I: VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT

63.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

64.     For the purposes of this claim, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

65.     This claim is brought against Dropbox, the Registration Statement Defendants, and the Underwriter Defendants on behalf of Plaintiffs and other members of the Class.

66.     Dropbox registered and sold 26,822,409 shares of its common stock during the IPO through the Registration Statement.

67.     Dropbox was the issuer of its common stock pursuant to the Registration Statement within the meaning of Section 11 of the Securities Act.

68.     The Registration Statement contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading. The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statement.

69.     As the issuer and registrant of the common stock, Dropbox is strictly liable for the untrue statements of material fact. Dropbox, the Registration Statement Defendants, and the Underwriter Defendants owed to Plaintiffs the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement, to ensure that the statements contained or incorporated by reference therein were true, and to ensure that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Dropbox, the Registration Statement Defendants, and the Underwriter Defendants did not make a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

1       70.     Plaintiffs purchased and/or acquired Dropbox common stock traceable and/or
2  pursuant to the Registration Statement and were damaged thereby.

3       71.     Plaintiffs did not know, nor in the exercise of reasonable diligence could they have
4  known, of the untrue statements of material facts or omissions of material facts in the Registration
5  Statement when they purchased or acquired their Dropbox common stock.

6       72.     This claim is brought within one year after the discovery of the untrue statements
7  and omissions and within three years after the issuance of the Registration Statement.

8       73.     By reason of the foregoing, Dropbox, the Registration Statement Defendants, and the
9  Underwriter Defendants are liable to Plaintiffs for violating Section 11 of the Securities Act.

10  **VI.    COUNT II: VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT**

11       74.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth
12  herein.

13       75.     This claim is brought pursuant to Section 15 of the Securities Act against the
14  Registration Statement Defendants and the Sequoia Capital Defendants on behalf of Plaintiffs.

15       76.     As alleged herein, Dropbox, the Registration Statement Defendants, and the
16  Underwriter Defendants violated Section 11 of the Securities Act by issuing the Registration
17  Statement which included materially untrue statements of fact and omitted to state material facts
18  required to be stated therein or necessary to make the statements therein not misleading. The
19  Registration Statement Defendants and the Sequoia Capital Defendants were controlling persons of
20  Dropbox when the Registration Statement was filed and became effective due to their senior
21  executive positions, their positions on Dropbox's Board, their direct involvement in Dropbox's day-
22  to-day operations and in the review and approval of the proposed Merger, their solicitation of
23  Dropbox's stockholders votes in favor of the issuance of Dropbox's common stock as part of the
24  Prospectus, their positions as substantial stockholders of the company, and their participation in and
25  preparation of the Registration Statement.

26       77.     By virtue of their exercise of control over Dropbox, the Registration Statement
27  Defendants and Sequoia Capital Defendants had the power to influence and control, and did

28

-19-

1   influence and control, directly or indirectly, the decision-making of Dropbox, including the content

2   of Dropbox's prospectuses and the Registration Statement.

3       78.     The Registration Statement Defendants and Sequoia Capital Defendants did not

4   make a reasonable investigation or possess reasonable grounds for the belief that the Registration

5   Statement was accurate and complete in all material respects. Had they exercised reasonable care,

6   they would have known of the material misstatements and omissions alleged herein.

7       79.     This claim is brought within one year after the discovery of the untrue statements

8   and omissions, and within three years after the sale of Dropbox's common stock to Plaintiffs.

9       80.     By reason of the foregoing, the Registration Statement Defendants and Sequoia

10  Capital Defendants are liable to Plaintiffs for violating Section 15 of the Securities Act.

11  **VII.    CLASS ACTION ALLEGATIONS**

12      81.     Plaintiffs bring this action on behalf of the Class. The Class excludes Dropbox, the

13  Individual Defendants, and each of their immediate family members, legal representatives, heirs,

14  successors or assigns, and any entity in which they have or had a controlling interest.

15      82.     The Class members are so numerous that joinder of all members is impracticable.

16  Throughout the Class Period, Dropbox's stock was actively traded on the NASDAQ. While the

17  exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only

18  through appropriate discovery, Plaintiffs believe that there are thousands of Class members. Record

19  owners and other Class members may be identified from records maintained by Dropbox or its

20  transfer agent and may be notified of the pendency of this action by mail, using the form of notice

21  similar to that customarily used in securities class actions.

22      83.     The number of Dropbox common stock shares that were registered and sold pursuant

23  and/or traceable to the Registration Statement was 41.4 million. Upon information and belief, these

24  shares are held by thousands of individuals located geographically throughout the country and the

25  world. Joinder would be highly impracticable

26      84.     Plaintiffs' claims are typical of the claims of the Class members as all Class members

27  were similarly affected by the Defendants' wrongful conduct in violation of the federal securities

28  laws complained of herein. Plaintiffs purchased and/or acquired common stock pursuant or traceable

-20-

to the Registration Statement. The manner in which Plaintiffs sustained damages in connection with each security that they held was similar, if not identical, to other Class members who purchased or acquired Dropbox securities.

85.     Plaintiffs have and will continue to fairly and adequately protect the interests of the Class members.

86.     Plaintiffs have retained counsel competent and experienced in class and securities litigation.

87.     Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

88.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' respective acts as alleged herein;

(b)     whether Defendants acted negligently in issuing the false statements in the Registration Statement as alleged herein;

(c)     whether the price of Dropbox's securities was affected by Defendants' conduct complained of herein; and

(d)     whether the Class members have sustained damages and, if so, what is the proper measure of damages.

89.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them.

90.     There will be no difficulty in the management of this action as a class action.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiffs as class

1    representative under Federal Rule of Civil Procedure 23 and Plaintiffs' counsel

2    as class counsel;

3    (b)   Awarding compensatory damages in favor of Plaintiffs and the other Class

4    members against all Defendants, jointly and severally, for all damages sustained

5    as a result of the Defendants' wrongdoing, in an amount to be proven at trial,

6    including interest thereon;

7    (c)   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred

8    in this action, including counsel fees and expert fees;

9    (d)   Granting extraordinary equitable and/or injunctive relief as permitted by law;

10    and

11    (e)   Such other and further relief as the Court may deem just and proper.

## IX.   JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial.

DATED: March 2, 2020                              **LEVI & KORSINSKY, LLP**


By: _s/ Adam M. Apton_____
Adam M. Apton
Email: aapton@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: 415-373-1671

-and-

Nicholas I. Porritt (*pro hac vice* to be submitted)
Email: nporritt@zlk.com
Elizabeth Tripodi (*pro hac vice* to be submitted)
Email: etripodi@zlk.com
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290

*Attorneys for Lead Plaintiff Ognjen Kuraica and
Lead Counsel for the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq.
Email: lrosen@rosenlegal.com
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: (213) 785-2610

   -and-

GLANCY PRONGAY & MURRAY LLP
Robert V. Prongay
Email: rprongay@glancylaw.com
Casey E. Sadler
Email: csadler@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150

*Attorneys for Plaintiffs Luis Chavez and Rick
Gammiere and Additional Counsel for the Class*