**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Ognjen Kuraica*
*and the Lead Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DROPBOX, INC. SECURITIES LITIGATION | Case No. 5:19-cv-06348-BLF |
| | <u>CLASS ACTION</u> |
| | **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| | September 24, 2020 9:00 a.m. Hon. Beth Labson Freeman San Jose Courthouse, Courtroom 3 |
| This Document Relates To: All Actions | |

**Table of Contents**

**STATEMENT OF ISSUES** ...............................................................................................................1

**PRELIMINARY STATEMENT** ....................................................................................................1

**FACTUAL BACKGROUND** ........................................................................................................3

**ARGUMENT** ................................................................................................................................7

    **A.  Plaintiffs State Claims for Violations of Section 11 of the Securities Act**............................7

        1.  Legal Standard ................................................................................................................7

        2.  The Complaint Alleges Material Misstatements and Omissions....................................8

            a)  The Conversion Characteristics Statements Were Misleading....................................9

            b)  The Cohort Statements Were Materially Misleading ...............................................13

            c)  The Paid Users Statements Were Materially Misleading .........................................14

        3.  Defendants Had a Duty to Disclose Omitted Facts Under Item 303..............................14

        4.  The Registration Statement's Vague Risk Disclosures Are Not Exculpatory ...............17

        5.  The Securities Act Claims Are Timely ........................................................................18

    **B.  The Dropbox Defendants and Underwriter Defendants Are Liable For Violations Of Section 11**..........................................................................................................................21

    **C.  The Individual Defendants and Sequoia Defendants Are Liable For Violations Of Section 15** .........................................................................................................................22

**CONCLUSION** .........................................................................................................................24

## Table of Authorities

Cases

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................7

*Berson v. Applied Signal Tech., Inc.*,
 527 F.3d 982 (9th Cir. 2008) .......................................................................................8, 18

*Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST,
 2014 WL 3749759 (N.D. Cal. July 29, 2014)...........................................................18, 20

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002)............................................................................................8

*Casella v. Webb*,
 883 F.2d 805 (9th Cir. 1989) ..........................................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
 856 F.3d 605 (9th Cir. 2017) ..........................................................................................12

*Eminence Capital, LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) ........................................................................................24

*Exch. Comm'n v. RPM Int'l, Inc.*,
 282 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................9, 10, 11

*Fecht v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) ............................................................................................9

*Gray v. First Winthrop Corp.*,
 82 F.3d 877 (9th Cir. 1996) ......................................................................................19, 21

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
 422 F. Supp. 3d 821 (S.D.N.Y. 2019)..............................................................................17

*Hemmer Grp. v. SouthWest Water Co.*,
 527 F. App'x 623 (9th Cir. 2013)....................................................................................23

*Herman & MacLean v. Huddleston*,
 459 U.S. 375 (1983)...............................................................................................2, 4, 7

*Hildes v. Arthur Andersen LLP*,
 734 F.3d 854 (9th Cir. 2013) ............................................................................................7

*Howard v. Everex Sys., Inc.*,
 228 F.3d 1057 (9th Cir. 2000) ........................................................................................22

*In re Am. Apparel, Inc. S'holder Litig.*,
   No. CV1006352MMMRCX, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ...........................23

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010)........................................................................................21

*In re Amylin Pharm., Inc., Sec. Litig.*,
   No. 01CV1455BTM(NLS), 2002 WL 31520051 (S.D. Cal. Oct. 10, 2002)............................23

*In re Apple Inc. Sec. Litig.*,
   No. 19-CV-02033-YGR, 2020 WL 2857397 (N.D. Cal. June 2, 2020) ...............................11, 12

*In re Atossa Genetics Inc Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017) .............................................................................................12, 17

*In re Bare Escentuals, Inc. Sec. Litig.*,
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ...................................................................................20

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
   851 F. Supp. 2d 746 (S.D.N.Y. 2012)......................................................................................19

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK),
   2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ..........................................................................20

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009).............................................................................................22

*In re CV Therapeutics, Inc.*,
   No. C 03-03709 SI, 2004 WL 1753251 (N.D. Cal. Aug. 5, 2004).....................................13, 14

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ....................................................................................................8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013)............................................................................16, 17, 18

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .....................................................................................................7

*In re Intuitive Surgical Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014) ........................................................................................17

*In re Iso Ray, Inc. Sec. Litig.*,
   189 F. Supp. 3d 1057 (E.D. Wash. 2016) .................................................................................11

*In re Obalon Therapeutics, Inc.*,
   No. 3:18-CV-0352-AJB-WVG, 2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ........................14

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2019) ..............................................................................11, 15

*In re Tesla, Inc. Sec. Litig.*,
  No. 18-CV-04865-EMC, 2020 WL 1873441 (N.D. Cal. Apr. 15, 2020) ...................................12

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
  669 F. App'x 878 (9th Cir. 2016) ........................................................................................7

*In Re Violin Memory Sec. Litig.*,
  No. 13-CV-5486 YGR, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ..............................7, 8, 15

*J & R Mktg., SEP v. Gen. Motors Corp.*,
  549 F.3d 384 (6th Cir. 2008) .............................................................................................16

*Johnson v. Riverside Healthcare Sys., LP*,
  534 F.3d 1116 (9th Cir. 2008) ............................................................................................8

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...........................................................................................8, 9

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ..............................................................................................................9

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ......................................................................................................18, 19

*Mulligan v. Impax Labs., Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................................10

*Newman v. Warnaco Grp., Inc.*,
  335 F.3d 187 (2d Cir. 2003) ..............................................................................................19

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) .......................................................................................................9, 12

*Pirani v. Slack Techs., Inc.*,
  No. 19-CV-05857-SI, 2020 WL 1929241 (N.D. Cal. Apr. 21, 2020) ......................................23

*Rafton v. Rydex Series Funds*,
  No. 10-CV-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ..............................18, 19, 20

*Rieckborn v. Jefferies LLC*,
  81 F. Supp. 3d 902 (N.D. Cal. 2015) .............................................................................18, 20

*Rudman v. CHC Grp. LTD.*,
  217 F. Supp. 3d 718 (S.D.N.Y. 2016)..................................................................................21

*S.E.C. v. Merch. Capital, LLC*,
  483 F.3d 747 (11th Cir. 2007) ............................................................................................13

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) .........................................................................11, 14

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) ........................................................................................15

*Swartz v. Deutsche Bank*,
 No. C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008) ...................................18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)............................................................................................7, 8

*Thomas v. Magnachip Semiconductor Corp.*,
 167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................23

*Todd v. STAAR Surgical Co.*,
 No. CV-14-05263-MWF-RZ, 2016 WL 6699284 (C.D. Cal. Apr. 12, 2016).......................11, 13

