IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


IN RE DROPBOX SECURITIES          )   CV-19-6348-BLF
LITIGATION                        )
                                  )   SAN JOSE, CALIFORNIA
                                  )
                                  )   SEPTEMBER 24, 2020
                                  )
                                  )   PAGES 1-28
                                  )
                                  )
                                  )
_____   )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S


FOR THE PLAINTIFF:         **BY:  NICHOLAS IAN PORRITT**
                           LEVI AND KORSINSKY
                           1101 30TH STREET NW SUITE 115
                           WASHINGTON, DC 20007


FOR THE DEFENDANT:         **BY:  MATTHEW W. CLOSE**
                           O'MELVENY & MYERS LLP
                           400 SOUTH HOPE STREET
                           LOS ANGELES, CA 90071


APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:       SUMMER FISHER, CSR, CRR
                               CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES CONTINUED:

FOR THE DEFENDANT:        **BY:  ABBY F. RUDZIN**
                         O'MELVENY MYERS LLP
                         TIMES SQUARE TOWER
                         7 TIMES SQUARE
                         NEW YORK, NY 10036

FOR THE DEFENDANT:        **BY:  NINA F. LOCKER**
                         WILSON SONSINI GOODRICH & ROSATI
                         650 PAGE MILL ROAD
                         PALO ALTO, CA 94304


FOR THE DEFENDANT:        **BY:  LINDA JANE BREWER**
                              **SHUANG ZHANG**
                         QUINN EMANUEL URQUHART &
                         SULLIVAN, LLP
                         50 CALIFORNIA STREET, 22ND FLOOR
                         SAN FRANCISCO, CA 94111


FOR THE DEFENDANT:        **BY:  HARRY ARTHUR OLIVAR, JR.**
                         QUINN EMANUEL URQUHART SULLIVAN
                         LLP
                         865 SOUTH FIGUEROA STREET
                         10TH FLOOR
                         LOS ANGELES, CA 90017

SAN JOSE, CALIFORNIA                    SEPTEMBER 24, 2020

P R O C E E D I N G S

(COURT CONVENED AT 9:04 A.M.)

THE CLERK:  CALLING CASE 19-6348, IN RE DROPBOX.

COUNSEL, PLEASE STATE YOUR APPEARANCES.  AND IF WE COULD BEGIN WITH PLAINTIFF'S SIDE AND THEN MOVE TO DEFENSE.

MR. PORRITT:  GOOD MORNING, YOUR HONOR.

NICHOLAS PORRITT, LEVI & KORSINSKY, ON BEHALF OF THE PLAINTIFFS.

MS. LOCKER:  GOOD MORNING, YOUR HONOR.

NINA LOCKER FROM WILSON SONSINI GOODRICH & ROSATI ON BEHALF OF THE DROPBOX DEFENDANTS.

MR. CLOSE:  GOOD MORNING, YOUR HONOR.

MATTHEW CLOSE, O'MELVENY & MYERS, LLP, FOR THE UNDERWRITER DEFENDANTS.

THE COURT:  EXCUSE ME, MR. CLOSE.  I MAY HAVE TO SWITCH TO MY IPAD BECAUSE I CANNOT HEAR.

I'M SO FRUSTRATED THAT IT'S SOMETHING WITH MY COMPUTER, AND I'VE TURNED IT TO A HUNDRED PERCENT.

TIFFANY, SHOULD I -- I WILL SEE IF THAT WILL WORK.

(PAUSE IN PROCEEDINGS.)

THE COURT:  OKAY.  SORRY.  AND I DON'T THINK WE GOT THROUGH ALL OF THE APPEARANCES.

MR. CLOSE:  YOUR HONOR, I THINK I JUMPED THE GUN.

MS. LOCKER HAS A COLLEAGUE WHO I SEE ON THE HOLLYWOOD

SQUARES, SO I THINK IT WOULD BE EASIER IF I LET OTHER COUNSEL FOR DROPBOX GO FIRST.

MS. LOCKER:  OKAY.  I APOLOGIZE.  AS PART OF THE ZOOM EXPERIENCE, I THOUGHT MR. SEITE WAS GOING TO INTRODUCE HIMSELF.

LET ME INTRODUCE MY COLLEAGUE, MR. SEITE, WHO IS ALSO APPEARING ON BEHALF OF THE DROPBOX DEFENDANTS.

THANK YOU, YOUR HONOR.

MR. CLOSE:  YOUR HONOR, MATTHEW CLOSE, O'MELVENY & MYERS LLP, ON BEHALF OF THE UNDERWRITER DEFENDANTS.

WITH ME IN NEW YORK IS MY PARTNER ABBY RUDZIN.

YOUR HONOR, I NEED TO APOLOGIZE TO YOU AND THE COURT STAFF.  DUE TO AN OVERSIGHT, I DID NOT GET MS. RUDZIN'S PRO HAC VICE FILED UNTIL YESTERDAY AFTERNOON, BUT IF YOUR HONOR WOULD BE WILLING TO ACCOMMODATE US, I WOULD LIKE TO ORALLY MOVE FOR HER PERMISSION PRO HAC VICE, BASED ON YESTERDAY'S AFTERNOON'S FILING, AND WOULD REQUEST PERMISSION THAT SHE BE ABLE TO HANDLE TODAY'S ARGUMENT AND APPEAR ON BEHALF OF OUR CLIENTS.

THE COURT:  GOOD.  AND I WILL APPROVE THAT.  I WILL SIGN THE ORDER THAT YOU MUST HAVE FILED YESTERDAY, BUT HAVEN'T GOTTEN TO THAT YET, AND ALLOW HER ARGUMENT, AND WELCOME.

MR. CLOSE:  THANK YOU, YOUR HONOR.

MS. BREWER:  GOOD MORNING, YOUR HONOR.

MY NAME IS LINDA BREWER.  I'M WITH QUINN EMANUEL, AND I REPRESENT THE SEQUOIA DEFENDANTS.  WITH ME FROM QUINN EMANUEL AS WELL IS SHUANG ZHANG.

AND MY PARTNER, HARRY OLIVAR, I BELIEVE IS IN ATTENDANCE IN THE HEARING, BUT I'M NOT SEEING HIM BY VIDEO ON THE SCREEN.

SO I DON'T KNOW IF HE'S WAITING FOR ADMISSION INTO THE HEARING ROOM.

THE CLERK:  YES.  I DIDN'T HAVE HIM REGISTERED, SO I DIDN'T MOVE HIM OVER, BUT I WILL NOW.

THANK YOU.

MS. BREWER:  THANK YOU.

THE COURT:  ALL RIGHT.  AND IS THAT EVERYONE?  I THINK EVERY PARTY IS ACCOUNTED FOR.

