**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff*
*Ognjen Kuraica and the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DROPBOX, INC. SECURITIES LITIGATION | Case No. 5:19-cv-06348-BLF |
| | **CLASS ACTION** |
| | **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Hearing Date: June 24, 2021 |
| | Time: 9:00 a.m. |
| | Location: Courtroom 3 – 5th Floor |
| | Judge: Honorable Beth Labson Freeman |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .........................................................................................................iii

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY .............................. 2

III.    THE SETTLEMENT ......................................................................................................... 3

        A.      The Settlement Terms............................................................................................ 3

        B.      The Plan of Allocation .......................................................................................... 4

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL..................................... 5

        A.      Standards for Preliminary Approval...................................................................... 5

        B.      The Settlement is Fair, Reasonable, and Adequate................................................ 6

V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES........ 12

        A.      The Settlement Class Is Sufficiently Numerous to Warrant Certification ................. 13

        B.      There Are Substantial Common Questions of Law and Fact...................................... 13

        C.      Plaintiffs' Claims Are Typical of Other Settlement Class Members ........................ 14

        D.      Plaintiffs and Lead Counsel Adequately Represent the Settlement Class ................. 14

        E.      The Predominance and Superiority Requirements Are Satisfied.............................. 14

VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................... 15

VII.    THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA ............................................................................................................................. 16

        A.      The Method of Notice is Adequate ..................................................................... 16

        B.      The Content of the Notice Is Adequate ............................................................... 17

VIII.   THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S EXPENSES ......................................................... 19

IX.     THE PROPOSED CLAIMS ADMINISTRATOR................................................................ 20

X.      PROPOSED SCHEDULE OF EVENTS ............................................................................ 20

XI.     CONCLUSION ................................................................................................................ 21

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) .................................................................. 6

5

6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................ 12, 15

7

8

*Barani v. Wells Fargo Bank, N.A.*,
    2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .............................................. 17

9

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...................................................................... 13

10

11

*Booth v. Strategic Realty Tr., Inc.*,
    2015 WL 3957746 (N.D. Cal. June 28, 2015) .............................................. 5

12

13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................. 7, 17

14

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .................................................................... 15

15

16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................... 5, 12, 13

17

18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................... 6, 9, 11

19

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ............................................................... 13

20

21

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................... 13

22

23

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 17

24

*In re Anthem, Inc. Data Breach Litig.*,
    --- F.R.D. ----, 2018 WL 3872788 (N.D. Cal. Aug. 15, 2018) .................... 4

25

26

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................................... 17

27

28

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ............................................... 14

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ........................................................ 13

*In re Diamond Foods, Inc.*,
    295 F.R.D. 240 (N.D. Cal. 2013) ........................................................ 14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................... 6, 7, 11

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) ........................................ 17

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................... 7

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................. 11

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................................... 19

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................. 9

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .............................................................. 5

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................ 6, 9

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................... 8

*In re Verisign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ................................... 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ......................................................... 8

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .................................... 10

*Jaffe v. Morgan Stanley & Co., Inc.*,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ....................................... 12

*Johnson v. US Auto Parts Network, Inc.*,
    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ...................................... 6

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................. 5, 7, 8, 10

*Persky v. Turley*,
   1991 WL 329564 (D. Ariz. Dec. 20, 1991) ........................................................ 15

*Rodriquez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................... 7

*Rosenburg v. Int'l Bus. Mach. Corp.*,
   2007 WL 128232 (N.D. Cal. Jan. 11, 2007) .............................................. 5, 15

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 7

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................... 13, 19

*Stewart v. Applied Materials, Inc.*,
   2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ............................................. 11

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
   2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ................................................. 17

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................ 6

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2006) ................................................ 5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................... 12, 13

**Other Authorities**

Newberg on Class Actions § 13:52 (2014) (5th ed.) ............................................. 6

1
2

## NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

3      TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE

4  COUNSEL OF RECORD:

5      PLEASE TAKE NOTICE that on June 17, 2021, at 9:00 a.m., or as soon thereafter as the

6  matter may be heard, Lead Plaintiff Ognjen Kuraica and Plaintiff Rick Gammiere (collectively,

7  "Plaintiffs") will and hereby move the Honorable Beth Labson Freeman, District Judge, located in

8  Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, for entry of the [Proposed]

9  Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval

10  Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action

11  settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of

12  May 10, 2021 (collectively the "Stipulation");[1] (ii) preliminarily certifies the Settlement Class,

13  appointing Plaintiffs as class representatives of the Settlement Class, and appointing Lead Counsel

14  as class counsel for the Settlement Class[2]; (iii) approves the form and manner of giving notice of

15  the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether

16  the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of

17  attorneys' fees and reimbursement of Litigation Expenses, should be approved.

18      In support of this Motion, Plaintiffs submit the following memorandum, the Apton

19  Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior

20  pleadings and papers in this Action; and such additional information or argument as may be required

21  by the Court.

22

23
_____

24  [1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the
Stipulation. A true and correct copy of the Stipulation and its exhibits are altogether attached as

25  Exhibit 1 to the Declaration of Adam M. Apton in Support of Preliminary Approval of Settlement
(the "Apton Declaration").  Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer,

26  respectively, to paragraphs in, and exhibits to, the Apton Declaration.

