**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff Ognjen Kuraica
and the Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re DROPBOX, INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | Case No.: 5:19-cv-06348-BLF<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: December 2, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 3 – 5th Floor<br>Judge: Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   THE LITIGATION AND SETTLEMENT ............................................................... 3

    A.    The Litigation ................................................................................................ 3

    B.    Lead Counsel's Investigation And FAC ....................................................... 3

    C.    Motion To Dismiss The FAC ........................................................................ 4

    D.    Lead Counsel's Continued Investigation ...................................................... 4

    E.    Mediation Efforts And Settlement Negotiations .......................................... 4

III.  STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON*  5

IV.   ARGUMENT ........................................................................................................... 7

    A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors ................. 7

        1.    Plaintiffs And Lead Counsel Adequately Represented the Settlement Class 7

        2.    The Settlement Is The Result Of Arm's-Length Negotiations .................... 8

        3.    The Settlement Is an Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ......... 9

            a)    The Strength of Plaintiffs' Case and Risk Of Continued Litigation ...... 9

            b)    Risks Of Maintaining Class Action Status ......................................... 12

        4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval .................. 12

        5.    The Settlement Treats All Settlement Class Members Equitably Relative To Each Other ...................................................................................................... 14

        6.    The Positive Reaction Of The Settlement Class Supports Settlement Approval ............................................................................................................ 14

        7.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval ............................................................................................................ 15

    B.    The Plan Of Allocation Is Fair And Reasonable ........................................ 18

    C.    The Settlement Class Should Be Finally Certified ..................................... 20

    D.    The Notice Program Satisfies Rule 23 And Due Process ........................... 20

V.  CONCLUSION ............................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) ................................................................... 8, 17

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................................... 14

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2nd Cir. 1974) ................................................................................................ 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................................................... 8

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................................ 16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................................................... 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................................... passim

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. 2018) ........................................................................... 6, 15, 20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................... 12

*In re Alloy, Inc. Sec. Litig.*,
  2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ......................................................................... 11

*In re American Apparel, Inc. Shareholder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ..................................................................... 12

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................................. 8, 19

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ......................................................................... 11

*In re Atmel Corp. Derivative Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ........................................................................ 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................... 9

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................................. 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ...................................................................... 14

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................ 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................................ 11

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)........................................................... 18, 21

*In re Illumina, Inc. Sec. Litig.*,
  2021 WL 1017295 (S.D. Cal. Mar. 17, 2021)............................................................... 20

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................................... 11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 463 (9th Cir. 2000)......................................................................... 13, 16, 17

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................................. 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ passim

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 7

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)............................................................. 18

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)......................................................... 14, 17

*In re Scientific Atl., Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...................................................................... 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)................................................................................... 5

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................ 10

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)......................................................... 17, 20

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ....................................................................... 10

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................ 19

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) .......................................................... 7, 8

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................... 18

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016)............................................................................................ 13

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................................................ 6

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997)................................................................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)....................................................................................................... 8

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    2020 WL 3129566 (S.D. Cal. June 12, 2020) ..................................................................... 19, 21

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................................... 16

*Tan Chao v. William*,
    2020 WL 763277 (2d Cir. Jan. 2, 2020) ................................................................................... 14

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)........................................................................... 18

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)....................................................................................................... 5

*Vikram v. First Student Management, LLC*,
    2019 WL 1084169 (N.D. Cal. March 7, 2019) ......................................................................... 16

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014).............................................................................. 15

*Wong v. Arlo Technologies, Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................................................ 6, 9

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................................................................... 14

**Statutes**

15 U.S.C. § 78u-4....................................................................................................................... 1

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020
    Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16) ....................................................... 17

**Rules**

F.R.C.P. 23 ..................................................................................................................... passim

### NOTICE OF MOTION FOR FINAL APPROVAL OF
### CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing For Notice ("Preliminary Approval Order," ECF No. 121), on December 2, 2021, at 9:00 a.m., in Courtroom 3 (5th Floor) of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, or as soon thereafter as the matter may be heard, L Lead Plaintiff Ognjen Kuraica and Plaintiff Rick Grammiere (collectively, "Plaintiffs") will, and hereby do, move the Honorable Beth Labson Freeman, United States District Judge, for entry of the [Proposed] Judgment Approving Class Action Settlement and the [Proposed] Order Approving the Plan of Allocation, both of which are submitted herewith.[1]

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the terms of the proposed Settlement are fair, reasonable, and adequate, notice of the proposed Settlement has been disseminated in accordance with the Preliminary Approval Order, and there have been no objections to the Settlement to date. Accordingly, Lead Plaintiff requests the Court grant final approval of the proposed Settlement of this Action and the proposed Plan of Allocation.