*Welgus v. TriNet Grp., Inc.*, No. 15-CV-0,
 3625-BLF, 2017 WL 167708 (N.D. Cal. Jan. 17, 2017) .............................................24

*Yi Xiang v. Inovalon Holdings, Inc.*,
 254 F. Supp. 3d 635 (S.D.N.Y. 2017)..........................................................................21

*Zaghian v. Farrell*,
 675 F. App'x 718 (9th Cir. 2017)................................................................................17

**Statutes**

15 U.S.C. § 77m..................................................................................................18, 19

15 U.S.C. § 77o....................................................................................................22

**Rules**

Federal Rule of Civil Procedure 8(a) ..........................................................................7, 8

**Regulations**

17 C.F.R. § 229.303(a)(3)(ii) ....................................................................................8, 15

Lead Plaintiff Ognjen Kuraica and Plaintiff Rick Gammiere (collectively, "Plaintiffs"), submit the following opposition to the Dropbox Defendants' motion to dismiss (Dkt. No. 71, referred to herein as the "Motion" or "Mot."), the Underwriter Defendants' joinder thereto (Dkt. No. 74), and the Sequoia Defendants' joinder thereto and motion to dismiss (Dkt. No. 73, referred to herein as the "Sequoia Motion").[1] This opposition is supported by the Declaration of Adam M. Apton and the exhibit attached thereto ("Ex. __").

## STATEMENT OF ISSUES

1.    Whether Plaintiffs adequately plead that the Dropbox Defendants and Underwriter Defendants violated Section 11 of the Securities Act of 1933.

2.    Whether Plaintiffs adequately plead that the Individual Defendants and Sequoia Defendants violated Section 15 of the Securities Act of 1933.

## PRELIMINARY STATEMENT

On March 27, 2018, Dropbox sold nearly 27 million shares of its common stock to the public in an initial public offering for gross proceeds of more than $538 million (the "IPO"). One critical fact that Dropbox told investors at the time was that its revenue had been growing, and was expected to continue growing in the near-term, due to a rapidly increasing customer userbase. This representation was false and materially misleading. Although Dropbox had successfully converted registered, non-paying users to subscription, paying users in the past, its ability to do so at the time of the IPO had materially weakened and was decelerating. This, in turn, was causing Dropbox to experience a material decline and/or slowdown in revenue growth.

---

[1] The "Individual Defendants" are Andrew W. Houston, Ajay V. Vashee, Timothy J. Regan, Arash Ferdowsi, Robert J. Mylod, Jr., Donald W. Blair, Paul E. Jacobs, Condoleezza Rice, R. Bryan Schreier, and Margaret C. Whitman. The "Dropbox Defendants" are Dropbox, Inc. ("Dropbox") and the Individual Defendants. The "Underwriter Defendants" are Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC; Deutsche Bank Securities Inc.; Allen & Company LLC; BofA Securities, Inc.; RBC Capital Markets, LLC; Jefferies LLC; Macquarie Capital (USA) Inc.; Canaccord Genuity LLC; JMP Securities LLC; KeyBanc Capital Markets Inc.; and Piper Sandler & Co. The "Sequoia Defendants" are Sequoia Capital XII, L.P., Sequoia Capital XII Principals Fund, LLC, Sequoia Technology Partners XII, L.P., and SC XII Management, LLC.

Congress designed the Securities Act as a form of consumer protection "to assure compliance with the disclosure provisions . . . by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82 (1983). The Securities Act purposefully replaces the rule of *caveat emptor* with a strict duty on the part of the issuer, its board of directors, and its advisors to accurately disclose relevant financial and operational information as required under applicable U.S. Securities and Exchange Commission regulations. Where a registration statement contains a misrepresentation or omits required information, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id.* Accordingly, claims under the Securities Act are not fraud claims and, as the Supreme Court has observed, pleading such claims "places a relatively minimal burden on a plaintiff." *Id.*

Defendants move to dismiss, denying that Dropbox's Registration Statement (defined below) contained any false or materially misleading information. First, Defendants argue that certain of the challenged statements are not actionable because they truthfully described Dropbox's internal metrics and past performance or opined on Dropbox's growth strategy. This argument is contrary to black letter law that opinions and literally true statements are actionable when they are misleading to an ordinary investor. Here, Dropbox's statements describing internal user metrics as signs of future user conversion growth were misleading because they omitted the fact that Dropbox's user conversion growth rate was declining at the time of the IPO. Indeed, Defendants concede that the Registration Statement failed to disclose Dropbox's user-conversion rate. Defendants' argument that certain of the challenged statements are not actionable under the bespeaks caution doctrine fails because the statements at issue were not forward-looking and the bespeaks caution doctrine does not shield disclosure of known information.

Second, Defendants argue that failing to disclose Dropbox's declining user-conversion rate is not actionable because Dropbox had no duty to disclose that metric and had disclosed its total number of paying users. Pursuant to Item 303 of Regulation S-K, Dropbox had an affirmative duty to disclose any known trends or uncertainties that have had or that it reasonably expected will have a material unfavorable impact on revenues. Further, where a company discloses specific factors driving

historical results, it is obligated to also disclose negative information related to those factors. Dropbox credited its linear and predictable revenue generation to its cohort trends, the characteristics of its users, and its self-serve model—all of which Dropbox linked to its growth strategy to convert existing users to paying users. Having touted these specific factors as significant drivers of its historical results, Dropbox had a duty to disclose that its user-conversion growth was actually declining. Instead, Plaintiffs were misled by Dropbox's omission of this crucial information.

Third, Defendants argue that Plaintiffs' claims are time-barred because Plaintiffs should have discovered the misstatements more than a year prior to the filing of the present action on October 4, 2019. Plaintiffs plausibly plead that they first became aware of the actionable misstatements in the Registration Statement in November 2018, when Dropbox disclosed its third quarter results for 2018 that showed a continuing deceleration in revenue growth and new user growth. The precise point in time in which a trend becomes meaningful, material, or actionable is a fact-intensive inquiry that is inappropriate at the pleading stage, and Defendants do not even attempt to explain why these ongoing trends should have been obvious to Plaintiffs following Dropbox's August 2018 disclosure of second quarter results rather than its November 2018 disclosure of third quarter results. This conclusory argument fails to meet Defendants' heavy burden of establishing that the Securities Act claims are untimely at the pleading stage.

For the foregoing reasons, the Court should deny Defendants' motions to dismiss in their entirety.