MR. PORRITT, ARE YOU APPEARING ALONE ON BEHALF OF PLAINTIFFS?

MR. PORRITT:  I AM FLYING SOLO FOR THIS MORNING.

THE COURT:  EXCELLENT.

WELL, I GUESS YOU'VE GOT A BIG AHEAD OF YOU.  YOU KNEW THAT WHEN YOU FILED THE CASE.

MR. PORRITT:  I'M FEELING A LITTLE OUTNUMBERED, BUT THAT'S OKAY.

THE COURT:  ALL RIGHT.

SO UNFORTUNATELY, I HAVE A BIG CALENDAR TODAY, SO I'M GOING TO NEED TO MOVE YOU ALONG PRETTY QUICKLY ON THIS.  AND SO I'M GOING TO MAKE SOME BRIEF COMMENTS SO THAT YOU KNOW WHAT I'M LOOKING AT HERE.

THIS IS THE FIRST TIME THAT I'VE REVIEWED THE COMPLAINT. AND THE DEFICIENCIES THAT I SEE, GENERALLY I WOULD -- AND I

THINK THE NINTH CIRCUIT WOULD CERTAINLY EXPECT ME TO GIVE LEAVE TO AMEND, BECAUSE THERE'S NOTHING HERE THAT I THINK IS ABSOLUTELY DEAD IN THE WATER.

BUT MR. PORRITT, I HAVE REAL CONCERNS WITH -- FRANKLY, WITH MAYBE THE BASIC THEORY OF THE CASE HERE.  IT DOES APPEAR THAT DROPBOX ACCURATELY REFLECTED ITS ANTICIPATED DECLINING REVENUES, AND DID DISCLOSE THE COMPONENTS OF ITS REVENUE OF WHICH THE CONVERSION FROM "FREE" TO "PAID" WAS ONE OF THE ELEMENTS.

AND SO IT DOES APPEAR TO ME, JUST AT THE HIGH LEVEL AS MS. LOCKER BRIEFS, THAT THIS THEORY IS GOING TO BE DIFFICULT FOR YOU TO PROVE.  I HAVE SOME REAL CONCERNS ABOUT THAT.

I ALSO -- I'M NOT SURE IT'S AS IMPORTANT, I DON'T HAVE ANY PLEADING OF FACTS REGARDING HOW SIGNIFICANT THIS CONVERSION IS, BUT THE FACT THAT IT'S IDENTIFIED IN THE DROPBOX PAPERS AS ONE OF THREE ELEMENTS OF THEIR REVENUE, I THINK WOULD SUGGEST THAT IT'S MATERIAL.

SO I'M NOT SURE THAT'S REALLY THE ISSUE HERE, I JUST DON'T KNOW HOW ANY USER, OR ANY INVESTOR RATHER, WOULD NOT UNDERSTAND THAT IF REVENUE IS GOING DOWN AND REVENUE IS -- IF REVENUE RATES ARE GOING DOWN, LET ME BE CLEAR, I UNDERSTAND THAT THERE WAS CONTINUING TO BE AN INCREASE, THAT THERE WOULD NEED TO BE A FURTHER DISCLOSURE AT SUCH A GRANULAR LEVEL.

I THINK ONE OF YOUR MOST DIFFICULT PROBLEMS HERE IS GOING TO BE THE STATUTE OF LIMITATIONS.  AND I WILL NEED YOU TO

EXPLAIN TO ME NOW, BECAUSE YOU CERTAINLY DIDN'T IN THE COMPLAINT AND IT'S PROBABLY GOING TO NEED TO BE IN AN AMENDMENT, YOU SUGGEST THAT THE NOVEMBER 2018 10Q ALERTED THE PLAINTIFFS TO THIS CASE, SO THAT WOULD BRING YOU WITHIN THE STATUTE OF LIMITATIONS.

I LOOKED AT THE AUGUST 2018 10Q, AND I NEED YOU TO TELL ME WHAT DID YOU DISCOVER IN THE NOVEMBER DISCLOSURE THAT WASN'T ALREADY IN THE AUGUST DISCLOSURE?  I DON'T SEE ANYTHING.  IF YOU CAN DEFINE SOMETHING, I WOULD LET YOU REPLEAD THAT, BUT I'M MISSING IT ENTIRELY.  AND SO THAT IS A CONCERN TO ME.

I ALSO -- I WOULD AGREE WITH THE SEQUOIA DEFENDANTS, I DON'T SEE ENOUGH ALLEGATION THAT THEY ARE CONTROL PERSONS. THAT, AGAIN, I THINK IS A PLEADING ISSUE, AND I WOULD PROBABLY GIVE YOU THE CHANCE TO REPLEAD THAT.

SO UNFORTUNATELY BECAUSE MY TIME IS TIGHT, I'M GOING TO GIVE EACH SIDE 15 MINUTES.  YOUR BRIEFING WAS VERY THOROUGH, AND I APPRECIATE THAT.

SO MS. LOCKER, THIS WAS YOUR MOTION, I'M GOING TO LET YOU START.  AND IF YOU WANT TO SHARE YOUR TIME WITH THE OTHERS, I'M GLAD TO LET YOU DO THAT.

MS. LOCKER:  YES, I WOULD LIKE TO SHARE SOME TIME WITH SEQUOIA, WHO WOULD ALSO LIKE TO ADDRESS THE CONTROL ISSUE.

THANK YOU VERY MUCH, YOUR HONOR.

SO IT'S THE DROPBOX DEFENDANT'S POSITION THAT THE CURRENT CLAIM IS BOTH IMPLAUSIBLE ON ITS FACE, AND BARRED BY THE

STATUTE OF LIMITATIONS, AND I WOULD LIKE TO ADDRESS THOSE TWO ISSUES, BRIEFLY.

THE REGISTRATION STATEMENT EXPLAINS QUITE CLEARLY THAT THE NUMBER OF PAYING USERS DEPENDED IN PART ON THE CONVERSION OF FREE TO PAID USERS, AND THE REGISTRATION STATEMENT DISCLOSED THAT THE NUMBER OF PAYING USERS WAS ONE OF THE TWO METRICS THAT DETERMINED TOTAL REVENUE.

INDEED, THE REGISTRATION STATEMENT DISCLOSED--AND THAT'S AT THE REGISTRATION STATEMENT, PAGES 64 AND 65.  THE REGISTRATION STATEMENT WENT FURTHER AND DISCLOSED THAT IN THE EIGHT QUARTERS LEADING UP TO THE IPO, THE GROWTH AND PAYING USERS WAS THE PRINCIPAL DRIVER IN THE GROWTH OF DROPBOX'S REVENUE.

AND WHAT WE CAN SEE ON SLIDE 1 -- AND I DON'T KNOW, I HOPE YOUR HONOR CAN SEE THE DEMONSTRATIVES.