27  [2] As explained in the Stipulation, Defendants are "[s]olely for purposes of the Settlement and for no
other purpose" stipulating to: (1) certification of the Action as a class action; (2) certification of
Plaintiffs as Class Representatives; and (3) appointment of Lead Counsel as Class Counsel.  *See,*

28  *e.g.*, Stipulation, ¶ 2.

1

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

2          1.   Whether the proposed $1,375,000 million cash settlement of this Action is within the

3   range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the

4   dissemination of notice of its terms to members of the proposed Settlement Class.

5          2.   Whether the Settlement Class should be certified for purposes of the Settlement.

6          3.   Whether Plaintiffs should be certified as Class Representatives of the Settlement

7   Class for purposes of the Settlement.

8          4.   Whether Lead Counsel should be appointed Class Counsel for the Settlement Class

9   for purposes of the Settlement.

10          5.   Whether the proposed Settlement Notice and Proof of Claim and Release Form and

11   the manner for dissemination of the Notice and Proof of Claim to the Settlement Class should be

12   approved.

13          6.   Whether the Court should set a date for a hearing for final approval of the proposed

14   Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of

15   attorneys' fees and reimbursement of Litigation Expenses.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    PRELIMINARY STATEMENT**

3          The Parties have reached a proposed Settlement of this Action that resolves all claims against

4   Defendants in exchange for Dropbox's cash payment of $1,375,000 million (the "Settlement

5   Amount"). Plaintiffs now respectfully submit this memorandum in support of his unopposed motion

6   for entry of the Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith.

7          The proposed Settlement of $1,375,000 million is an excellent result for the Settlement

8   Class, and it did not come easily.  The Settlement was reached after more than a year of hotly

9   contested litigation, which included: (i) a comprehensive investigation by Lead Counsel prior to

10   filing the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the

11   "First Amended Complaint" or "FAC"); (ii) fully briefing the various motions to dismiss the FAC

12   filed by the Dropbox Defendants and the Sequoia Defendants; (iii) preparing for and arguing the

13   motions to dismiss; and (iv) investigating and researching for a subsequent amended complaint in

14   light of the Court's motion to dismiss order.  Plaintiffs were highly involved at each phase of the

15   litigation, including reviewing the complaints and briefing and evaluating the benefits versus risks

16   of continuing with this Action on behalf of the Settlement Class.

17          In an effort to resolve this Action, the Parties engaged the services of an experienced third-

18   party mediator, Judge Gary A. Feess (Ret.) of Philips ADR.  Prior to the mediation, Plaintiffs and

19   the Dropbox Defendants exchanged mediation statements and exhibits with each other and with

20   Judge Feess.  Plaintiffs' mediation statement addressed the additional content that would have been

21   included in the filed amended complaint if the case had not settled.  Additionally, Plaintiffs and the

22   Dropbox Defendants further exchanged reply mediation statements with each other and Judge Feess.

23   The Parties thereafter negotiated and executed the Stipulation.

24          Thus, the $1.375 million Settlement is the result of arm's-length negotiations conducted by

25   experienced counsel, with the assistance of an experienced mediator, and with sufficient information

26   to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of continued

27   litigation.  The Settlement also exceeds the median settlement for securities class actions as a

28   percentage of the Settlement Class's estimated recoverable damages under even the best case

scenario.[3]  As set forth herein, the Settlement warrants preliminary approval by this Court so that Notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

## II.   SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

Plaintiffs assert claims on behalf of a putative class of investors pursuant to Section 11 the Securities Act of 1933 (the "Securities Act") against Dropbox, the Individual Defendants, and the Underwriter Defendants and under Section 15 of the Securities Act against the Individual Defendants and the Sequoia Defendants.  Dropbox trades on the NASDAQ under the ticker symbol "DBX."

On October 4, 2019, two class action complaints were filed in the United States District Court for the Northern District of California, that were consolidated on January 16, 2020.  ECF No. 65.  Additionally, the Court appointed Ognjen Kuraica as Lead Plaintiff for the consolidated action and approving Lead Plaintiff's selection of Levi & Korsinsky LLP as Lead Counsel for the proposed plaintiff class.  *Id.*

On March 2, 2020, Plaintiffs and additional named plaintiff Luis Chavez[4] filed and served the FAC.  ECF No. 68.  Among other things, the FAC alleged that Dropbox's IPO registration statement and prospectus (the "Registration Statement") contained material misrepresentations and omissions.  On April 16, 2020, the Dropbox Defendants filed and served a motion to dismiss the FAC, which both the Underwriter and Sequoia Defendants joined.  ECF Nos. 71, 73-74.  That same day, the Sequoia Defendants also filed and served a memorandum of points and authorities in support of dismissal of Count II of the FAC on the grounds that Plaintiffs did not adequately allege a violation of Section 15 of the Securities Act as to the Sequoia Defendants.  ECF No. 73.  On July 13, 2020, Plaintiffs served their papers in opposition and, on August 17, 2020, the various

---

[3] *Compare* Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at p. 20, Fig. 16 (median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages)) *with* ¶23 (estimated 3.8% recovery of *maximum* damages recoverable in this case).