The motion is based on the following memorandum, the Apton Declaration and exhibits thereto, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

Defendants do not oppose this motion.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 14, 2021 (ECF No. 115-2, the "Stipulation"), or the concurrently filed Declaration of Adam M. Apton in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Apton Declaration" or "Apton Decl."). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Apton Declaration.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Court should approve the proposed $1,375,000 million all cash, non-reversionary settlement as fair, reasonable, and adequate under Rule 23(e).

2.   Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.   Whether the Court should finally certify the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes only.

**MEMORANDUM OF LAW**

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs submit this memorandum in support of their motion for final approval of the Settlement of the above-captioned action (the "Action") for $1,375,000 in cash (the "Settlement Amount"), and for approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation (ECF No. 115-2), which was preliminarily approved by the Court on August 3, 2021. ECF No. 121.

The $1.375 million Settlement is procedurally fair, as it is the product of arm's-length negotiations overseen by an experienced and highly respected mediator, and was only achieved after nearly two years of hard-fought litigation against skilled defense counsel. The Settlement is also substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action, and meaningfully assessed the risks of establishing liability and damages, including the risk of surviving a second motion to dismiss, or prevailing on appeal, under the heightened pleading standard and automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4, (the "PSLRA")). ¶¶10-12, 40-54. Indeed, as described in greater detail in the Apton Declaration, before agreeing to the Settlement, Plaintiff's Counsel, among other things: (i) conducted a comprehensive investigation prior to the filing of the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint" or "FAC"); (ii) fully briefed the various motions to dismiss the FAC filed by the Dropbox Defendants and the Sequoia Defendants;[2] (iii)

---

[2] "Dropbox Defendants" means defendant Dropbox, Inc. ("Dropbox" or the "Company") and defendants Andrew W. Houston, Ajay V. Vashee, Timothy J. Regan, Arash Ferdowsi, Robert J. Mylod, Jr., Donald W. Blair, Paul E. Jacobs, Condoleezza Rice, R. Bryan Schreier, and Margaret C. Whitman. "Underwriter Defendants" means defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities, Inc., RBC Capital Markets, LLC, Jefferies LLC, Macquarie Capital (USA) Inc., Canaccord Genuity LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Piper Sandler & Co. "Sequoia Defendants"

prepared for and argued the motions to dismiss; (iv) investigated and researched a subsequent amended complaint in light of the Court's motion to dismiss order; (v) in advance of a mediation session, prepared detailed mediation and reply statements outlining Plaintiffs' analyses of the claims and defenses in this case, including the additional content that would have been included in the filed amended complaint if the case had not settled; and (vi) engaged in arm's-length negotiations with counsel for Defendants during an all-day mediation session on February 11, 2021 which culminated in an agreement in principle to settle the Action. The Parties then negotiated and executed the Stipulation. ¶¶11, 27.  Based on this substantial work and Lead Counsel's experience, Plaintiffs and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and instead provides a fair and immediate cash recovery—is in the best interests of the Settlement Class. ¶13.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval.  Approximately 150,000 copies of the Postcard Notice have been sent to potential Settlement Class Members and their nominees, and, to date, no objections and just three requests for exclusion have been received or entered on the docket.  ¶49.

Finally, the Plan of Allocation was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.  ¶¶50-58.  The Plan of Allocation ties each participating Settlement Class Member's recovery to when the securities were acquired and sold, and is a fair and reasonable method for distributing the Net Settlement Fund.  ¶¶50-58.  The Plan of Allocation thus warrants approval.

For these reasons, as well as those set forth below and in the Joint Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

---

means defendants equoia Capital XII L.P., Sequoia Capital XII Principals Fund, LLC, Sequoia Technology Partners XII, L.P., and SC XII Management, LLC.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-cv-06348-BLF                                                                                    2

## II.    THE LITIGATION AND SETTLEMENT[3]

### A.    The Litigation

On October 4, 2019, two class action complaints were filed in the United States District Court for the Northern District of California.  On January 16, 2021, the cases were consolidated, Ognjen Kuraica was appointed as Lead Plaintiff for the consolidated action, and Levi & Korsinsky LLP was approved as Lead Counsel for the proposed plaintiff class.  ECF No. 65.