## **FACTUAL BACKGROUND**

### **A.    Background**

Dropbox is a Delaware corporation based in San Francisco that provides electronic file sharing and storage for its customers. ¶¶ 12, 35.[2] Dropbox offers both a basic free service and fee-based advanced or premium options. ¶ 36. Dropbox's primary strategy for generating revenue was to convert its basic non-paying users into paying users who purchase advanced and premium

---

[2] References to "¶ __" are to the Consolidated Class Action Complaint For Violations Of The Federal Securities Laws (the "Complaint") (Dkt. No. 68). Unless otherwise indicated, all emphasis is added and all internal quotation marks, footnotes, and citations are omitted.

services through a subscription fee. ¶ 37. At the end of 2017, Dropbox had over 500 million registered users. ¶ 38. Only about 2% of Dropbox's users were paid users, leaving over 489 million of its registered users as potential converts into paid users. *Id.*

With the vast amount of its userbase available for conversion, Dropbox seized the opportunity to hold an initial public offering. Dropbox filed its initial registration statement with the SEC on February 23, 2018 on Form S-1 (together with subsequent amendments and the prospectus, the "Registration Statement"). ¶ 1. By the time Dropbox closed its IPO on March 27, 2018, it had issued and sold 26,822,409 shares of Class A common stock at $21.00 per share for aggregate proceeds of $538.2 million, net of underwriters' discounts and commissions, before deducting offering costs of $6.9 million, net of reimbursements. ¶ 39. On March 28, 2018, the Underwriter Defendants exercised their option to purchase an additional 5,400,000 shares of Class A common stock at $21.00 per share. ¶ 40. This transaction closed on April 3, 2018, resulting in additional proceeds of $108.4 million, net of underwriters' discounts and commissions. ¶ 40.

**B.      The Registration Statement**

In the portion of the Registration Statement describing Dropbox's business model to increase user-conversion, Dropbox stated that "approximately 300 million of our registered users have characteristics—including specific email domains, devices, and geographies—that make them more likely than other registered users to pay over time" ¶ 42; *see* ¶¶ 42-43, 58-59 (the "Conversion Characteristics Statements"). These characteristics included: (i) having signed up for Dropbox with a business domain email; (ii) having used specific types of computers or mobile devices to access the platform; or (iii) having signed up from certain countries and having linked a desktop or laptop to our platform. Dropbox also told investors that it generated roughly $112 million for every million paid users, which represented roughly 10% of its 2017 revenue of $1.1 billion. ¶ 43. Thus, Dropbox's ability to convert these hundreds of millions of non-paying users into paying users was determinative of a significant portion of Dropbox's revenue. *Id.*

This conversion process was discussed at length in the Registration Statement. Significantly, Dropbox emphasized the importance of its internal analytics and marketing strategies designed to maximize user conversions. ¶ 41. According to the Registration Statement, over 90% of Dropbox's

revenue came from "self-serve channels," which was defined as "users who purchase a subscription through our app or website." ¶ 44. These analytics and strategies, Dropbox boasted, allowed it to "optimize" the conversion marketing process." ¶ 44. Dropbox also used "cohort economics" to track its user-conversions and revenue. When using its cohort analyses, Dropbox was able to determine specific points in time when conversion of non-paying users into subscription customers was most likely to occur. ¶ 45. The Registration Statement informed Plaintiffs that "each cohort of new users typically generates higher subscription amounts over time" and that Dropbox had "successfully increased monetization for subsequent cohorts." ¶ 60. These consistent cohort trends, in part, gave Dropbox "linear and predictable revenue generation." ¶ 46, *see* ¶¶ 45-46, 60-61 (the "Cohort Statements").

The context of the statements about Dropbox's internal analytics and marketing strategies, even if literally true, made these statements misleading to ordinary investors because they created the false impression that Dropbox's rate of user-conversion was growing. For example, Dropbox used the Conversion Characteristics Statements to promote its ability to "increase conversion of registered users to our paid subscription plans." ¶¶58-59. Similarly, Dropbox touted the Cohort Statements as driving, in part, its "predictable revenue generation." ¶¶ 60-61. Given Dropbox's supposed insight into its ability to convert users, investors relied on these representations and purchased stock in the IPO on the false belief that the growth of Dropbox's paying userbase was increasing.

**C.    Dropbox's Paid User Growth Was Decreasing at the Time of the IPO.**

Despite Dropbox's disclosures that its business model was largely based on converting registered users to paying users (RS at 68) and that over 90% of its revenue came from users purchasing subscriptions through the app or website (¶ 44), the Registration Statement did not disclose the rate at which Dropbox was converting its non-paying registered users to paying subscription users. ¶¶ 48-49. Unbeknownst to Plaintiffs, the rate at which Dropbox was converting its nonpaying registered users to paying subscription users was materially slowing during the time leading up to the IPO:



¶ 49. Importantly, Dropbox's revenue growth was declining during the same time period:



¶ 50. As the above charts illustrate, Dropbox's primary business model and growth strategy were increasingly faltering at the time of the IPO, causing a material decline in the Company's revenue growth rate. Dropbox's revenue growth rate continued to decelerate through the second quarter of 2019, finally alerting investors to the negative trend that the Registration Statement failed to disclose.

## ARGUMENT

### A.    Plaintiffs State Claims for Violations of Section 11 of the Securities Act.

#### 1.    Legal Standard

In assessing a Rule 12(b)(6) motion, courts consider the complaint in its entirety, "accept all factual allegations. . . as true" and construe them in the light most favorable to plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint should not be dismissed if it contains a "sufficient factual matter [that], accepted as true, 'state[s] a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, a court must be mindful that "a district court ruling on a motion to dismiss is not sitting as a trier of fact….A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

To allege a claim under Section 11, a plaintiff need only plead that she acquired a security pursuant or traceable to a registration statement that: (1) contained an untrue statement of fact; (2) omitted a material fact required to be stated therein; or (3) omitted a material fact necessary to make the statements made not misleading. *In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878, 879–80 (9th Cir. 2016). Once a material misstatement is shown "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean*, 459 U.S. at 382; *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013). . As long as "a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Id.* at 382.

Because scienter is not an element of a Section 11 claim, it is subject to the permissive notice pleading standards of Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"). *See In Re Violin Memory*

*Sec. Litig.*, No. 13-CV-5486 YGR, 2014 WL 5525946, at \*8 (N.D. Cal. Oct. 31, 2014) (analyzing Section 11 claim under Rule 8(a) where, as here, "Plaintiffs have not expressly pleaded fraud, and have pleaded non-fraud bases for liability."). Pleading a claim under Rule 8(a) "is not an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what…the claim is and the grounds upon which it rests." *Id.* at \*28, citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). As Plaintiff's well-pleaded, non-fraudulent allegations more than satisfy the lenient pleading burdens under Rule 8(a), the Defendants are strictly liable for negligently signing and issuing the Offering Materials containing misleading facts and omissions and/or failing to disclose known trends under Item 303 of SEC Reg. S-K, 17 C.F.R. § 229.303(a)(3)(ii) ("Item 303").