THE COURT:  I CAN.

AND MS. LOCKER, WOULD YOU E-MAIL THOSE TO MY COURTROOM DEPUTY?

MS. LOCKER:  I DID.

THE COURT:  YOU ALREADY DID.  WONDERFUL.  I DO SEE THEM.

MS. LOCKER:  AND I CIRCULATED THEM TO ALL PARTIES YESTERDAY.

THE COURT:  THANK YOU.

MS. LOCKER:  AND YOUR HONOR, WITH RESPECT TO THE

DEMONSTRATIVE, THE PIN CITES, WHICH I'M NOT GOING TO GO THROUGH, ARE ON THE SLIDE IN THE BOTTOM.

SO WHAT WE HAVE IS A REGISTRATION STATEMENT THAT DISCLOSED THAT REVENUE IS IN PART DETERMINED BY THE NUMBER OF PAYING USERS, WHICH IS IN PART DETERMINED BY CONVERSIONS, CONVERSIONS OF "FREE" TO "PAID" USERS.

AS YOU CAN SEE ON SLIDE 1, IN TERMS OF HISTORICAL PERFORMANCE, THE REGISTRATION STATEMENT DISCLOSED THE NUMBER OF PAYING USERS AT THE END OF EACH OF THE THREE YEARS LEADING UP TO THE IPO.  AND WITH A VERY EASY CALCULATION, AND YOU SEE THAT IN THE FIRST EXCERPT, THESE NUMBERS SHOW THAT WHILE THE TOTAL NUMBER OF PAYING USERS HAD INCREASED SUBSTANTIALLY, THE RATE OF GROWTH OF PAYING USERS HAD DECLINED DURING THAT TIME PERIOD.

AND THE REGISTRATION STATEMENT ACTUALLY CALCULATED THE GROWTH RATE FOR INVESTORS.  THE REGISTRATION STATEMENT SHOWED AND STATED THAT THE GROWTH RATE OF PAYING USERS HAD DECLINED FROM 35 PERCENT, THIS IS IN THE NEXT TWO EXCERPTS, 35 PERCENT, BETWEEN 2015 AND 2016, TO 25 PERCENT BETWEEN 2016 AND 2017.

SO THE REGISTRATION STATEMENT WAS CLEAR THAT THE GROWTH RATE OF PAYING USERS HAD DECLINED IN THE THREE YEARS LEADING UP TO THE IPO.

AND THEN WHEN YOU LOOK AT SLIDE 2, AS YOUR HONOR NOTED, WE HAD THE SAME TYPES OF DISCLOSURES, BUT EVEN MORE FULSOME WITH RESPECT TO REVENUE.  WE HAVE, IN THE REGISTRATION STATEMENT, THE ANNUAL REVENUE FOR THE THREE YEARS LEADING UP TO THE IPO,

2018, THAT'S THE FIRST EXCERPT, AND EIGHT QUARTERS OF REVENUE LEADING UP TO THE IPO.  AND AGAIN, INVESTORS COULD DO THEIR OWN CALCULATIONS, BUT THE REGISTRATION STATEMENT ACTUALLY DID IT FOR THE INVESTORS.

AND AGAIN, THE PIN CITES ARE BELOW.  THE REGISTRATION STATEMENT DISCLOSED THAT THE RATE OF REVENUE GROWTH HAD SLOWED FROM 40 PERCENT BETWEEN 2015 AND 2016, TO 31 PERCENT BETWEEN 2016 AND 2017.  AND THOSE ARE THE TWO EXCERPTS BELOW THE NUMBERS, YOUR HONOR.

AND IF THAT WASN'T ENOUGH, RIGHT, YOU SEE THE 40 PERCENT TO 31 PERCENT.  AND IF THAT WASN'T ENOUGH, THE REGISTRATION STATEMENT SAID IN PLAIN ENGLISH, THE COMPANY'S REVENUE GROWTH RATE HAD DECLINED IN RECENT PERIODS, AND WARNED THAT IT MIGHT CONTINUE TO DO SO IN THE FUTURE.

SO THE RELATIONSHIP BETWEEN REVENUE, THE NUMBER OF PAYING USERS AND THE USER CONVERSION, AND BEING TOLD THAT REVENUE AND PAYING USER GROWTH HAD DECLINED COMING UP IN THE YEARS APPROACHING THE IPO, THERE'S SIMPLY NO EXPLANATION FOR HOW AN INVESTOR COULD BE LEFT WITH THE MISIMPRESSION THAT DROPBOX'S RATE OF CONVERSION WAS ACTUALLY INCREASING.

AND AS THE COURT IS I'M SURE WELL AWARE, THERE'S NO DUTY OF COMPLETENESS.  OF COURSE, USER CONVERSION MIGHT WELL HAVE BEEN INTERESTING TO SHAREHOLDERS, BUT THAT'S NOT THE LAW THAT YOU HAVE TO KEEP GIVING MORE, AND MORE, AND MORE GRANULAR DETAIL, THERE NEEDS TO BE AN OMISSION THAT IS INCONSISTENT WITH

WHAT THE REGISTRATION STATEMENT SAID, AND OF COURSE, THAT'S NOT HERE.  SO THE DROPBOX DEFENDANTS BELIEVE THE CLAIM IS ACTUALLY IMPLAUSIBLE ON ITS FACE.

AND I VERY QUICKLY WANT TO JUST MAKE ONE COMMENT ON SLIDE 4.  SLIDE 4 IS A VERY INTERESTING SLIDE, YOUR HONOR, BECAUSE WHAT SLIDE FOUR SHOWS IS THE FOLLOWING.

THE PLAINTIFFS, IN PARAGRAPHS 49, 50 AND 51, BASICALLY THEY ACTUALLY SAY QUITE CLEARLY, THAT THEY RELIED ON THE COMPANY'S PUBLIC DISCLOSURES REGARDING PAYING USERS AND REVENUE TO DRAW THEIR CONCLUSION REGARDING USER CONVERSION, AND IT WAS DECLINING AT THE TIME OF THE IPO.

PARAGRAPH 49 AND 50, YOU WILL SEE IN THE COMPLAINT, BASED ON THE DATA IN THE RED BOX, YOU SEE THE RED BOX?

THE COURT:  YES.

MS. LOCKER:  OKAY.  SO THERE'S CHARTS IN 49 -- IN PARAGRAPHS 49 AND 50, WHICH IS DRAWING FROM THIS DATA.  AND IN PARAGRAPH 51, AND THE QUOTE IS BELOW, BASICALLY PLAINTIFFS SAY, THESE CHARTS ILLUSTRATE THAT DROPBOX WAS EXPERIENCING A MATERIAL DECLINE OR SLOW DOWN IN TERMS OF USER CONVERSIONS IN THE FIRST QUARTER OF 2018, WHICH WAS WHEN THE COMPANY WENT PUBLIC.