[4] On April 8, 2020, additional named plaintiff Luis Chavez moved to voluntarily dismiss his claims without prejudice, which the Court granted on the following day.  ECF Nos. 69-70.

defendants served their reply papers.  ECF Nos. 80-81, 84-85.  On September 8, 2020, the Dropbox Defendants filed and served a notice of recent authority in support of their motion to dismiss.  ECF No. 86.

On September 24, 2020, the Court heard oral argument on Defendants' motions to dismiss.  ECF No. 95.  On October 21, 2020, the Court entered an Order granting Defendants' motions to dismiss with leave to amend, which was then corrected on October 28, 2020.  ECF Nos. 98, 104.

On February 11, 2021, Lead Counsel and counsel for the Dropbox Defendants participated in a full-day mediation session before Judge Gary A. Feess (Ret.) of Philips ADR, a highly experienced, neutral mediator.  In advance of that session, Plaintiffs and the Dropbox Defendants each submitted and exchanged detailed mediation statements and reply statements outlining their respective analyses of the claims and defenses in this case.  The session culminated in reaching an agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet") executed on February 11, 2021.  The Term Sheet sets forth, among other things, the agreement between Plaintiffs and the Dropbox Defendants to settle and release all claims asserted against Defendants in the Action in return for a cash payment by Dropbox of $1,375,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

## III.    THE SETTLEMENT

### A.    The Settlement Terms

The Settlement provides that Dropbox will pay or cause to be paid $1.375 million in cash into an interest-bearing escrow account for the Settlement Class.  The Settlement Amount, plus accrued interest, and after deduction of (i) any Taxes, (ii) Notice and Administration Costs, and (iii) any Court-awarded attorneys' fees and Litigation Expenses (which may include reimbursement to Plaintiffs for their time and expenses incurred in representing the Settlement Class) is the "Net Settlement Fund."  The Net Settlement Fund will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with the proposed Plan of Allocation.

The Settlement Class is defined as: "all persons who purchased or otherwise acquired

Dropbox common stock pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with Dropbox's March 22, 2018 initial public offering." Stipulation, ¶1(qq).

In exchange for the Settlement Amount, Settlement Class Members will release the "Released Plaintiffs' Claims," which include "any and all claims, including Unknown Claims, arising out of, relating to, or in connection with both: (i) the facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions which were or could have been alleged in this litigation, and (ii) the purchase or acquisition of Dropbox common stock purchased or otherwise acquired pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with Dropbox's March 22, 2018 initial public offering. Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a valid and timely request for exclusion that is accepted by the Court." Stipulation, ¶1(ll). The scope of this release is reasonable as it is limited to claims that relate to the purchase of Dropbox common stock pursuant to and/or traceable to the Registration Statement or that relate to the same factual allegations that were or could have been set forth in the complaints filed in this Action. *Id.* While this release includes unknown claims and other claims that "could have been asserted" in this Action, the release of such claims is appropriate. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, --- F.R.D. ----, 2018 WL 3872788, at *20 (N.D. Cal. Aug. 15, 2018) (noting that courts in this District approve releases with similar language, and approving release similar to the released claims here). The Settlement does not release any claims to enforce the Settlement, or claims of any Person that excludes himself, herself, or itself from the proposed Settlement Class. Stipulation, ¶1(ll).

## B. The Plan of Allocation

The proposed Plan of Allocation, set forth in the Notice, was drafted with the assistance of Plaintiffs' damages consultant and is comparable to plans of allocation approved in numerous other securities class actions. The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claims Forms (or whose Claim Form is otherwise accepted by the Court) on a *pro rata* basis based on the amount of each Claimant's Recognized Claim. The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure

of damages consistent with the alleged violations of the Securities Act, and takes into consideration when each Claimant purchased and/or sold shares of Dropbox common stock and, in particular, whether or not their purchases of Dropbox common stock could be traced to the IPO, *i.e.*, whether they bought their shares when only shares sold in the IPO were trading in the market. *See also* ¶¶26-29.

## IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.  Standards for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving complex class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

Rule 23(e) requires court approval for any settlement of a class action.  Such approval involves a two-step process by which the Court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final approval is warranted.  Rule 23(e); *see, e.g.*, *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'"  *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quotation omitted); *see also Rosenburg v. Int'l Bus. Mach. Corp.*, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where "[s]ettlement has no obvious defects and is within the ranges of possible Settlement approval such that notice to the Class is appropriate").  The Court's function in preliminarily reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate, and reasonable, and not to "delete, modify or substitute" provisions within a settlement agreement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and

falls within the range of possible approval.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  In granting preliminary approval of a settlement and ordering notice, the Court only needs to determine that the settlement is "*potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Hefler*, 2018 WL 4207245, at *8.

The Court must consider the following factors when determining whether a settlement should be preliminarily approved: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the absence of collusion between the parties.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The Court should be mindful in balancing these considerations here because "[s]ecurities class action litigation is notably difficult and notoriously uncertain." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (internal quotations and citation omitted); *see also* Newberg on Class Actions § 13:52 (2014) (5th ed.) (same); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("[A] number of courts have commented on the difficulty and uncertainty of maintaining a securities class action.") (collecting cases).