### B.    Lead Counsel's Investigation And FAC

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) detailed review of Dropbox's Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Dropbox; (iii) research reports by securities and financial analysts; (iv)  economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting numerous fact interviews with former employees and other third parties; and (vi) review and analysis of other publicly available material and data.  As part of this investigation, Lead Counsel also consulted with a damages expert.  ¶20.

Based on this investigation, on March 2, 2020, Plaintiffs and additional named plaintiff Luis Chavez[4] filed the First Amended Complaint which alleged, among other things, that Dropbox's IPO registration statement and prospectus (the "Registration Statement") contained material misrepresentations and omissions.  ECF No. 68.

---

[3] The Apton Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a more fulsome description of, *inter alia*, the factual and procedural history of the Action (¶¶16-19); the nature of the claims asserted (¶¶20-25); the negotiations leading to the Settlement (¶¶26-28); and the terms of the Plan of Allocation (¶¶50-58).

[4] On April 8, 2020, additional named plaintiff Luis Chavez moved to voluntarily dismiss his claims without prejudice, which the Court granted the following day.  ECF Nos. 69-70.

### C.    Motion To Dismiss The FAC

On April 16, 2020, the Dropbox Defendants filed and served a motion to dismiss the FAC, which both the Underwriter Defendants and Sequoia Defendants joined.  ECF Nos. 71, 73-74.  That same day, the Sequoia Defendants also filed and served a memorandum of points and authorities in support of dismissal of Count II of the FAC on the grounds that Plaintiffs did not adequately allege a violation of Section 15 of the Securities Act as to the Sequoia Defendants.  ECF No. 73.  On July 13, 2020, Plaintiffs served their papers in opposition, and on August 17, 2020, the various defendants served their reply papers.  ECF Nos. 80-81, 84-85.  On September 8, 2020, the Dropbox Defendants filed and served a notice of recent authority in support of their motion to dismiss.  ECF No. 86.

The Court heard oral argument on Defendants' motions to dismiss on September 24, 2020.  ECF No. 95.  On October 21, 2020, the Court entered an Order granting Defendants' motions to dismiss with leave to amend, which was then corrected on October 28, 2020.  ECF Nos. 98, 104.

### D.    Lead Counsel's Continued Investigation

Following the Court's Order dismissing the FAC with leave to amend, Lead Counsel continued their investigation into Defendants' alleged wrongdoing in preparation for a second amended complaint.  This continued investigation included extensive legal research, which helped to further evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of the claims asserted in this Action.

### E.    Mediation Efforts And Settlement Negotiations

On February 11, 2021, Lead Counsel and counsel for the Dropbox Defendants participated in a full-day mediation session before Judge Gary A. Feess (Ret.) of Philips ADR, a highly experienced, neutral mediator.  In advance of that session, Plaintiffs and the Dropbox Defendants each submitted and exchanged detailed mediation statements and reply statements outlining their respective analyses of the claims and defenses in this case.  The session culminated in reaching an agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet") executed on February 11, 2021.  The Term Sheet sets forth, among other things, the agreement

between Plaintiffs and the Dropbox Defendants to settle and release all claims asserted against Defendants in the Action in return for a cash payment by Dropbox of $1,375,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

**III.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON***

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008).[5] Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. The settlement of complex cases also contributes to the conservation of scarce judicial resources. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

Rule 23(e)(2)—which governs final approval—requires courts to consider several factors in determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

---

[5] *See also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*4 (N.D. Cal. 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Technologies, Inc.*, 2021 WL 1531171, at \*5 (N.D. Cal. Apr. 19, 2021). "That test includes the following factors:

> [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at \*6 (N.D. Cal. July 22, 2019) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Hanlon*); *Perks v. Activehours, Inc.*, 2021 WL 1146038, at \*4 (N.D. Cal. Mar. 25, 2021) (same).