Plaintiffs do not oppose the Dropbox Defendants' request for judicial notice (Mot. at 7-8) to the extent that the Court takes notice of the fact that statements contained in those documents were made. To the extent that Defendants attempt to use these exhibits to defeat Plaintiffs' adequately pleaded claims, such practice is improper and highly discouraged by the Ninth Circuit. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (recognizing a "concerning pattern in securities cases" where defendants attempt to exploit judicial notice "procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage"). Plaintiffs request that the Court take judicial notice of Exhibit 1, which is an analyst report "incorporated into the complaint by reference" (¶ 52). *Tellabs,* 551 U.S., at 322.

## 2.    The Complaint Alleges Material Misstatements and Omissions

"The plaintiff in a §11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (citation omitted). A statement or omission "is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). A fact is material when a "reasonable investor would have viewed the nondisclosed

information as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38, 44, 47 (2011).

### a)    The Conversion Characteristics Statements Were Misleading

In a subsection titled "***Increase conversion of registered users to our paid subscription plans***," the Registration Statement represented that: "We believe that our current registered user base represents a significant opportunity to increase our revenue. We estimate that approximately 300 million of our registered users have characteristics—including specific email domains, devices, and geographies—that make them more likely than other registered users to pay over time. Substantially all of our paying users share at least one of these characteristics." ¶¶ 58-59. This statement was materially misleading because it omitted the fact that Dropbox's user conversion rate was and had been declining at the time of the IPO.

As alleged in the Complaint, regardless of whether or not this statement was literally true, it created the false and misleading impression that Dropbox's **growth** of user conversions was not declining or slowing down. "Congress adopted §11 to ensure that issuers tell[ ] the whole truth to Plaintiffs. For that reason, literal accuracy is not enough: An issuer must as well desist from misleading Plaintiffs by saying one thing and holding back another." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 192 (2015); *see also Sec. & Exch. Comm'n v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 26 (D.D.C. 2017) ("The point of the omissions clause in Section 11 is that an issuer may not say one thing but hold back another, and it asks what [a reasonable person] would naturally understand a statement to convey beyond its literal meaning."). "[O]nce defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead Plaintiffs, including disclosing adverse information that cuts against the positive information." *Khoja*, 899 F.3d at 1009. "[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)

The Motion attempts several unconvincing arguments to dismiss the Conversion Characteristics Statements as non-actionable. First, the Motion argues that Plaintiffs' interpretation of the Conversion Characteristics Statements is implausible and takes the statements out of context.

Motion at 13-14. The Motion argues that, read in context, these statements merely "conveyed Dropbox's belief that one group of users (who had certain characteristics) was more likely than another group of users (who did not) to become paying users over time." *Id.* at 13. Importantly, the Motion claims that these statements "said nothing about how many of the approximately 300 million users would (or were likely to) become paying users." *Id.* at 14. In fact, the Motion's argument attempts to strip the Conversion Characteristics Statements of all context, which directly contradicts binding precedent. *See Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) ("Statements . . . cannot be considered in isolation, but must be viewed in the context of the total presentation." (internal quotations omitted)); *see also Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) (" . . . the Court may not assess the statements listed in the FAC in a vacuum, "plucking the statements out of their context to determine whether the words, taken per se, are sufficiently 'vague' so as to constitute puffery," but rather will examine the entire statement and its circumstances to determine if it is actionable.").

Viewed properly within the context of the Registration Statement, the Conversion Characteristics Statements would be interpreted by an ordinary investor to be statements about Dropbox growing its paid user conversion. The statements form the bulk of a subsection titled "***Increase conversion of registered users to our paid subscription plans***" in a section titled "**Our Growth Strategy.**" RS at 64. The Motion's overly-literal, context-free interpretation that the statements merely convey that one group of users is more likely to convert than another group of users is implausible because it is completely divorced from the context of the statement describing Dropbox's strategy to increase paid conversion. The most plausible interpretation for an ordinary investor is that the characteristics of Dropbox's registered users will lead to an increase in paid conversion. This plausible inference about the predictive nature of Conversion Characteristics Statements was bolstered by the contrast in the same paragraph of the Registration Statement that Dropbox "track user activity across the Dropbox platform for financial planning and forecasting purposes" because Dropbox "found that aggregate user activity metrics aren't leading indicators of revenue or conversion." RS at 64. Read contextually, this statement implies that—in contrast to user activity metrics—user characteristic metrics ***are*** leading indicators of revenue and user-conversion

and *are* tracked for financial planning and forecasting purpose. *See, e.g., In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d 1057, 1069 (E.D. Wash. 2016) (finding it reasonable to infer that a press release implied a comparison that was not literally made when viewed in the context of surrounding statements and subheading").

The court's denial of the defendants' motion to dismiss under similar facts in *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1139 (N.D. Cal. 2017) is instructive. In *Shenwick*, the plaintiffs alleged that Twitter's positive statements touting its monthly average user growth were misleading because Twitter omitted the fact that its daily average user trends were flat or declining. The defendants argued that Twitter had no duty to disclose its daily active user metric. The court rejected the defendants' argument, holding that the omission was misleading because, "[i]n the absence of DAU data, investors interpreted Defendants' statements as reassurances that the Company had experienced and would continue to experience positive growth." Similarly, Defendants' omission of Dropbox's slowing user-conversion rate caused Plaintiffs to interpret the Characteristic Statements as assurances that Dropbox was increasing its user conversion rate.

Defendants claim certain fragments of the statements Plaintiffs identified are literally true. Motion at 13-14. But "the issue is not whether the statements, taken separately, were literally true. The issue is whether defendants' statements taken [together] and in context, would have mislead a reasonable investor about the nature of the [investment]." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1257 (N.D. Cal. 2019); *see also Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2016 WL 6699284, at *10 (C.D. Cal. Apr. 12, 2016) (declining to dismiss claim based on literally true statement that nonetheless created false impression.). The court's decision in *In re Apple Inc. Sec. Litig.*, No. 19-CV-02033-YGR, 2020 WL 2857397 (N.D. Cal. June 2, 2020) under a similar fact pattern is instructive. In *Apple*, the plaintiffs challenged a statement describing Apple's business in China as "very strong last quarter . . . iPhone, in particular, was very strong double-digit growth there." *Id*., at *16. The defendants argued that the statement was "literally true because it concerns 'last quarter.'" *Id.* The court rejected the defendants' argument because the context—the challenged statement was made during a discussion of emerging market issues—"clearly suggests that business there continues to be strong." *Id.* Further, the court in Apple held that

even if framed as an opinion, the statement was misleading because it "did not align with the information" the defendants possessed at the time. *Id.* (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017)). Similarly, the Conversion Characteristics Statements were made in a subsection of the Registration Statement discussing Dropbox's ability to "[i]ncrease conversion of registered users to our paid subscription plans." RS at 64. Even if the statements were literally true as a description of the characteristics of Dropbox's users, they were still misleading because they clearly suggested that those characteristics would lead to an increase in converting registered users to paid users. In fact, as Dropbox knew at the time, the Company's user conversion rate was slowing.