SO GIVEN THAT THEY CONCEDED THAT THEY ARE BASING THEIR CONCLUSIONS REGARDING USER CONVERSION ON PUBLICLY DISCLOSED METRICS, IT'S NOT POSSIBLE THAT THEY WERE MISLEAD.  BECAUSE INFORMATION REGARDING THOSE METRICS WERE SET OUT IN THE

REGISTRATION STATEMENT.

AND THEN VERY QUICKLY, AND THEN I WILL TURN IT OVER TO, I THINK MS. BREWER, JUST A COUPLE OF COMMENTS ON THE STATUTE OF LIMITATIONS, YOUR HONOR.

AND THE BEST WAY TO DEAL WITH THIS IS MAYBE TO GO TO SLIDE 3. SO WHAT YOU SEE IN SLIDE 3, YOUR HONOR, IS ALL THE WAY UP THROUGH Q2 OF 2018, PLAINTIFFS PURPORT TO BE UNAWARE OF THEIR CLAIMS.

THIS IS A CASE THAT'S VERY DIFFERENT THAN SOME OF THE CASES THAT PLAINTIFF CITED IN THEIR BRIEF WHERE YOU HAVE DISCLOSURES OF DISPARATE INFORMATION ABOUT DIFFERENT ASPECTS OF A COMPANY'S BUSINESS, WHERE SOMETIMES IT'S HARD TO PUT TOGETHER TO SEE IF IT MAKES A CLAIM.

HERE, WHAT WE ARE TALKING ABOUT IS THE CONSISTENT DISCLOSURE REGARDING TWO METRICS, PAYING USERS, AND REVENUE. THAT'S EVERYTHING THAT THE PLAINTIFFS SAY THEY BASE THEIR ALLEGATION REGARDING USER CONVERSION AND THE OMISSION OF USER CONVERSION ON.

AND WHEN YOU LOOK AT Q3 OF 2018 AND COMPARE TO THE OTHER INFORMATION THAT WAS AVAILABLE PRIOR TO Q3 OF 2018, THERE'S ABSOLUTELY NO NEW INFORMATION. BECAUSE WHAT YOU CAN SEE FROM THIS CHART IS THAT IN TERMS OF PAYING USERS AND REVENUE, RESULTS THAT ARE COMPLETELY CONSISTENT WITH THE PRIOR TREND. STRONG GROWTH. THERE IS GROWTH, OCCURRING AT A DECLINING RATE. AND AS THIS COURT HELD IN WELGUS, THE ONE-YEAR STATUTE OF

LIMITATIONS DOES NOT RESET WHEN ADDITIONAL INFORMATION, HERE, Q3 2018, RESULTS FOR PAYING USERS AND RESULTS FOR REVENUE, COMES TO LIGHT THAT SIMPLY CONFIRMS PLAINTIFFS HAVE A CLAIM, OR EVEN WHEN THAT INFORMATION MAY SUGGEST YOU HAVE A STRONGER CLAIM.  BUT THAT'S WHAT WE HAVE HERE.

AND YOUR HONOR, WE WOULD SUBMIT THAT IT FALLS DIRECTLY WITHIN THIS COURT'S DISCUSSION AND HOLDING IN WELGUS.

THANK YOU, YOUR HONOR.  I DON'T -- I DIDN'T KEEP TRACK OF TIME BECAUSE --

THE COURT:  YOU ARE DOING WELL.

MS. LOCKER:  BUT I WANTED TO GIVE MS. BREWER A COUPLE OF MOMENTS, IF I HAVEN'T RUN OUT OF TIME.

THE COURT:  YOU HAVE NOT.

GO AHEAD, MS. BREWER.

MS. BREWER:  WELL, IN THE INTEREST OF TIME, WE RESPECT THE COURT'S TENTATIVE RULING AND AGREE WITH IT.

WE HAVE JOINED IN DROPBOX'S MOTION ON BEHALF OF SEQUOIA, SO WE THINK THE FAILURE TO ALLEGE A PRIMARY VIOLATION WARRANTS DISMISSAL OF THE SECTION 15 CLAIM ASSERTED AGAINST SEQUOIA, BUT ALSO AGREE WITH YOUR HONOR'S TENTATIVE RULING THAT THE FAILURE TO ALLEGE SUFFICIENT FACTS SUPPORTING A CONTROLLED PERSON CLAIM ALSO WARRANTS DISMISSAL, AND THAT PLAINTIFFS SHOULD AMEND IF THEY CAN, TO INCLUDE ADDITIONAL FACTUAL ALLEGATIONS.

SO I WILL RESERVE THE REST OF THE TIME, IF YOUR HONOR WOULD WISH FOR US TO RESPOND TO PLAINTIFF'S ARGUMENT, BUT

OTHERWISE WE WILL SUBMIT ON THE PAPERS.

THE COURT:  SO I DO HAVE A COUPLE OF MINUTES, AND I WILL LET YOU CHOOSE, MS. BREWER AND MS. LOCKER, YOU CAN EITHER SAVE FIVE MINUTES FOR REBUTTAL, AND I THINK THAT MIGHT BE THE BEST THING, AND I THINK I WILL COME BACK TO YOU ON THAT, BECAUSE IT MAY BE THAT YOU SHOULD ALSO COMMENT ON THE OTHER ALLEGATIONS ON THE COHORT STATEMENTS AND THE PAID USER STATEMENTS AND THE 303 TREND ON THE CONVERSION RATES.

THAT'S GETTING DOWN INTO THE WEEDS, I KNOW YOU ATTACK THIS ON THE BASIC THEORY, WHICH WAS APPEALING TO ME, I AGREE WITH YOU.  I FRANKLY DON'T SEE THAT THERE'S SUFFICIENT ALLEGATIONS ON THIS INDIVIDUAL CATEGORIES OF FALSE STATEMENTS, BUT I WILL SAVE FIVE MINUTES FOR YOU TO COME BACK SINCE IT'S YOUR MOTION.

SO MR. PORRITT, IT IS OFTEN HARD TO ADDRESS A CONCERN THAT THE BASIC THEORY IS WRONG, AS OPPOSED TO DETAILS, BUT I DO NEED YOU TO HELP ME OUT HERE.

I JUST DON'T SEE HOW IT IS REASONABLE THAT A REGISTRATION STATEMENT THAT DISCLOSES THE RATE OF THE REVENUE, THAT THE RATE WAS DECLINING AND IDENTIFIED THE COMPONENTS OF THE REVENUE FORECAST, COULD POSSIBLY PUT AN INVESTOR -- COULD POSSIBLY REASONABLY CONCLUDE THAT THE CONVERSION RATE WAS GROWING WHEN REVENUE AND PAYING USER RATES WERE DECLINING.