As set forth below, the Settlement meets the criteria for preliminary approval and is well within the range of what might be approved as fair, reasonable, and adequate.

**B.**     **The Settlement is Fair, Reasonable, and Adequate**

**1.**     **The Settlement is the Product of Arms'-Length Negotiations Between Experienced Counsel Mediated By a Respected and Experienced Mediator**

In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriquez v. W. Publ'g Corp.*,

563 F.3d 948, 965 (9th Cir. 2009); *see also, e.g.*, *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").  Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Lead Counsel engaged in rigorous settlement negotiations with counsel for the Dropbox Defendants, in a process assisted by an experienced, well-respected mediator, Judge Feess.  Prior to the mediation session, the Plaintiffs and the Dropbox Defendants exchanged and submitted detailed mediation statements, and substantial reply statements, to Judge Feess.  During the mediation, the participants had full and frank discussions concerning the merits of this Action.  The negotiations focused in particular on heavily disputed issues such as, the potential for Plaintiffs to be able to file an amended complaint that would be able to withstand a motion to dismiss and the appropriate measure of damages.  The mediation ended with an agreement to settle.

### 2.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *Mego*, 213 F.3d at 458, 459; *Officers for Justice*, 688 F.2d at 625.

The risks to continued litigation in this case were substantial.  In considering the Settlement, Plaintiffs and Lead Counsel weighed the risks inherent in establishing all the elements of the claims, as well as the likely further expense and duration of the Action.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement).  Here, the risks were extremely real as the Court had already dismissed the FAC in its entirety.  ECF Nos. 98, 104.  As such, there was a very serious risk that the Court could grant a motion to dismiss a further amended complaint.

1  Moreover, there were also substantial risks to success at class certification, summary judgment and

2  trial.

3  Defendants adamantly deny any wrongdoing, and as in their motions to dismiss, were

4  prepared to make a multi-pronged defense against Plaintiffs' claims.  Although Plaintiffs and Lead

5  Counsel believe that this case has substantial merit, they recognize the significant risk and expense

6  necessary to prosecute Plaintiffs' claims against Defendants through a hearing on class certification,

7  completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well

8  as the inherent difficulties and delays complex litigation like this entails.  *See, e.g.*, *In re Wireless*

9  *Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving

10  settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a

11  viable claim regarding the alleged securities fraud and Defendants have a viable defense against

12  such claims").  Likewise, the determination of damages, like the determination of liability, is a

13  complicated and uncertain process, involving conflicting expert testimony.  *In re Tyco Int'l, Ltd.*,

14  535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("even if the jury agreed to impose liability, the trial

15  would likely involve a confusing 'battle of the experts' over damages.").

16  Continued litigation would be complex, uncertain, costly, and lengthy.  Even assuming that

17  an amended complaint could survive dismissal—and given the Court's prior order, there was a

18  significant risk that it could not—depositions would have to be taken, experts would need to be

19  designated and expert discovery completed, Defendants' expected motions to dismiss and summary

20  judgment would have to be successfully briefed and argued, and trials are innately expensive, risky,

21  and uncertain.  Moreover, any judgment favorable to the Settlement Class would be the subject of

22  post-trial motions and appeal, which could prolong the case for years with the ultimate outcome

23  uncertain.  By contrast, the $1.375 million Settlement provides a favorable, immediately realizable

24  recovery and eliminates all of the risk, delay, and expense of continued litigation.  An evaluation of

25  the benefits of settlement must be tempered by recognizing that any compromise involves

26  concessions on the part of all settling parties.  Indeed, "the very essence of a settlement is

27  compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*,

28  688 F.2d at 624 (citation omitted).

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 5:19-cv-06348-BLF                                                                                    8

### 3.      Risk of Maintaining Class Action Status Throughout Trial

At the time the Settlement was reached, Plaintiffs had not yet moved for class certification. While Plaintiffs believe that class certification would be appropriate, there is no guarantee that the Court would have agreed.  Furthermore, Rule 23 provides that a class certification order may be altered or amended any time before a decision on the merits.  Thus, in any class action suit, there is always a risk that a class will be modified or decertified prior to a decision on the merits.  "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement."  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

### 4.      The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'"  *Hefler*, 2018 WL 4207245, at *9 (quoting *Tableware*, 484 F. Supp. 2d at 1080).  The $1.375 million Settlement Amount is within the range of reasonableness under the circumstances so as to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.037 per damaged share.  ¶22.

The  $1.375  million  recovery  represents  approximately  3.8%  of  estimated  maximum damages of $35.5 million that is potentially available in this Action under Plaintiffs' best-case scenario, assuming that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Plaintiffs survived a motion to dismiss and summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the four stock price drop dates alleged in this case.   Of course, less than a complete victory on any aspect of these assumptions would decrease recoverable damages, and each element at issue was strongly contested by Defendants.