As explained below and in the Apton Declaration, application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants Court approval.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.    Plaintiffs And Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel, Levi & Korsinsky, has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, among other things, conducting an extensive investigation of the claims through a detailed review of all publicly available documents as well as numerous interviews with former Dropbox employees, drafting a detailed amended complaint, litigating a hotly-contested motion to dismiss, engaging in a hard-fought arm's-length

mediation, and obtaining a $1.375 million Settlement for the benefit of the Settlement Class following a dismissal order. ¶¶18-25.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Plaintiffs as Class Representative and Levi & Korsinsky as Class Counsel, Plaintiffs and Class Counsel have adequately represented the Settlement Class. *See* Preliminary Approval Order at ¶¶2-3. This factor supports final approval of the Settlement.

### 2.    The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness; that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Courts also recognize that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).

Here, Lead Counsel engaged in rigorous settlement negotiations with counsel for the Dropbox Defendants in a process assisted by an experienced, well-respected mediator, Judge Feess. During the mediation, the participants had full and frank discussions concerning the merits of this Action. The negotiations focused on heavily disputed issues such as the potential for Plaintiffs to file an amended complaint that would be able to withstand a motion to dismiss and the appropriate measure of damages. The full-day mediation ended with an agreement to settle. ¶¶26-27; *see In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (the mediator's participation "weighs considerably against any inference of a collusive settlement").

It is also important to note that the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). Accordingly, this factor militates in favor of final approval.

### 3. The Settlement Is an Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6] As discussed below, each of these factors supports the Settlement's approval.

#### a) The Strength of Plaintiffs' Case and Risk Of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The risks of continued litigation here were considerable, perhaps insurmountable. The most immediate risk is that Plaintiffs would not have been able to overcome the pleading deficiencies identified by the Court in its order dismissing the FAC. Plaintiffs alleged that Dropbox's Registration Statement was materially false and misleading for failing to disclose the alleged decline

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor), and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026).

of Drobox's user conversion rate, which Plaintiffs alleged had caused Dropbox to experience a material decline and/or slowdown in revenue growth.  However, the Court rejected this theory of liability and dismissed Plaintiffs' Section 11 claim, finding that the FAC did not explain why Dropbox's omission of its allegedly declining user conversion rate created a materially different impression of Dropbox's financial health.  *See* ECF No. 104 at 12-13.  According to the Court, it was equally plausible that Dropbox's revenue rate decline could be traced to Dropbox's other two revenue drivers and not from an alleged decline in converting free users into paid users.  *Id.* at 11. The Court also rejected Plaintiffs' Section 11 claims premised on S-K Item 303 and dismissed Plaintiffs' Section 15 claims.  *Id.*at 17-18.  Finally, beyond dismissing Plaintiffs' Section 11 and 15 claims, the Court also highlighted another threat to the survival of Plaintiffs' claims—dismissing the FAC on the alternate ground that the alleged claims were barred by the statute of limitations.  *Id.* at 18-23.

There is no better indication of the future risks Plaintiffs faced in continuing litigation than that of the Court's dismissal.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Importantly, the risks discussed above were just risks Plaintiffs faced at the *pleading* stage.  On top of those risks, if Plaintiffs' case had advanced past the motion to dismiss stage, a further escalation of risks would have followed.  For example, to defeat a summary judgment motion and prevail at trial, Plaintiffs would have to prove by a preponderance of the evidence, among other things, that: (i) Defendants made false and/or misleading statements about the Company's financial results; (ii) the Individual Defendants had the requisite scienter in connection with such statements and omissions; and (iii) the alleged putative class suffered damages as a result of such false statements.  Although Plaintiffs and Lead Counsel believe that the case has merit, they recognize

establishing liability beyond the pleading stage is uncertain.  ¶¶30-31; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

Attendant to the above-discussed legal risks, continued litigation would be long, complex, and costly.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) ("[s]ecurities class actions are generally complex and expensive to prosecute."). Depositions would have to be taken, experts would need to be designated and expert discovery completed, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain.  Any recovery that shareholders might ultimately see would be diluted by the escalating costs accumulated in the process.  *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at \*2 (S.D.N.Y. Dec. 2, 2004) ("[C]omplex security fraud issues were likely to be litigated aggressively, at substantial expense to all parties.").