Second, the Motion argues that the Conversion Characteristics Statements are non-actionable statements of opinion simply because the paragraph begins with "We believe." This argument is contrary to well-settled law that simply prefacing a statement with the word "believe" does not insulate the factual statements that follow from liability. "[S]ome sentences that begin with opinion words like 'I believe' contain embedded statements of fact. . . . Accordingly, liability under § 11's false-statement provision would follow [ ] not only if the speaker did not hold the belief she professed but also if the supporting fact she supplied were untrue." *Omnicare*, 575 U.S. at 185–86. The Registration Statement's description of Dropbox's "growth strategy" is not a statement of opinion. Rather, it is a factual description of Dropbox's business model purportedly based on the Dropbox's own analytics. *See In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2020 WL 1873441, at *15 (N.D. Cal. Apr. 15, 2020) ("a statement of opinion can be deemed misleading if it conveys facts"). Further, these statements would be actionable even if they were statements of opinion because Plaintiffs plead that omitted facts rendered them misleading to ordinary investors. Indeed, the "omission of a fact can make a statement of opinion [ ], even if literally accurate, misleading to an ordinary investor." *Omnicare,* 575 U.S., at 187.

Third, the Motion argues the Conversion Characteristics Statements are non-actionable forward-looking statements under the "bespeaks caution" doctrine. This argument fails because the bespeaks caution doctrine applies only to forward-looking statements and the statements at issue are not forward-looking. *See, e.g., In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 798 (9th

Cir. 2017) (reversing district court's granting of motion to dismiss and holding that defendants' statements were not protected by the bespeaks caution doctrine because the misleading portion of the statements "concerned only past facts, not statements about the future"); *Todd*, 2016 WL 6699284, at \*10 ("to the extent Plaintiffs challenge Defendants' alleged ***omission of present facts*** with respect to the challenged statements, the PSLRA's safe harbor does not apply") (emphasis in original); *see also S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 768 (11th Cir. 2007) ("It is well established that a materially misleading omission of past performance information occurs when a promoter makes optimistic statements about the prospects of the business but fails to include past performance information that would be useful to a reasonable investor in assessing those statements"). Plaintiffs plead that the Conversion Characteristics Statements were false and misleading because they omitted material facts about Dropbox's past and current performance. ¶¶ 58-59. The bespeaks caution doctrine does not shield misrepresentations of known information. *See In re CV Therapeutics, Inc.*, No. C 03-03709 SI, 2004 WL 1753251, at \*10 (N.D. Cal. Aug. 5, 2004) ("The fact that defendants used those inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements.")

### b)      The Cohort Statements Were Materially Misleading

Plaintiffs sufficiently plead that the Registration Statement's section about Dropbox's "cohort economics" materially misled Plaintiffs about Dropbox's operations because it omitted the fact that the Dropbox's user conversion rate was dropping: "We define a cohort as all registered users who signed up for Dropbox in a given period of time. We track the total monthly subscription amount of all paying users in each cohort as of the end of the month, or the monthly subscription amount. . . . These amounts increase as more registered users in each cohort convert to paying users . . . . As a result, each cohort of new users typically generates higher subscription amounts over time." ¶¶ 60-62. The section continued to state that "as we continue to innovate and optimize our go-to-market strategy, we have successfully increased monetization for subsequent cohorts. . . . For example, the monthly subscription amount generated by the January 2015 cohort doubled in less than three years after signup. We believe this cohort is representative of a typical cohort in recent periods." *Id.* The Registration Statement's claim that Dropbox had successfully increased

monetization for subsequent cohorts, and that monetization increases—in significant part—when Dropbox successfully converts registered users into paid users, created the false and misleading impression that Dropbox growth of user conversions was not declining or slowing down. *Id.*

The Motion's argument that the Cohort Statements were literally true—even if accurate—misses the point. Motion at 16-17. In *In re Obalon Therapeutics, Inc.,* the plaintiffs alleged that the defendant's "positive statements about the Company's 2017 increasing Obalon Balloon reorder sales" were literally true, but they were nonetheless actionable because they omitted "that the starter sales kits were decreasing, and the reorder sales were concentrated in a small number of clients." No. 3:18-CV-0352-AJB-WVG, 2019 WL 4729461, at *8 (S.D. Cal. Sept. 25, 2019). The court denied the defendant's motion to dismiss, finding that the literally true statement "was misleading because it gave the impression of healthy and equally distributed reorder accounts." *Id.* The same result should hold here. Defendants' statements about the increasing monetization of each economic cohort and the growth strategy for user conversion based on broad characteristics of current users gave the misleading impression that Dropbox's central growth strategy was causing growth in user conversions to increase. As Plaintiffs later learned, and Defendants knew at the time of the IPO, Dropbox's growth in user conversions had been declining.

### c) The Paid Users Statements Were Materially Misleading

Third, Plaintiffs sufficiently plead that the Registration Statement's section on Key Business Metrics materially misled Plaintiffs about Dropbox's operations because it omitted the fact that the Company's user conversion rate was dropping. ¶¶ 56-57. Disclosing the total number of paid users increasing as of each calendar year created a misleading impression that the Company's rate of converting registered users to paying users was also growing. *Id.* Dropbox informed investors that increasing user-conversion was essential to increasing revenue growth. In the absence of any disclosure of Dropbox's user conversion rates, ordinary investors interpreted Dropbox's rising paid user data as a sign that user conversion rates were increasing. *See Shenwick*, 282 F. Supp. 3d at 1140 (defendants statements touting current measures of user engagement were misleading due to defendants' omission of the fact that daily average users were flat or declining.).