IT'S COMPLETELY IMPLAUSIBLE TO ME, BUT THE STATUTE OF LIMITATIONS MAY BE YOUR MORE CONCERNING PROBLEM HERE BECAUSE OF THE SIMILARITY IN THE REPORTING AT Q3 OF 2018 VERSUS Q2 AND THE

PRIOR ONES.  BUT THOSE ARE EASY TO JUXTAPOSE, I JUST DON'T SEE A DIFFERENCE.

SO I'M GOING TO GIVE YOU YOUR 15 MINUTES AND LET ME HEAR YOUR ARGUMENT.

MR. PORRITT:  AND I THINK I WILL BE QUICKER THAN THE 15 MINUTES.

I THINK THE ANSWER, FRANKLY, TO BOTH YOUR QUESTIONS, HINGES ON THE SAME ISSUE, WHICH IS THAT THIS IS FUNDAMENTALLY ABOUT A TREND.  SO THIS IS REALLY AN 303 CASE, AND THIS REALLY SHOWS THE IMPORTANCE OF ITEM 303.

MANY OF THE ARGUMENTS ADDRESSED BY DEFENDANTS MAY HAVE MORE PERSUASIVE POWER IF THIS WAS A SECTION 10(B)(5) CASE.  AND THERE IS NO DUTY OF COMPLETENESS, AS MS. LOCKER SAID.  BUT UNDER SECTION 11, AND IN THE REGISTRATION STATEMENT, THERE IS A DUTY OF COMPLETENESS, AND IT'S IMPOSED BY REGULATION S-K, AND HERE, SPECIFICALLY ITEM 303.

SO WE WOULD SUBMIT UNDER THE REGISTRATION, UNDER THE SECURITIES ACT FOR REGISTRATION STATEMENT, IT'S NOT SUFFICIENT TO DISCLOSE THE COMPONENTS, AS YOUR HONOR EXPRESSED IT, OF ASPECTS OF THE BUSINESS.  ITEM 303 IS VERY EXPLICIT AND SAYS IT MUST DESCRIBE ANY KNOWN TRENDS OR UNCERTAINTIES THAT HAVE HAD OR THAT IS REASONABLY EXPECTED TO HAVE A MATERIAL FAVORABLE OR UNFAVORABLE IMPACT ON SALES REVENUES, ET CETERA.

SO IT'S NOT ENOUGH TO BURY IN THE FINANCIAL SCATTERED THROUGHOUT THE FINANCIAL STATEMENTS OR DESCRIPTION OF THE

BUSINESS, A REVENUE GROWTH HERE FOR ONE YEAR AND A REVENUE GROWTH PERCENTAGE FOR ANOTHER YEAR, WHEN THE COMPANY KNOWS, I THINK HERE, IT'S ADMITTED THAT THEY KNOW, THAT THE REVENUE GROWTH, WHICH MEANS THE USER CONVERSION RATE, IS DECLINING AT THE TIME, AND THAT IS A TREND THAT IN FACT PERSISTS AS WE NOW KNOW.

THE COURT: WELL, YOU WOULD AGREE THAT DROPBOX CLEARLY DISCLOSED THAT THE RATE OF REVENUE INCREASE WAS DECLINING AND THE RATE OF PAID CUSTOMERS WAS DECLINING. YOU WOULD AGREE THAT THAT WAS DISCLOSED.

MR. PORRITT: I MEAN, THE RAW FIGURES ARE THERE. SO THEY DISCLOSED WHAT THE RATE WAS --

THE COURT: WELL, AS A MATTER OF LAW, I PRESUME THAT A REASONABLE INVESTOR HAD A FOURTH GRADE EDUCATION AND CAN DO SIMPLE ARITHMETIC, WHICH WAS MULTIPLICATION AND DIVISION, AND MAYBE ELEMENTARY FRACTIONS, FOURTH GRADE.

SO LET'S MOVE OFF OF THAT.

MR. PORRITT: WELL, YOUR HONOR, I THINK IT'S IMPORTANT, IT'S THE CHANGE OVER TIME THAT'S IMPORTANT, AND REALIZE THE IMPACT OF THE BUSINESS.

AND IF YOU LOOK AT THE REGISTRATION STATEMENT, YOU HAVE MULTIPLE -- LOTS OF DATA PRESENTED IN THE REGISTRATION STATEMENT AND ALL THE SLOPES ARE SLOPING UPWARDS TO THE RATE INDICATING GROWTH.

THE COURT: CORRECT.

MR. PORRITT:  BUT THIS WAS A KEY STATISTIC, AND IT SLOPPED DOWN TO THE LEFT, AND IT DOESN'T APPEAR THAT -- THAT TREND DOESN'T APPEAR ANYWHERE, JUST THAT THE RAW FIGURES ARE SCATTERED THROUGHOUT.

AND WE WOULD SUBMIT ITEM 303 SPECIFICALLY DOESN'T PUT THE BURDEN ON AN INVESTOR TO FIGURE THAT OUT, IT PUTS THE BURDEN ON THE --

THE COURT:  ARE YOU --

MR. PORRITT:  SORRY, YOUR HONOR.

THE COURT:  ARE YOU SUGGESTING THEN THAT IN AN AMENDED COMPLAINT, THAT YOU WILL HAVE A SINGLE CAUSE OF ACTION UNDER SECTION 303?

MR. PORRITT:  SO THE REASON WHY ALL THE OTHER STATEMENTS WERE IN THERE WAS TO PUT THAT ALL INTO CONTEXT AND TO EXPLAIN THE MISLEADING NATURE.  BUT THE FOCUS OF THIS CLAIM IS REALLY ITEM 303, THE KNOWN TREND.

THE COURT:  SO THEN -- THEN IF I DISMISS YOUR OTHER CLAIMS WITHOUT LEAVE TO AMEND, THEN YOU WOULD AGREE WITH THAT; IS THAT WHAT YOU ARE SUGGESTING RIGHT NOW?

MR. PORRITT:  WELL, I GUESS I WOULDN'T SUBDIVIDE THE CLAIMS INTO, WE HAVE A SECTION 11 CLAIM BASED ON A STATEMENT ON COHORTS, AND A SEPARATE SECTION 11 CLAIM BASED ON KNOWN TREND, AND A SECTION 11 CLAIM ON USER GROWTH.

I MEAN, IT'S THE REGISTRATION STATEMENT IN GENERAL IS MISLEADING AND FAILS TO DISCLOSE MATERIALS REQUIRED TO BE

DISCLOSED UNDER ITEM 303.  SO THAT'S THE CLAIM.