Especially in the light of these risks, the percentage of recovery is reasonable and well within the range of other securities class action settlements with similar total damages.  *See* Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at p. 20, Fig. 16 (median recovery in securities class actions in

2020 was approximately 1.7% of estimated damages).  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

### 5.    The Extent of Discovery and the Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (commenting that formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) detailed review of Dropbox's Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Dropbox; (iii) research reports by securities and financial analysts; (iv)  economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting numerous fact interviews with former employees and other third parties; and (vi) review and analysis of other publicly available material and data.  As part of this investigation, Lead Counsel also consulted with a damages expert.  *See* ¶24.

In drafting the FAC, opposing Defendants' motions to dismiss, a preparing to further amended the complaint, Lead Counsel further engaged in extensive legal research, which helped to further evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of the claims asserted in this Action.

This significant amount of information helped enable Lead Counsel to make an informed assessment of the strengths and weaknesses of this Action to make a determination on behalf of the Settlement Class about whether to settle.  The settlement negotiations further informed Lead Counsel about the strengths and weaknesses of the potential class's claims in this Action and Defendants' defenses to those claims as well as the fairness of the Settlement.  As a result, the Parties and their counsel have sufficient basis to make informed decisions about the relative merits and

1   weakness of this Action and the Settlement.

2       **6.      The Proposed Settlement Does Not Unjustly Favor any Settlement Class
                  Members, Including Lead Plaintiff**

3       The Settlement does not provide preferential treatment to any Settlement Class Member,

4   segment of the Settlement Class, or to the Lead Plaintiff.  *Hefler*, 2018 WL 4207245, at *8.  The

5   Plan of Allocation described in the proposed Notice to the Settlement Class provides for distribution

6   of the Net Settlement Fund to Settlement Class Members who have a loss on their transactions in

7   Dropbox common stock purchased or otherwise acquired pursuant and/or traceable to the

8   Registration Statement.  *See* Notice, pp. 10-15.  The Plan of Allocation is based on when Settlement

9   Class Members purchased, acquired, and/or sold shares of common stock, as developed by

10  Plaintiffs' damages consultant.  This method ensures that Settlement Class Members' recoveries are

11  based upon the relative losses sustained as a result of the wrongdoing alleged in the Action.

12      Plaintiffs' will receive a distribution from the Net Settlement Fund in accordance with the

13  Plan of Allocation in the same manner as all other Settlement Class Members.  Separately, they will

14  seek reimbursement of costs (including lost wages) incurred as a result of their representation of the

15  Settlement Class, as authorized by the PSLRA.  *Hefler*, 2018 WL 4207245, at *10; *see also Mego*,

16  213 F.3d at 454 (affirming reimbursement to class representative in securities class action).

17      **7.      The Recommendations of Experienced Counsel**

18      Courts also give weight to the opinion of experienced and informed counsel supporting the

19  settlement.  *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007)

20  ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness")

21  (quotation omitted); *accord Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal.

22  Aug. 25, 2017) (same).  Here, Lead Counsel has extensive experience in securities litigation and has

23  obtained a thorough understanding of the merits and risks of the Action.  Lead Counsel's belief in

24  the fairness and reasonableness of this Settlement supports preliminary approval of the Settlement.

25  Defendants have been vigorously represented by highly sophisticated and experienced counsel

26  throughout the Action and settlement negotiations.  Because the Settlement is the product of serious,

27  informed, and non-collusive negotiations among experienced counsel and a highly qualified

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 5:19-cv-06348-BLF                                                                      11

1    mediator, preliminary approval is warranted.

2    **V.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

3          At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement

4    on behalf of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary

5    approval stage and solely for purpose of the Settlement, whether the certification of the Settlement

6    Class appears to be appropriate.  *Hanlon*, 150 F.3d at 1019; *Jaffe v. Morgan Stanley & Co., Inc.*,

7    2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).  Rule 23(a) sets forth four prerequisites to class

8    certification:  (i) numerosity;  (ii) commonality;  (iii) typicality;  (iv) adequacy of representation.

9    *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the

10   court must find that at least one of the three conditions of Rule 23(b) is satisfied.  *Id*.  Under

11   subsection (b)(3), the Court must find that the questions of law or fact common to the members of

12   the class predominate over any questions affecting only individual members and that a class action

13   is superior to other available methods for the fair and efficient adjudication of the controversy.  *Id.*;

14   *Jaffe*, 2008 WL 346417, at *7.

15         The proposed Settlement Class consists of "all persons who purchased or otherwise acquired

16   Dropbox common stock pursuant and/or traceable to the Registration Statement and Prospectus

17   issued in connection with Dropbox's March 22, 2018 initial public offering."  Stipulation, ¶1(qq).[5]

18   Plaintiffs believe this Action satisfies all the factors for certification of a class[6] and, if the Action

19   were to proceed toward trial, class certification would be appropriate.  The Ninth Circuit and

20   numerous courts within the Ninth Circuit have held that class actions are generally favored in