Moreover, any judgment favorable to the Settlement Class likely would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain.  *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

In sum, continued litigation would be risky and uncertain, and assuming the litigation were even able to proceed past the pleading stage, it would be complex, costly, and lengthy.  By contrast, the $1.375 million Settlement provides a favorable, immediately realizable recovery and eliminates all the risks of continued litigation.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("[t]he present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval of a settlement that eliminates the

expense and delay of continued litigation, as well as the significant risk that the Class could receive no recovery").

### b)    Risks Of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident the Class meets the requirements for certification, a class had not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree.  Furthermore, "[e]ven if the Court were to certify a class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).  "Because there was a risk that the court would not have certified a class in the first place had the parties not settled, and a further risk that, even if it did, that class might later have been decertified, this factor too weighs in favor of approving the settlement." *In re American Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

### 4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval

Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

**Rule 23 (e)(2)(C)(ii):** Here, the method for processing Settlement Class Members' claims and distributing the Net Settlement Fund to eligible claimants is well-established and effective. Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims, or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-

approval.[7]  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

**Rule 23(e)(2)(C)(iii)**: The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees is taken into account.  As detailed in the accompanying Fee Memorandum, a proposed attorneys' fee of 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  The proposed attorneys' fee is also consistent with awards in similar complex class action cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶18.

**Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Plaintiffs noted in their preliminary approval papers, the Parties entered into a confidential agreement that establishes certain conditions pursuant to which Defendants may terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion (or "opt out") from the Settlement Class meet the conditions set forth in Dropbox's confidential supplemental agreement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

**5.    The Settlement Treats All Settlement Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the Securities Act, and takes into consideration when each Claimant purchased and/or sold shares of Dropbox common stock and, in particular, whether or not their purchases of Dropbox common stock could be traced to the IPO, i.e., whether they bought their shares when only shares sold in the IPO were trading in the market. Plaintiffs will receive the same level of *pro rata* recovery, based on their Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members. "Moreover, the service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020). Accordingly, this factor favors final approval of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

**6.    The Positive Reaction Of The Settlement Class Supports Settlement Approval**

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rules 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from,

or object to, the Settlement. Ex. 1 ("Evans Decl.") (Notice at p. 3). Approximately 150,000 copies of the Postcard Notice have been distributed to potential Settlement Class Members and the Summary Notice was published over the *GlobeNewswire*, a national online newswire service. *Id.* ¶9. To date, three requests for exclusion have been received, and no objections have been filed with the Court. *Id.* ¶15.[8] The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members.").

### 7. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

**The Amount Offered In Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Wells Fargo*, 2018 WL 6619983, at *8. "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

---

[8] The deadline to request exclusion from, or to object to any aspect of, the Settlement is November 12, 2021; if any exclusions or objections are received after the date of this filing, they will be addressed on reply.

(9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.").

Here, Plaintiff's damages expert estimates that if Plaintiff had prevailed on the ***already dismissed*** case, and if the Court and jury subsequently accepted all of Plaintiffs' liability and damages theories—*i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $35.5 million.   Under such a scenario, the $1.375 million recovery represents approximately 3.8% of the estimated maximum damages potentially available in this Action.   ¶ 9.

However, this Court held that Plaintiff failed to plead the existence of a single false or misleading statement and expressed doubt that Plaintiff could cure the pleading issues related to the statute of limitations defense.   ECF No. 104 at 14. Thus, assuming the case did proceed, and Plaintiffs prevailed, damages were estimated to be $35.5 million. ¶9.   Moreover, the estimated damages does not take into account any disaggregation arguments that Defendants may have raised. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).   In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages.  *See* Ex. 5 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement equal to 1.99% of total maximum estimated damages).

Of course, Defendants would have continued to challenge all aspects of the case, and given the current procedural posture of the case, the prospect that Plaintiffs would have obtained ***any*** recovery was far from guaranteed.  *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In this case, continued litigation involved substantial risk for Plaintiffs.

This Court has already granted three motions to dismiss, and a fourth is pending."); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at \*6 (S.D. Cal. Oct. 30, 2020) ("The Court has already dismissed the complaint and the amended complaint may fare no better. Something is clearly better than nothing."). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of approval.

**The Extent Of Discovery Completed And The Stage Of The Proceedings:** "In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d at 459 (9th Cir. 2000). "Instead, courts look for indications the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at \*13-14 (N.D. Cal. Oct. 25, 2016).