### 3. Defendants Had a Duty to Disclose Omitted Facts Under Item 303

SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii) ("Item 303") imposes an affirmative a duty on issuers to disclose "*any known trends or uncertainties* that have had or that the registrant reasonably expects will have a *material favorable or unfavorable impact on net sales or revenues or income* from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues … the change in the relationship shall be disclosed." *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (noting Item 303 requires disclosure of known trends "reasonably likely to have material effects on the registrant's financial condition or results of operation."). "'[A]ny omission of facts 'required to be stated' under Item 303 will produce liability under Section 11.'" *In Re Violin Memory*, 2014 WL 5525946, at *15.;*Restoration Robotics*, 2019 WL 5295059, at *14 (noting that "[t]he Ninth Circuit has held that because Section 11 imposes liability if a registrant 'omits to state a material fact required to be stated' in the registration statement, 'any omission of facts "required to be stated" under Item 303 will produce liability under Section 11.'" (quoting *Steckman*, 143 F.3d at 1296).

The Registration Statement violated Item 303 by failing to disclose that Dropbox was experiencing a material decline and/or slowdown in terms of user-conversions and revenue growth at the time of the IPO. ¶¶ 54, 57. These trends were ongoing and, unknown to Plaintiffs, exacerbated during the financial quarter in which the IPO took place. Indeed, Dropbox's own later admissions confirm these sharpening downward trends. By the time of the IPO, these undisclosed trends were likely to adversely affect Dropbox's revenues. And this impact did, in fact, materialize. ¶ 52; Ex. 1 (D.A. Dickinson report).

The Motion relies on inapposite case law and a mischaracterization of the pleadings in this action to argue that Plaintiffs have not sufficiently alleged a violation of Item 303. First, the Motion's argument that Plaintiffs have failed to allege the existence of a trend or Defendants' knowledge of the trend (Mot. at 18) is nonsensical given that the Motion explicitly concedes that Defendants knew the "rate of paying user growth had slowed at the time of the IPO and that its rate of revenue growth had slowed as well." *Id*. at 2. The Motion also cites inapposite cases where the complaint fell far short of alleging knowledge on the part of the defendants. For example, in *Welgus v. TriNet Grp., Inc.* (Mot. at 18), this Court held that a complaint failed to plead knowledge of trend

where sole allegation of knowledge was that a "competitor had failed to reserve for workers' compensation claims and 'similarly failed.'" No. 15-CV-03625-BLF, 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18, 2017), *aff'd,* 765 F. App'x 239 (9th Cir. 2019); *J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 391 (6th Cir. 2008) (cited in Mot. at 18) (finding no violation of Item 303 because the plaintiffs "do not contend that [defendant] had any knowledge" and instead "specifically only contend that the information was 'knowable'"). In contrast, Plaintiffs here not only explicitly allege that Defendants were aware of these negative trends at the time of the IPO—Defendants explicitly concede such knowledge in the Motion. Further, to the extent the Registration Statement disclosed past adverse trends, the "[i]dentification of a past trend does not satisfy a company's disclosure obligations under Item 303; Item 303 require specifics disclosure of whether, and to what extent a material trend has impacted or is expected to impact future revenues." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 510 (S.D.N.Y. 2013).

Second, the Motion's argument that Defendants could not reasonably expect a decline in user conversion rates to materially affect Dropbox's revenue because "user conversion is only one aspect of Dropbox's overall revenue" (Mot. at 18) ignores the plain language of Item 303, established case law and Dropbox's own disclosures. Item 303 requires disclosure of known trends that an issuer "reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income." Item 303 provides no support for the Motion's argument that a known trend is only material if it affects an issuer's sole source of revenue. Nor does the Motion cite to any case law to support this argument. Additionally, the Motion's argument that a declining user conversion rate could not reasonably be expected to have a material impact on Dropbox's sales is contradicted by claims made in the Registration Statement. Converting registered users to paid subscription plans is one of the three facets of Dropbox's business model. RS at 64-65 ("[d]rive new signups," [i]ncrease conversion of registered users to our paid subscription plans, and "[u]pgrade and expand existing customers"). According to the Registration Statement, "Dropbox Basic, the free version of our product, serves as a major funnel for conversions to our paid subscription plans." *Id.* at 64. Indeed, Dropbox told Plaintiffs that conversion is one the Company's major growth strategies because "our current registered user base represents a significant opportunity to increase our

revenue." *Id.* Dropbox also acknowledged that its "future growth could be harmed if we fail to attract new users *or* convert registered users to paying users." RS at 16-17 (emphasis added) ("If we are not able to continue to expand our user base or fail to convert our registered users to paying users, demand for our paid services and our revenue may grow more slowly than expected or decline"). Plaintiffs have thus plausibly alleged that the Registration Statement's failure to disclose these known trends violated Item 303, and, thereby, Section 11. *See Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 841 (S.D.N.Y. 2019) (Item 303 required disclosures regarding acquirer's difficulty retaining target's customer loyalty program members, omission of which was actionable under Section 11).

### 4.    The Registration Statement's Vague Risk Disclosures Are Not Exculpatory

The Motion argues that the Registration Statement sufficiently warned Plaintiffs about Dropbox's slowing conversion growth rate by generically disclosing that its revenue growth could decline if the growth of its primary sources of revenue decline. Motion at 5. These broad risk disclosures fail to meet the "stringent showing" required to dismiss the Complaint. *In re Atossa*, 868 F.3d at 798 ("[d]ismissal on the pleadings under the bespeaks caution doctrine . . . requires a stringent showing: There must be sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged statements were not misleading."). Vague risk disclosures lacking in specificity will not shield Defendants' misleading statements. *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014) (vague risk factor disclosures regarding product liability lawsuits were insufficient to cure omissions "because they lacked specificity as to these lawsuits, their growing number, and their severe nature."). For example, in *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017), the Ninth Circuit held that the defendants' generic warning about a "potential failure to 'achieve sales expectations'" was insufficient to warn investors about a specific known risk that its product would not appeal to a broad section of potential consumers. At Similarly, as Defendants concede here, Dropbox knew its conversion rate was decelerating at the time of the IPO, yet said nothing about it other than a generic disclaimer that "future growth could be harmed if we fail to attract new users or convert registered users to paying users." Motion at 5.

Further, the Registration Statements' warnings that Dropbox's conversion rate "***could***" slow does not serve as a sufficient warning to Plaintiffs that Dropbox's conversion rates were already slowing and likely to continue decelerating. *Berson*, 527 F.3d at 986 ("The passage, moreover, speaks entirely of as-yet-unrealized risks and contingencies. Nothing alerts the reader that some of these risks may already have come to fruition.") Indeed, "a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized." *In re Facebook*, 986 F. Supp. 2d at 509.