SO I WOULDN'T SLICE IT THAT THIN OR DISSECT IT BECAUSE I THINK ALL THE ALLEGATIONS IN THE OTHER STATEMENTS WHICH MAKE THE ITEM 303 TREND OMISSION MATERIAL, WHICH IS ANOTHER ASPECT WE HAVE TO PLEAD, ALTHOUGH I DON'T THINK IT'S A MATTER THAT CAN BE ADDRESSED ON THE MOTION TO DISMISS, WE WOULD PROBABLY STILL INCLUDE THOSE STATEMENTS, YOUR HONOR.

SO WE WOULD CLARIFY, I THINK, THAT THE KEY ALLEGATION HERE IS CERTAINLY THE OMISSION OF THE ITEM 303 TREND.

THE COURT:  ALL RIGHT.

THE OTHER AREAS, THE COHORT STATEMENTS HAVE NOTHING TO DO WITH THE TREND.

WELL, ALL RIGHT.  SO TELL ME WHAT YOU CAN ABOUT THE STATUTE OF LIMITATIONS.

MR. PORRITT:  SO THE FOCUS OF THIS COMPLAINT, OR UNDERSTANDING THE FUNDAMENTAL THEORY OF THE TREND, THE QUESTION OF THE STATUTE OF LIMITATIONS BECOMES, WHEN WOULD A REASONABLE INVESTOR UNDERSTAND THAT A TREND HAS -- WAS IN EXISTENCE AT THE TIME OF THE IPO.

AND I DON'T THINK YOU CAN JUST LOOK AT THE DATA IN AUGUST 2018, FOR INSTANCE, AND SAY, WELL THAT DISCLOSED THIS TREND.

THE COURT:  WELL, ACTUALLY, THE LAW AND STATUTE OF LIMITATIONS AND DELAYED DISCOVERY, THE LAW IS WHEN WOULD YOU HAVE HAD ENOUGH INFORMATION TO PUT YOU ON INQUIRY NOTICE TO DO

A REASONABLE INVESTIGATION.  IT'S NOT, WHEN WOULD THE CLUB OF THE TREND HAVE HIT YOU OVER THE HEAD SO THAT -- WE ARE BACK TO OUR FOURTH GRADER -- WOULD KNOW THAT THERE WAS A PROBLEM.

MR. PORRITT:  AND I THINK THAT BECOMES VERY MUCH A QUESTION OF FACT AND A QUESTION OF DEGREE.  ARE TWO DATA POINTS ENOUGH, OR ARE THREE DATA POINTS ENOUGH, OR ARE FOUR DATA POINTS ENOUGH?

WE POINTED TO NOVEMBER AS REALLY THE EARLIEST TIME I THINK A REASONABLE INVESTOR MIGHT HAVE BEEN ABLE TO DISCERN THIS TREND.  IMPORTANTLY, NO ANALYST DISCUSSED THIS TREND UNTIL NOVEMBER 2019, UNTIL AFTER OUR COMPLAINT WAS FILED.

SO IT'S NOT AS IF THERE ARE ANALYSTS REPORTS NOTING THIS, AND THESE ARE PAID FINANCIAL ANALYSTS LOOKING AT THE SAME DATA THAT DEFENDANTS NOW SAY MAKES IT APPARENT TO EVERY EVEN INVESTOR WITH A FOURTH GRADE EDUCATION, IN YOUR HONOR'S WORDS, CAN SEE WHAT'S GOING ON.  NO ANALYST THAT HAS MORE THAN A FOURTH GRADE EDUCATION WAS DRAWING THIS CONCLUSION IN THE REPORTS.  IT WASN'T A FACT PRESENTED IN ANY REPORT UNTIL NOVEMBER 2019 AFTER OUR COMPLAINT WAS FILED.

SO WE THINK IT WOULD BE VERY MUCH A QUESTION OF FACTUAL INQUIRY AS TO WHETHER A REASONABLE INVESTOR COULD DISCERN THIS TREND SUFFICIENT TO KNOW THAT THE REGISTRATION STATEMENT WAS --

THE COURT:  OKAY.

MR. PORRITT, I STARTED OUT BY SAYING I'M GOING TO ABSOLUTELY GIVE YOU LEAVE TO AMEND.  IT'S NOT A ONE AND DONE,

AND YOU CERTAINLY UNDERSTAND THAT.

I'M GOING TO NEED SOME FACTUAL PLEADING THAT SUPPORTS WHY NOVEMBER OF 2018 PUT THE PLAINTIFFS ON NOTICE THAT WAS DIFFERENT THAN PRIOR.  AND I'M GOING TO LEAVE IT TO YOU AS TO WHAT THOSE FACTS WOULD BE.

IN TERMS OF -- I'M NOT FINDING THAT YOUR COMPLAINT IS PLAUSIBLE AT THIS TIME.  YOU'RE PULLING OUT A TREND ON THE CONVERSION FROM "FREE" TO "PAID" USERS.

IT'S CLEARLY AN IMPORTANT -- IT'S CLEARLY AN ELEMENT, THAT'S DISCLOSED IN THE REGISTRATION STATEMENT, BUT YOU DON'T GIVE ME ANY FACTUAL PLEADING AS TO WHY THAT TREND, WHICH IS A COMPONENT OF THE TRENDS THAT WERE CLEARLY DISCLOSED, THE TREND OF DECLINING RATE OF REVENUE IN A GROWING REVENUE STREAM, THE RATE OF INCREASE WAS DECLINING, AND THE DISCLOSURE OF A DECLINING RATE OF THE NUMBER OF PAID USERS.

AND SO THOSE TRENDS WERE DISCLOSED.  AND SO I WOULD NEED MORE FACTUAL PLEADING AS TO WHY THIS NOW TERTIARY LEVEL OF TREND DISCLOSURE WOULD BE REQUIRED.  AND I'M CERTAINLY GOING TO LET YOU DO THAT, BUT I'M NOT -- I DON'T SEE IT THERE YET.

I WILL JUST COMMENT THAT THE -- I DON'T SEE ANYTHING -- I DON'T REALLY SEE ANYTHING WRONG WITH THE COHORT STATEMENTS, I DON'T THINK THEY PROMISE ANYTHING TO SAY THAT OVER TIME, THAT COHORT, THAT USERS IN THE SAME GROUP OVER TIME, INCREASED THEIR NUMBERS OF PAID USERS AND THE AMOUNT THAT THEY PAY SEEMS FINE, AND THE USER CHARACTERISTIC STATEMENTS, I DON'T SEE THAT

THEY'RE PROMISING THAT THESE OVERLAPPING CHARACTERISTICS ARE GOING TO YIELD ANYTHING IN PARTICULAR, IT LOOKS LIKE IT'S SHOWING THAT THIS IS WHERE OUR FERTILE GROUND IS.