21   securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert.*

22

23   ─────────────────────
     [5] Excluded from the Settlement Class are Defendants and their respective successors and assigns;
24   past and current executive officers and directors of Dropbox, the Sequoia Defendants, and the
     Underwriter Defendants; members of the Immediate Families of the Individual Defendants; the legal
25   representatives, heirs, successors or assigns of the Individual Defendants; any entity in which any
     of the above excluded persons have or had a majority interest; and any person who validly requests
26   exclusion from the Settlement Class.  *Id.*

27   [6] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a
28   consideration when settlement‑only certification is requested, for the proposal is that there be no
     trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

1  *denied*, 429 U.S. 816 (1976).[7]

2      **A.**    **The Settlement Class Is Sufficiently Numerous to Warrant Certification**

3        Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

4  Here, Dropbox sold 36 million shares in its IPO. As such, members of the Settlement Class, number

5  in the thousands (if not millions) and are located throughout the United States.  A group this large

6  and geographically diverse is too unwieldy to join in a single action.  *Hodges v. Akeena Solar, Inc.*,

7  274 F.R.D. 259, 266 (N.D. Cal. 2011).

8      **B.**    **There Are Substantial Common Questions of Law and Fact**

9        A proposed settlement class has sufficient commonality to justify certification where there

10  are substantial questions of law and fact common to the class.  *See Wolin*, 617 F.3d at 1172.  Rule

11  23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not be

12  common to satisfy the rule."  *Hanlon*, 150 F.3d at 1019.  A class has sufficient commonality where

13  there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common core

14  of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019;

15  *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

16        Lead Plaintiff submits that common questions of fact and law in this Action include:

17  (a) whether Defendants violated Sections 11 and 15 of the Securities Act; (b) whether Defendants

18  Registration Statement was negligently prepared and contained material misrepresentations; and

19  (c) the appropriate measure of damages, if any.  In the context of the Settlement Class, additional

20  common questions include whether the Settlement is fair, reasonable, and adequate; and whether

21  the Settlement should be approved.

22

23

---

24  [7] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities

25  litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed

26  in a securities fraud context because class actions are particularly effective in serving as private

27  policing weapons against corporate wrongdoing.'") (citation omitted); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited

28  in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

### C.   Plaintiffs' Claims Are Typical of Other Settlement Class Members

Like other Settlement Class Members, Plaintiffs allege that they purchased Dropbox common stock pursuant or traceable to the Registration Statement and were subsequently damaged due Defendants' conduct.  The other members of the Settlement Class were allegedly affected in the same way.

Similarly, the interest of Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met.  *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members.  They are, therefore, typical of the class.").

### D.   Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

Plaintiffs have prosecuted this Action, negotiated with Defendants through counsel, and approved the Settlement for the benefit of all Settlement Class Members.  Moreover, Plaintiffs have represented by qualified counsel with extensive experience in the prosecution of securities class actions.  Thus, Plaintiffs and Lead Counsel respectfully submit that the requirements of Rule 23(a)(4) are met.

### E.   The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or

fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.].").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues." *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

## VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Counsel also seek preliminary approval of the Plan of Allocation of the Net Settlement Fund.  *See* Notice, pp. 10-15.  Assessment of a plan of allocation in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – it must be fair and reasonable.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.  An allocation formula must be "rationally related to the relative strengths and weakness of the case."  *Rosenburg*, 2007 WL 128232, at *5.

The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim and Release.  The Plan of Allocation was developed by Lead Counsel, with the assistance of a damages expert and the Claims Administrator, and reflects the theories of causation and damages they would have presented at trial.  The Plan of Allocation reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action.  An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Dropbox common stock the Claimant

1   purchased, acquired, or sold and when that Claimant bought, acquired, or sold the shares; in

2   particular, whether the Claimant's purchase of shares was pursuant to and/or traceable to the IPO.

3   Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of

4   the Net Settlement Fund among Class Members who submit valid claims.

5          The Apton Declaration also identifies the Investor Protection Trust as the proposed *cy pres*

6   recipient of any residual funds that may remain after one or more distribution of the Net Settlement

7   Fund to Authorized Claimants.  Here, 100% of the Net Settlement Fund will be distributed to

8   Authorized Claimants and, if any funds remain after initial distribution (for example, due to

9   uncashed or returned checks), further subsequent distributions to Authorized Claimants who would

10  receive at least $10.00 from such a re-distribution will be conducted as long as they are cost

11  effective.  Investor Protection Trust is a non-sectarian, not-for-profit organization dedicated to

12  investor education and thus is an appropriate *cy pres* recipient.  *See* ¶¶54-57.  However, due to the

13  potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small

14  amount of the funds will be directed to Investor Protection Trust.

15  **VII.    THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA**

16          **A.    The Method of Notice is Adequate**

17          Rule 23(e) provides that a class action shall not be dismissed or compromised without the

18  approval of the court, and notice of the proposed dismissal or compromise shall be given to all

19  members of the class in such manner as the court directs.  Here, the Parties propose to mail, by first

20  class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation) to all Settlement

21  Class Members who can be identified with reasonable effort, as well as brokerage firms and other

22  nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously

23  with the mailing of the Postcard Notice, copies of the Notice (Exhibit A-1 to the Stipulation) and

24  the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the

25  Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims

26  can be submitted online.  Upon request, the Claims Administrator will also mail copies of the Notice

27  and/or Claim Form.  No more than ten (10) business days after mailing the Postcard Notice, the

28  Summary Notice (Exhibit A-3 to the Stipulation) will also be transmitted once over the *PR*

1   *Newswire*.