Here, Lead Counsel conducted an extensive investigation into the claims asserted in this Action, which included a far-reaching review of publicly available information, significant work with a private investigator who conducted numerous fact interviews with former employees and other third parties, and consultation with experts in the fields of financial analysis, loss causation, and damages. Additionally, Lead Counsel drafted the First Amended Complaint, opposed Defendants' motions to dismiss, participated in a mediation process in which each side put forth their best arguments, and reviewed and analyzed the Court's decisions. As a result of these efforts, Plaintiffs and Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, and the significant risks to establishing liability and damages. This understanding enabled Plaintiffs and Lead Counsel to negotiate the Settlement intelligently and responsibly. *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at \*5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiff (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

**The Experience And Views Of Counsel:** "The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Id.*

As discussed above, Lead Counsel has a thorough understanding of the merits and weakness of the claims, as well as extensive prior experience litigating securities class action cases. Under such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class likewise supports the Settlement's approval. *See In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

**The Presence Of A Governmental Participant** "Because no government entities are participants in this case, this factor is neutral." *Amgen*, 2016 WL 10571773, at *4.

\*       \*       \*

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a finding that the Settlement is fair, reasonable, and adequate, or is neutral. Final approval is, therefore, appropriate.

**B.      The Plan Of Allocation Is Fair And Reasonable**

Plaintiffs also request final approval of the Plan of Allocation. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. The allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). "A plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue should be approved as fair

and reasonable." *Schueneman v. Arena Pharmaceuticals, Inc.*, 2020 WL 3129566, at \*7 (S.D. Cal. June 12, 2020).

The Plan of Allocation, as detailed in ¶¶50-58 of the Apton Declaration, and set forth in the Notice (Ex A-1 at ¶¶47-59), is based on the statutory formula for the calculation of damages set forth in Section 11(e) of the Securities Act. More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegations that the Defendants violated the federal securities laws by making false and misleading statements in the Registration Statement and Prospectus issued in connection with Dropbox's IPO. Thus, under the Plan of Allocation, only shareholders who purchased their shares between the IPO and August 23, 2018 will be eligible given that only those shares can be traced to the IPO. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Dropbox common stock the Claimant purchased, acquired, or sold during the Settlement Class Period.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Evans Decl., Notice at ¶53.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. *Id*. at ¶57. When it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed—subject to Court approval—to the Investor Protection Trust. *See* N.D. Cal. Pro. Guidance for Class Action Settlements, at ¶8. The Investor Protection Trust is a nonprofit organization devoted to investor education and is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action. Courts in this District and elsewhere have approved it as a *cy pres* recipient in other similar actions. *See Wells Fargo*, 2018 WL 6619983, at \*2 ("the Court concludes that the

Investor Protection Trust's mission of educating investors makes it an appropriate cy pres beneficiary."); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (Breyer, J.) ("Only if subsequent distributions to eligible claimants are not cost effective will a donation to the *cy pres* recipient, the Investor Protection Trust, be made.").[9]

Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims. *See Arena*, 2020 WL 3129566, at *7 (approving substantially similar plan of allocation). To date, no objections to the Plan of Allocation have been filed on this Court's docket. ¶73. Accordingly, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

**C.      The Settlement Class Should Be Finally Certified**

The Court's August 3, 2021 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 121 at ¶1. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 115 at 12-15), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

**D.      The Notice Program Satisfies Rule 23 And Due Process**

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This

---

[9] *See also In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *9 (S.D. Cal. Mar. 17, 2021) ("Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties shall distribute the remaining funds, if any, to *cy pres* recipient, Investor Protection Trust, a 501(c)(3) organization located in Washington D.C.").

Court has already found that the proposed notice program is adequate and sufficient (*see* Preliminary Approval Order, ECF No. 121 at ¶¶7-8), and Lead Counsel and SCS carried out the notice program as proposed. *See* Evans Decl., ¶¶2-11. The Settlement Class has, therefore, received "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion for final approval of the Settlement and approve the proposed Plan of Allocation.

Dated: October 28, 2021

**LEVI & KORSINSKY, LLP**

By: *s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff Ognjen Kuraica and the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen
Daniel Tyre-Karp
275 Madison Avenue, 40th Floor
New York, NY 10016

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Casey E. Sadler
Melissa Wright
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

*Attorneys for Plaintiffs Luis Chavez and Rick Grammiere and Additional Counsel for the Class*