### 5.    The Securities Act Claims Are Timely

The statute of limitations for § 11 of the 1933 Act is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. "[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). "The statute does not begin to run when the plaintiff merely should have begun investigating." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015). "A fact is considered 'discovered' when a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Id.,* at 915. "[I]t is Defendants' burden to establish that Plaintiffs did discover or could have discovered the allegedly untrue statement or omission." *Rafton v. Rydex Series Funds*, No. 10-CV-01171-LHK, 2011 WL 31114, at *9 (N.D. Cal. Jan. 5, 2011). "[A] plaintiff might be on 'inquiry notice of the 'possibility' of" a violation "at some point before a reasonably diligent plaintiff would have actually *discovered* the facts constituting the violation. And the limitations period does not start to run until that later threshold has been crossed." *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2014 WL 3749759, at *5 (N.D. Cal. July 29, 2014) (emphasis in original).

"[T]he determination of inquiry notice is 'fact intensive' and is usually not appropriate at the pleading stage." *Rafton*, 2011 WL 31114, at *9. "[T]he Ninth Circuit strongly favors any legitimate factual disputes over the timeliness of a securities claim being determined by the fact-finder." *Booth*, 2014 WL 3749759, at *5; *see also Swartz v. Deutsche Bank*, No. C03-1252MJP, 2008 WL 1968948,

at *7 (W.D. Wash. May 2, 2008) ("[t]he Ninth Circuit has held that the issue of whether a plaintiff knew or should have known of a cause of action in the federal securities context presents a question for the trier of fact"). Dismissal of a securities fraud action for untimeliness is appropriate only when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." *Gray v. First Winthrop Corp.*, 82 F.3d 877, 881 (9th Cir. 1996); *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012) ("a motion to dismiss will only be granted where 'uncontroverted evidence irrefutably demonstrates [that the] plaintiff discovered or should have discovered" facts sufficient to adequately plead a claim'") (quoting *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 193 (2d Cir. 2003)).

The statute of limitations for § 11 of the 1933 Act is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. "[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" *Merck & Co.*, 559 U.S. at 653. The Motion argues that Plaintiffs' Section 11 claim is time-barred because the statute of limitations began to run either at the time Dropbox issued the Registration Statement or in August 2018. Motion at 19-20. Neither of these assertions meets the high burden Defendants face in establishing irrefutable, uncontroverted evidence that a Securities Act claim is untimely as a matter of law. *Rafton*, 2011 WL 31114, at *9 ("[I]t is Defendants' burden to establish that Plaintiffs did discover or could have discovered the allegedly untrue statement or omission.").

Plaintiffs first became aware that the Registration Statement contained actionable misstatements when Dropbox filed its Form 10-Q for the third quarter of 2018 on November 9, 2018. The 10-Q disclosed that Dropbox's ongoing trend of decelerating revenue growth and user-conversion rates had been exacerbated, and that Dropbox had still only converted 12.3 million of its more than 500 million registered users into paying users. *See* ¶¶ 51-52; Ex. 1 (D.A. Dickinson analyst explaining that "continued deceleration has been an ongoing concern for investors").

Given the plausibility of Plaintiffs' notice allegations, Defendants fail to meet their burden to demonstrate that notice was triggered at an earlier date.

First, the point in time in which a trend becomes meaningful, material, or actionable is a fact-intensive inquiry that is inappropriate at the pleading stage. *See Rafton*, 2011 WL 31114, at *9 ("[T]he determination of inquiry notice is 'fact intensive' and is usually not appropriate at the pleading stage."); *Booth*, 2014 WL 3749759, at *5 ("[T]he Ninth Circuit strongly favors any legitimate factual disputes over the timeliness of a securities claim being determined by the fact-finder."); *Swartz*, 2008 WL 1968948, at *7 ("[t]he Ninth Circuit has held that the issue of whether a plaintiff knew or should have known of a cause of action in the federal securities context presents a question for the trier of fact").

Second, there is no bright line rule that supports the Motion's arbitrary assertion that "Dropbox's quarterly announcements of post-IPO results triggered the statute of limitations period, at the latest, by August 10, 2018." Motion at 19. The Motion does not even attempt to explain why the latest possible triggering date was August 10, 2018, as opposed to Dropbox's next quarterly disclosure in November 2018. Indeed, "a plaintiff might be on 'inquiry notice of the 'possibility' of" a violation "at some point before a reasonably diligent plaintiff would have actually *discovered* the facts constituting the violation. And the limitations period does not start to run until that later threshold has been crossed." *Booth*, 2014 WL 3749759, at *5 (emphasis in original).When weighing the timeliness of a Securities Act claim, Plaintiffs are "entitled to the reasonable inference that it is the course of all disclosures collectively that ultimately placed plaintiffs on notice of the need to investigate for fraud—i.e., that it was no single disclosure that was dispositive, but rather all the disclosures collectively." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010).

Third, the Motion's argument that the Registration Statement put Plaintiffs on notice that Dropbox had misled Plaintiffs by failing to disclose the negative trend in the Company's ability to convert paying users fails because the Motion concedes the Registration Statement contained no such disclosure. *See, e.g., In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK), 2020 WL 1950783, at *6 (E.D.N.Y. Apr. 22, 2020) ("A trend subject to Item 303 must be disclosed under Section 11 as a reasonable investor would interpret the absence of an Item 303 disclosure to imply the nonexistence of known trends or uncertainties."); *see also Rieckborn*, 81 F. Supp. 3d at 915 ("A

fact is considered 'discovered' when a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss."). Further, Plaintiffs could not have alleged that the Cohort and Characteristics Statements were actionable at the time of the Registration Statement because these statements misled Plaintiffs into believing that any negative trends were immaterial or non-existent. The Motion also misplaces reliance on *Rudman v. CHC Grp. LTD.*, 217 F. Supp. 3d 718, 722 (S.D.N.Y. 2016), which is easily distinguishable from the present facts. Motion at 19. In *Rudman*, the court held that notice was triggered when the company disclosed the precise effect of the negative information on its revenue and its stock suffered "the largest single-day decline in the company's history" in response. *Rudman*, 217 F. Supp. 3d at 722; *see also Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 642 (S.D.N.Y. 2017) ("Unlike the circumstances in *Rudman*, it is difficult to see how Lead Plaintiff could have foreseen the impact some of the disclosures [defendant] made in May 2015 would have on the future of the company and its stock price sufficient to permit the pleading of the claims alleged and damages resulting from those claims.").

Defendants fail to meet their heavy burden at the dismissal stage that Plaintiffs' claims are untimely. *See Gray*, 82 F.3d at 881 (finding that dismissal of a securities fraud action for untimeliness is appropriate only when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct").