SO I THINK YOU ARE GOING TO NEED TO GIVE ME MORE ON THOSE AS WELL.  ANY COMMENT ON THE SEQUOIA DEFENDANTS ISSUE WITH NOT PLEADING ENOUGH FACTS TO SHOW THAT THEY ARE CONTROL PERSONS, OR IS THAT JUST SOMETHING YOU WILL AMEND ON?

MR. PORRITT:  WELL, WE WILL CERTAINLY TRY TO ADDRESS THAT IN OUR AMENDMENT, BUT WE THOUGHT WE PLEADED ENOUGH, OBVIOUSLY AS WE STATED IN OUR PAPERS.

I THINK, AGAIN, WE GET INTO A QUESTION OF DEGREE OF HOW MUCH WE PLEADED TO SHOW THEY'RE IN A POSITION TO EXERCISE ACTUAL CONTROL.  WE DON'T HAVE TO PLEAD ACTUAL CONTROL HERE.  YOUR HONOR DISAGREES, WE RESPECT THAT, SO WE WILL TRY AND ADD MORE.

THE COURT:  CORRECT.

WELL, BUT WHAT I HAVE HERE IS THIS IS A MINORITY SHAREHOLDER WITH ONE BOARD SEAT.  SO I DON'T THINK THAT GETS YOU OVER THE THRESHOLD, BUT I'M GOING TO LET YOU TELL ME THAT THERE'S MORE.

MR. PORRITT:  WELL, I THINK AS WE PLEADED, THERE'S MORE IN TERMS OF THERE'S REGISTRATION RIGHTS, AND THERE'S OTHER CONTRACTURAL RIGHTS IN SHAREHOLDER AGREEMENTS AND SO ON.  SO I THINK THERE IS MORE, I THINK IT DOES SAY MORE THAN SIMPLY ONE BOARD SEAT, AND I THINK THE MINORITY HOLDING IS OBVIOUSLY

SIGNIFICANT.  AND THEY ARE AN EARLY VENTURE CAPITALIST, WHICH I THINK IS ALSO A FACT THE COURT SHOULD CONSIDER.

THE COURT:  OKAY.  SURE.

MR. PORRITT:  SO WE THINK WE PLEADED ENOUGH ON THIS, AS WE SAID IN OUR PAPERS.  WE UNDERSTAND THE COURT DISAGREES, AND SO, YOU KNOW, WE WILL TRY AND ADD MORE.

THE COURT:  WELL, IT WOULD BE THE RARE SECURITIES CASE THAT MADE IT ON ITS FIRST EFFORT, BUT OF COURSE I WILL HAVE A WRITTEN ORDER, BUT I THINK YOU UNDERSTAND THE NATURE OF MY CONCERNS.

MS. LOCKER, WOULD YOU LIKE TO CLOSE UP?

MS. LOCKER:  YES, YOUR HONOR.

AND I WILL BE QUICK, GIVEN THE COURT'S INCLINATION.

OBVIOUSLY, I'M GOING TO ADDRESS JUST ITEM 303.

FIRST, THE DROPBOX DEFENDANTS OBVIOUSLY AGREE WITH THE COURT WITH RESPECT TO THE LACK OF ANY FACTUAL PLEADING REGARDING THE CONVERSION RATE AT ANY TIME BEFORE, DURING OR AFTER THE IPO.

BUT THERE'S ACTUALLY TWO OTHER REASONS WHY THE ITEM 303 CLAIM FAILS, AND I UNDERSTAND IT MAY BE AMENDMENT, BUT I THOUGHT I WOULD JUST ADDRESS THEM VERY QUICKLY SO THE COURT COULD HAVE THE BENEFIT OF THE THINKING.

SECOND, EVEN IF, LET'S ASSUME THE PLAINTIFFS HAD ESTABLISHED FACTS, PLED ENOUGH FACTS TO ESTABLISH A TREND IN THE RATE OF USER CONVERSION, AND KNOWLEDGE BY THE DEFENDANTS OF

THAT TREND, THEY DON'T EXPLAIN HOW OR WHY THAT TREND WAS LIKELY TO HAVE A MATERIAL ADVERSE IMPACT ON REVENUES.

AS THE COURT CAN SEE IN ANY ONE OF THE CHARTS IN OUR BRIEF, THE CHARTS IN OUR DEMONSTRATIVES, DROPBOX HAD STRONG QUARTER OVER QUARTER REVENUE GROWTH LEADING UP TO THE IPO, AND IN THE EIGHT QUARTERS FOLLOWING THE IPO.

SO EVEN IF THE RATE OF USER CONVERSION, THE RATE OF USER CONVERSION WAS SLOWING, DROPBOX'S REVENUES NEVERTHELESS CONTINUED TO INCREASE.  AND THE TREND LINE, AGAIN, VERY IMPORTANT, THE TREND LINE IS REMARKABLY CONSISTENT BEFORE AND AFTER.

AND IN ADDITION, EVEN IF THE RATE OF, AND THIS IS PURELY HYPOTHETICAL, EVEN IF THE RATE OF USER CONVERSION SLOWED MORE THAN DROPBOX ANTICIPATED AFTER THE IPO, WHICH IS NOT -- I'M NOT SAYING THAT'S THE CASE, THAT'S VERY IMPORTANT, THERE'S MULTIPLE WAYS TO DRIVE REVENUE IN THE DROPBOX BUSINESS MODEL, AND THIS IS SET OUT IN THE REGISTRATION AND WE WILL ADDRESS IT IN THE BRIEF, BUT I JUST WANT TO MENTION IT NOW.  ONE IS ATTRACTING PAYING USERS WHO DON'T SIGN UP FOR "FREE" IN THE FIRST INSTANCE.

THE SECOND, OF COURSE, IS CONVERTING ADDITIONAL REGISTERED USERS TO PAYING USERS, BUT A SLIGHTLY SLOWER RATE THAN ANTICIPATED.

THE THIRD IS TEAM EXPANSION, MEANING FROM GOING FROM TWO USERS IN AN ENTERPRISE TO 50 USERS IN AN ENTERPRISE.

AND FOUR IS BY INCREASING THE AMOUNTS THAT USERS PAID FOR DROPBOX PRODUCTS, EXPANDING THE PRODUCTS, AND THEREFORE INCREASING THE SUBSCRIPTION RATE.

SO WE HAVE A PROBLEM BOTH WITH IDENTIFYING A MATERIAL ADVERSE IMPACT, AND EVEN IF ONE ASSUMES A MATERIAL ADVERSE IMPACT, WHICH I DON'T THINK THE CASE CAN BE MADE, PINPOINTING IT ON USER CONVERSION WITH THE REASONABLY EXPECTING TO KNOW THERE'S GOING TO BE AN ADVERSE IMPACT WITH ALL THESE OTHER FACTORS.