2       Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of

3   a combination of a mailed post card directing class members to a more detailed online notice has

4   been approved by courts."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3

5   (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D.

6   Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).[8]

7   Significantly, with an estimated mailing size of 175,000 (¶30), a full printed Notice and Claim Form

8   sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the

9   Settlement Amount.   Thus, Plaintiffs respectfully submit that the combination of the mailed

10   Postcard, published Summary Notice, and availability online of the Notice provides "the best notice

11   that is practicable under the circumstances."[9]

12       **B.       The Content of the Notice Is Adequate**

13       As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of

14   the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class

15   Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or

16   the proposed attorneys' fees and expenses.  *See Stratton v. Glacier Ins. Adm'rs, Inc.*, 2007 WL

17   274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it

18   fairly apprises class members of the terms of the settlement in sufficient detail to afford them the

19   opportunity to decide whether they should accept the benefits offered, opt out and pursue their own

20   remedies, or object to the settlement."); *see also Churchill Village*, 361 F.3d at 575 ("Notice is

21   _____

22   [8] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973
    (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010

23   WL 2342413, at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice,
    summary notice, and a detailed notice available online "is the best notice practical under the

24   circumstances and allows Class Members a full and fair opportunity to consider the proposed
    Settlements").

25   [9] Although it is not clear whether the notice provisions of the Class Action Fairness Act, 28 U.S.C.

26   §1715 et seq. ("CAFA"), were intended to apply to class actions brought pursuant to the federal
    securities laws, Defendants will be providing CAFA notice.  To that end, Defendants shall serve

27   upon the appropriate state official of each state in which a Settlement Class Member resides and the
    Attorney General of the United States a notice of the proposed Settlement in compliance with the

28   requirements of the CAFA.

satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

The proposed notice program satisfies the requirements of Rule 23(c)(2) by setting forth in plain, easily understandable language: (i) the nature of the action (*see* Notice, pp. 5-6 ("What Is This Case About?"); Postcard Notice); (ii) the Settlement Class Definition (*see* Notice, p. 6-7 ("How Do I Know If I Am Affected By The Settlement? Who Is Included In The Settlement?"); Summary Notice, p. 1; Postcard Notice); (iii) a description of the claims at issue and the defenses to those claims (*see* Notice, pp. 5-6, 7-8 ("What Is This Case About?" and "What Are Lead Plaintiff's Reasons For The Settlement?")); (iv) the ability of Settlement Class Members to enter an appearance through counsel (*see* Notice, pp. 15-17 ("When And Where Will The Court Decide Whether To Approve The Settlement? Do I Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement?"); Postcard Notice); (v) the Settlement Class Member's ability to be excluded and the process for exclusion from the Settlement Class (*see* Notice, pp. 14-15 ("What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?"); Summary Notice, p. 2; Postcard Notice); (vi) the binding effect of a Class judgment (*see* Notice, pp. 8-10 ("How Are Settlement Class Members Affected By The Action And The Settlement?"); Summary Notice, p. 2; Postcard Notice).

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Notice (*see* Notice, pp. 1-2); (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share (*see* Notice, pp. 3-4, 10-14 ("How Much Will My Payment Be?"); Postcard Notice); (iii) a statement of potential outcomes of the case (*see* Notice, p. 8 ("What Might Happen If There Were No Settlement?"); (iv) a statement of attorneys' fees or costs sought (*see* Notice, pp. 2-3-4, 14 ("What Payment Are The Attorneys For The Settlement Class Seeking? How Will The Lawyers Be Paid?"); Postcard Notice); (v) identification of lawyers' representatives (*see* Notice, p. 17 ("Can I See The Court File? Whom Should I Contact If I Have Questions?"); Summary Notice, p. 2); (vi) reasons for settlement (*see* Notice, pp. 7-8 ("What Are Lead Plaintiff's Reasons For The Settlement?")).

1    Further, the notice program will provide clear information about the time, date, and location

2 of the Settlement Hearing and the process for submitting an objection to the Settlement or other

3 relief to be requested by Plaintiffs and Lead Counsel.  *See* Notice, pp. 15-17 (response to question

4 "When And Where Will The Court Decide Whether To Approve The Settlement? Do I Have To

5 Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement?"); Summary

6 Notice, p. 2; Postcard Notice.  The Notice also states that the date of the hearing may change without

7 further notice and advises Settlement Class Members to check the Settlement website or PACER to

8 confirm that the date has not changed.  *See* Notice, p. 16, 17.