**B.     The Dropbox Defendants and Underwriter Defendants Are Liable For Violations Of Section 11**

As set forth above, the Plaintiffs adequately allege that the Registration Statement contained materially misleading statements or omissions in violation of Section 11. Like the Dropbox Defendants, the Underwriter Defendants face strict liability for such material misstatements or omissions in the Registration Statement. *See, e.g., In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 536 (S.D.N.Y. 2010) ("With respect to any sale of a security pursuant to a misleading registration statement, Section 11 extends potential liability to . . . underwriters . . . who provide

their consent to be named as having prepared or certified any part of the registration statement or any report used in connection with the registration statement.").

### C.    The Individual Defendants and Sequoia Defendants Are Liable For Violations Of Section 15

To allege controlling person liability under Section 15 of the Securities Act, 15 U.S.C. § 77o, a plaintiff needs only plead: (i) that there was a primary violation of federal securities laws; and (ii) that the defendant possessed actual power or control over the primary violator. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

The Individual Defendants are liable as control persons under Section 15 of the Securities Act because Plaintiffs have sufficiently alleged a primary violation of the Securities Act. Each of the Individual Defendants are alleged to be "directors, executive officers and/or major shareholders of the company" who "signed the Registration Statement." ¶ 23. Plaintiffs also allege that the Individual Defendants "participated in the solicitation and sale of Dropbox stock in the IPO" and "were key members of the IPO working group and executives of Dropbox who pitched Plaintiffs to purchase the shares sold in the IPO, including in IPO road shows." *Id.* Plaintiffs have sufficiently alleged that the Individual Defendants had "specific control over the preparation and release of the [offering documents]." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 555 (N.D. Cal. 2009) ("Where a board member is alleged to have signed the registration statements at issue . . . courts have presumed that the director exercised actual authority and control, at least over the contents and/or release of those statements.").

Plaintiffs also sufficiently allege that the Sequoia Defendants are liable as control persons under Section 15 of the Securities Act. Plaintiffs plead a variety of control allegations against the Sequoia Defendants, including their: early investment in Dropbox; influence over the Board, including through their representation on the Board by Defendant Schreier, a Sequoia Capital partner; control of 25% of the voting shares of Dropbox and were in league with other large shareholders and company insiders to further increase their control over Dropbox and its affairs; significant rights by way of an Plaintiffs' Rights Agreement, including, for example, the right to force Dropbox to file the Registration Statement so that the IPO could be completed; and

party to a Voting and Drag-Along Agreement with other large Plaintiffs immediately prior to the IPO that allowed them to exercise even greater control and influence over the company and its actions. ¶ 28. While each of these allegations might individually be insufficient to plead control, they are sufficient when considered collectively. *See Pirani v. Slack Techs., Inc.*, No. 19-CV-05857-SI, 2020 WL 1929241, at *18 (N.D. Cal. Apr. 21, 2020) (finding control liability in nearly identical allegations: infused capital before direct listing; owned respectively 23.8%, 13.2%, and 10.1% of supervoting shares at the time of the direct listing; each had a director on the Board, who reviewed and signed the Offering Materials; . . . wanted to cash out; and sold their shares in the direct listing"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048–49 (N.D. Cal. 2016); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMRCX, 2013 WL 10914316, at *34 (C.D. Cal. Aug. 8, 2013).

The Sequoia Motion relies on a blatant mischaracterization of the pleading requirements for claims under Section 15. <u>First</u>, the Sequoia Motion falsely asserts that to state a claim under Section 15, Plaintiffs must allege facts sufficient to show "the defendant exercised actual power or control over the primary violator." Sequoia Motion at 2. In the Ninth Circuit, "[a]t the pleading stage, Plaintiffs must only show authority to exercise such power, rather than actual exercise of such power." *Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 627 (9th Cir. 2013); *see also In re Amylin Pharm., Inc., Sec. Litig.*, No. 01CV1455BTM(NLS), 2002 WL 31520051, at *10 (S.D. Cal. Oct. 10, 2002) (alleging that the defendants "had power and authority to engage in the conduct that is alleged to be wrongful" is sufficient to plead control person liability).

<u>Second</u>, the Sequoia Motion falsely asserts that Section 15 pleading must meet the particularity standards of Rule 9(b). Sequoia Motion at 3. The consensus view in the Ninth Circuit is that the less stringent Rule 8(a) pleading standards apply to Section 15 claims because they are not allegations of fraud. *Pirani*, 2020 WL 1929241, at *18 ("Although Securities Exchange Act claims are typically analyzed under the heightened fraud pleading standard of 9(b), district courts in the Ninth Circuit have concluded that because fraud is not a necessary element of a control person claim, the pleading of such a claim need only meet the requirements of Rule 8(a).")

<u>Third</u>, the Sequoia Motion falsely asserts that "the plaintiff must allege specific facts

concerning a defendant's responsibilities within the company that demonstrate [its] involvement in the day-today affairs of the company. Sequoia Motion at 2-3 (citing *Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 167708, at \*12 (N.D. Cal. Jan. 17, 2017). The court in *Welgus* subsequently reconsidered the "day-to-day operations" requirement as "too strict." *Welgus*, 2017 WL 6466264, at \*29 ("the Court takes this opportunity to reconsider its Prior Order regarding control person liability to the extent that it may have been too strict when it required Plaintiff to allege 'day to day' operations in order to adequately allege control persons liability against General Atlantic").

Plaintiffs have sufficiently alleged that the Individual Defendants and Sequoia Defendants are liable under Section 15.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motions in their entirety. If the Court grants the Motions in any respect, it should grant leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: July 13, 2020

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Email: aapton@zlk.com
Adam C. McCall (SBN 302130)
Email: amccall@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: 415-373-1671

Nicholas I. Porritt
Elizabeth Tripodi
Email: nporritt@zlk.com
Email: etripodi@zlk.com
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290

*Attorneys for Lead Plaintiff Ognjen Kuraica*
*and Lead Counsel for the Class*

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq.
Email: lrosen@rosenlegal.com
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: (213) 785-2610

GLANCY PRONGAY & MURRAY LLP
Robert V. Prongay
Email: rprongay@glancylaw.com
Casey E. Sadler
Email: csadler@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150

*Attorneys for Plaintiff Rick Gammiere*
*and Additional Counsel for the Class*

**PROOF OF SERVICE**

I, Adam M. Apton, hereby declare under penalty of perjury as follows:

1. I am a partner at Levi & Korsinsky, LLP, with offices at 388 Market Street, Suite 1300, San Francisco, CA 94111. I am over the age of eighteen.

2. On July 13, 2020 I electronically filed the following **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

I certify under penalty of that the foregoing in true and correct.

Executed on July 13, 2020.

/s/ Adam M. Apton
Adam M. Apton