AND IF THAT WASN'T ENOUGH OF A PROBLEM, YOUR HONOR, FINALLY, GIVEN PLAINTIFF'S ALLEGATIONS THAT IT WAS THE RATE, YOU KNOW, IT'S THE DISCLOSURES REGARDING THE DECLINING RATES OF REVENUE AND PAYING USER'S GROWTH -- GROWTH RATES, SORRY.  THE DECLINING OR SLOWING GROWTH RATES OF PAYING USERS AND REVENUE, THAT ESTABLISHED THE TREND AND ESTABLISHED THE KNOWLEDGE REQUIRED UNDER ITEM 303, THEN THE VERY TREND THAT PLAINTIFFS ALLEGE SHOULD HAVE BEEN DISCLOSED, WAS DISCLOSED, BECAUSE OUR INVESTORS WERE NOT ASSUMED TO BE FOURTH GRADERS.

AND I UNDERSTAND THE COURT IS -- I'M NOT GOING TO ARGUE WITH AMENDMENT, I HEAR THAT LOUD AND CLEAR AND WE ARE IN THE NINTH CIRCUIT, BUT THERE'S MORE HURDLES THAN THE COURT JUST IDENTIFIED.

THE COURT:  I APPRECIATE YOU GOING THROUGH THAT, MR. PORRITT, I'M SURE IS TAKING NOTE OF THAT.  ALL OF THOSE THINGS NEED TO BE ADDRESSED.

LET ME MENTION A FEW THINGS.

MR. PORRITT, I THINK YOU HAVE A GOOD SENSE OF HOW I'M GOING TO RULE.  I CERTAINLY WANT TO GIVE YOU SUFFICIENT TIME TO GIVE ME YOUR BEST AMENDMENT, AND THESE DAYS, SOMETIMES THINGS TAKE LONGER.  HOW MUCH -- FROM THE TIME YOU GET MY ORDER, HOW MUCH TIME WOULD YOU LIKE TO FILE YOUR AMENDED COMPLAINT?

MR. PORRITT:  I THINK WE WOULD ASK FOR -- WELL, WE WOULD LOVE 60 DAYS, SO THAT WOULD BE MY OPENING ASK.

SO NOT AS EFFICIENT TO MOVE THINGS ALONG THESE DAYS AS IT HAD BEEN IN THE PAST.

THE COURT:  IT'S NOT.

MR. PORRITT:  SO WE WOULD REQUEST THAT.

AND ALSO, YOU WOULD NOTE, AND MS. LOCKER KNOWS THIS TOO, IN TERMS OF -- WE'RE NOT INTERESTED IN DRILLING A DRY WELL, WE DON'T THINK WE CAN GET TO THE POINT YOUR HONOR HAS LAID OUT.  WE ARE NOT GOING TO AMEND FOR THE SAKE OF AMENDING, WE DON'T GET PAID FOR THE WORD.  SO WE HAVE TAKEN THE COMMENTS, AND I APPRECIATE MS. LOCKER'S COMMENTS AS WELL, AND WE WILL -- WE WILL WORK OUR HARDEST TO PUT TOGETHER A COMPLAINT THAT WE THINK STATES A CLAIM UNDER THE CONDITIONS YOUR HONOR HAS LAID OUT, AND IF WE CAN'T, WE CAN'T.

THE COURT:  MS. LOCKER, YOU DON'T OBJECT TO 60 DAYS FROM THE DATE OF MY ORDER?

MS. LOCKER:  NO, I'M NOT GOING TO ARGUE ABOUT THE TIMING, YOUR HONOR.

THE COURT:  GOOD.  THERE'S JUST NO POINT.  GOOD. THANK YOU.  I APPRECIATE THE COURTESY.

MR. PORRITT, IF YOU WISH TO AMEND, I WOULD ASK THAT YOU SEND ME IN HARD COPY, A REDLINED VERSION OF THE AMENDMENTS. JUST BY FILING IT DOESN'T DO ME ANY GOOD BECAUSE I DON'T HAVE A COLOR PRINTER.  SO I NEED YOU TO SEND ME -- AND I DO REQUIRE, I THINK YOU KNOW THAT BECAUSE I HAVE EVERYTHING HERE, I DO REQUIRE COURTESY COPIES.

AND I WILL URGE YOU, YOU'RE ALL EXPERIENCED, BUT I WILL URGE YOU TO DISCUSS RESOLUTION OF THIS CASE DURING THE PERIOD OF TIME BEFORE THE AMENDMENT IS DUE.  YOU ALL KNOW A LOT ABOUT IT, AND YOU ARE SOPHISTICATED SECURITIES LITIGATORS AND YOUR CLIENTS ARE SOPHISTICATED, SO I WOULD EXPECT THAT YOU WILL TAKE THAT OPPORTUNITY AS WELL IF YOU CAN COME TO A RESOLUTION.

AND I THINK THAT'S EVERYTHING.  I WON'T SEE YOU FOR A WHILE WITH 60 DAYS LEAVE TO AMEND AND THEN THE BRIEFING SCHEDULE, IT WILL BE PROBABLY NEXT SPRING BEFORE THIS COMES BACK TO ME ON ANOTHER MOTION, BECAUSE I WON'T EVEN HAVE THE AMENDED COMPLAINT UNTIL THE END OF THE YEAR AT THIS POINT.

ALL RIGHT.  I THINK YOU UNDERSTAND MY RULING.  I PROBABLY WILL DO THIS AT A RELATIVELY HIGH LEVEL BECAUSE IT'S MIDSTREAM IN OUR PLEADINGS PROCESS, BUT MR. PORRITT, I THINK FROM OUR DISCUSSION THIS MORNING, YOU ARE CLEAR ON WHERE WE ARE HEADED HERE.

MR. PORRITT:  YES, VERY MUCH SO.  THANK YOU.

THE COURT:  ALL RIGHT.  IS THERE ANYTHING -- OH, THE LAST THING, MS. LOCKER AND TO MR. CLOSE, IF YOU FILE A SUBSEQUENT MOTION TO DISMISS, ALL DEFENDANTS WILL BE LIMITED TO A TOTAL OF 25 PAGES.  A JOINDER IS FINE, BUT YOU ARE JOINING A 25-PAGE BRIEF, SO YOU DON'T GET AN EXTRA FIVE.  IT SHOULDN'T BE ANY PROBLEM, YOU CAN FILE AS MANY BRIEFS AS YOU WANT, BUT THE TOTAL WILL BE 25 PAGES.

MS. LOCKER:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  GOOD.  THANK YOU ALL.

MS. LOCKER:  THANK YOU, YOUR HONOR.

MR. PORRITT:  THANK YOU, YOUR HONOR.

(THE PROCEEDINGS WERE CONCLUDED AT 9:44 A.M.)

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185          DATED: 10/1/2020