9   **VIII.   THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF'S EXPENSES**

10   As explained in the Postcard Notice and Notice, Lead Counsel intends to seek an award of

11 attorneys' fees of up to 25% of the Settlement Amount and reimbursement of Litigation Expenses

12 not to exceed $40,000, plus interest earned thereon.  Lead Counsel will provide much more detailed

13 information in support of its application in its motion for attorneys' fees and expenses, to be filed

14 with the Court thirty-five (35) days before the final Settlement Hearing.  However, for purposes of

15 the Court's preliminary review in connection with this motion for preliminary approval of the

16 Settlement, Lead Counsel acknowledges that the maximum fee that Lead Counsel may request is

17 above the "benchmark" often referenced by the courts in the Ninth Circuit.  *See, e.g.*, *Staton v.*

18 *Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This Circuit has established 25% of the common

19 fund as a benchmark award for attorney fees.").

20   Moreover, while Plaintiffs' Counsel has not yet completed a fulsome review of its time

21 dedicated to this Action, and notes that substantial additional time will be spent in connection with

22 final approval and Settlement administration, Plaintiffs' Counsel's lodestar in this Action is

23 approximately $375,000.  ¶52.  Thus, a fee award of 25% of the Settlement Amount (or $343,750)

24 would result in a negative multiplier of 0.92% on Plaintiffs' Counsel's lodestar.  Such a negative

25 multiplier "suggests that the percentage-based amount is reasonable and fair based on the time and

26 effort expended by class counsel."  *See In re Portal Software*, *Inc. Sec. Litig.*, 2007 WL 4171201,

27 at *16 (N.D. Cal. Nov. 26, 2007).  If preliminary approval is granted, Lead Counsel will present its

28 total lodestar in connection with its fee application at final approval.

1    Lead Counsel also intends to seek reimbursement of Plaintiffs' Counsel's litigation expenses

2    in an amount not to exceed $40,000, which includes the substantial costs of retaining experts.  ¶53.

3    Again, Lead Counsel will provide appropriate detail in support of any request for reimbursement of

4    litigation expenses in connection with its fee application at final approval.

5    **IX.    THE PROPOSED CLAIMS ADMINISTRATOR**

6    Lead Plaintiff also requests that the Court authorize the retention of Strategic Claims

7    Services ("SCS") to serve as the Claims Administrator.  SCS is a highly respected and experienced

8    claims administrator, with experience in administrating many large and complex securities litigation

9    matters.  Mulholland Decl. at ¶2.

10    SCS's fees for administration of the Settlement are charged on a per-claim basis and

11    expenses will be billed separately (including expenses for printing and mailing the Postcard Notice,

12    publishing the Summary Notice, establishing and maintaining the settlement website, and

13    establishing and operating the toll-free telephone helpline).  ¶38.  Because the costs are highly

14    dependent on how many Postcard Notices are ultimately mailed and how many Claims are

15    ultimately received and processed, at this time only a rough estimate of the total Notice and

16    Administration Costs can be provided.  At this time, SCS estimates, based on its past experience

17    with securities settlements of a similar size and companies with similar market capitalization and

18    the length of the Settlement Class Period, that 175,000 Postcard Notices will be mailed and that the

19    claims rate will be approximately 20% of claims will be processed.  Mulholland Decl., ¶14.  Based

20    on these estimates, SCS estimates that the total Notice and Administration Costs for the Action will

21    be approximately $300,000.  *Id*, ¶¶13-14.  While the costs are significant at approximately 20% of

22    the total Settlement Amount, or <$0.01 per damaged share, they are a function of the significant

23    number of shares traded during the eligibility period under the Plan of Allocation.  ¶39.  If the

24    Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

25    **X.    PROPOSED SCHEDULE OF EVENTS**

26    In connection with preliminary approval of the Settlement, the Court must set a final

27    approval of the settlement hearing date, dates for mailing and publication of the notice program, and

28    deadlines for submitting claims, opting out, or objecting to the Settlement.  Lead Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 5:19-cv-06348-BLF                                                        20

respectfully proposes the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| EVENT | PROPOSED DATE |
|---|---|
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Up to 20 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶¶ 7b, 7c) |
| Deadline to publish the Summary Notice | Up to 30 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶ 7d) |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Deadline for submitting objections and for requesting exclusion | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶ 13, 16) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Settlement Hearing. | 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order, ¶ 5) |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days after the Notice Date (Preliminary Approval Order, ¶ 10) |

## XI. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and enter the Preliminary Approval Order.

//

//

//

//

//

//

//

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 5:19-cv-06348-BLF

1 | Dated: May 14, 2021

Respectfully Submitted,

2 | **LEVI & KORSINSKY, LLP**

3

s/ Adam M. Apton
4 | Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
5 | San Francisco, CA 94111
Telephone: 415-373-1671
6 | Facsimile: 212-363-7171
Email: aapton@zlk.com
7

8 | *Lead Counsel for Lead Plaintiff*
*Ognjen Kuraica and the Class*
9

10 | **THE ROSEN LAW FIRM, P.A.**
Phillip Kim
11 | Daniel Tyre-Karp
275 Madison Avenue, 40th Floor
12 | New York, NY 10016

13

14 | **GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
15 | Casey E. Sadler
Melissa Wright
16 | 1925 Century Park East, Suite 2100
Los Angeles, CA 90067
17

18 | *Attorneys for Plaintiffs Luis Chavez*
*and Rick Gammiere and Additional*
19 | *Counsel for the Class*

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 5:19-cv-06348-BLF                                  22