**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff*
*Ognjen Kuraica and the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DROPBOX, INC. SECURITIES LITIGATION | Case No. 5:19-cv-06348-BLF <br><br> **CLASS ACTION** <br><br> **LEAD COUNSEL'S: (1) NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Hearing Date:   December 2, 2021 <br> Time:   9:00 a.m. <br> Location:   Courtroom 3 – 5th Floor <br> Judge:   Honorable Beth Labson Freeman |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD: .............................ix

I.      PRELIMINARY STATEMENT .............................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........................... 2

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................... 3

        A.      Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The
                Common Fund ................................................................................................ 3

        B.      The Court Should Calculate The Requested Fee As A Percentage Of The
                Common Fund ................................................................................................ 3

        C.      The Requested Fee's Approval Is Supported By The Factors Considered By
                Courts In The Ninth Circuit ......................................................................... 5

                1.      The Quality Of The Results Achieved Supports The Fee Request ............. 5

                2.      The Substantial Risks Of The Litigation Support The Fee Request .......... 7

                3.      The Skill Required And The Quality Of The Work ................................. 10

                4.      The Contingent Nature of The Fee and The Financial Burden Carried
                        by Counsel Support The Fee Request ....................................................... 11

                5.      A 25% Fee Award is Consistent With the Ninth Circuit's Benchmark
                        and Comparable to Attorneys' Fees Award in Similar Cases ................. 14

                6.      The Reaction of The Settlement Class Supports The Requested Fee ....... 15

        D.      A Lodestar Cross-Check Supports The Requested Fee ......................................... 15

IV.     PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
        BE APPROVED ................................................................................................... 18

V.      LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND
        EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) .................. **Error! Bookmark not defined.**

VI.     CONCLUSION ................................................................................................... 19

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
4
   572 F.3d 221 (5th Cir. 2009) ................................................................................ 6
5

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .......................................................... 3
6

*Boeing Co. v. Van Gemert*,
7
   444 U.S. 472 (1980) .............................................................................................. 3
8

*Brown v. China Integrated Energy Inc.*,
   No. CV1102559BROPLAX, 2015 WL 12712081 (C.D. Cal. Aug. 19, 2015) ............ 7
9

*Buccellato v. AT & T Operations, Inc.*,
10
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................................................ 17
11

*Cabiness v. Educ. Fin. Sols., LLC*,
   2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ........................................................ 17
12

*Chun–Hoon v. McKee Foods Corp.*,
13
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................. 17
14

*Destefano v. Zynga, Inc.*,
15
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................................... 12, 16
16

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,
   627 F.3d 376 (9th Cir. 2010) ............................................................................... 14
17

*Ellison v. Steven Madden, Ltd.*,
18
   2013 WL 12124432 (C.D. Cal. May 7, 2013) ......................................................... 4
19

*Eminence Capital, LLC v. Aspeon, Inc.*,
20
   316 F.3d 1048 (9th Cir. 2003) ............................................................................... 7
21

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ......................................................... 16
22

*Franco v. Ruiz Food Prods., Inc.*,
23
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ....................................................... 20
24

*Glass v. UBS Fin. Servs., Inc.*,
25
   331 Fed. Appx. 452 (9th Cir. 2009) ....................................................................... 5
26

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ............................................................................... 14
27

28

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................. 8

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ...................................................................... 16

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ................................................................... 2

*Gross v. GFI Group, Inc.*,
  310 F.Supp.3d 384 (S.D.N.Y., 2018) ........................................................... 13

*Gross v. GFI Grp., Inc.*,
  784 F. App'x 27 (2d Cir. 2019) ..................................................................... 13

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ............................................................................ 19

*Hefler v. Wells Fargo & Company*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................... 8, 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ....................................................................................... 6

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................. 20

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................................................. 17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 5

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .............................................. 11

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) .......................................................... 13

*In re Am. Apparel, Inc. S'holder Litig.*,
  No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................ 15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ................................................... 20

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................. 16

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................. 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................................ 14

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................... 10

*In re Biolase, Inc. Sec. Litig.*,
   No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ................... 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................... 4, 6, 17

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................................................... 10

*In re Cendant Corp. Litig*,
   264 F.3d 201 (3d Cir. 2001) ........................................................................... 10

*In re Centurylink Sales Practices and Sec. Litig.*,
   2021 WL 3080960 (D. Minn. July 21, 2021) ............................................................... 9

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .............................................................. 5

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................................... 8

*In re Dropbox Sec. Litig.*,
   No. 19-CV-06348-BLF, 2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ....................... 1, 9

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................................... 11

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................... 15

*In re Facebook, Inc. IPO* ........................................................................................ 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   2018 WL 6168013 (S.D.N.Y. Nov. 26, 2018) ............................................................ 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................ 17

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................ 11

*In re HP Sec. Litig.*,
   No. 3:12-cv-05980-CRB (N.D. Cal. Nov. 16, 2015) ................................................ 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ........................................................... 1

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................... 19, 21

*In re Initial Pub. Offering Sec. Litig.*,
   2011 WL 2732563 (S.D.N.Y. July 8, 2011) ...................................... 17

*In re K12 Inc. Sec. Litig.*,
   2019 WL 3766420 (N.D. Cal. July 10, 2019) .............................. 11, 21

*In re LJ Int'l, Inc. Sec. Litig.*,
   No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ........................... 15

*In re Myford Touch Consumer Litig.*,
   2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) .................................. 17

*In re NASDAQ Market-Makers Antrust. Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................... 8, 14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal 2008) ................................... passim

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 16, 2009) ................................. 14

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................... 2

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .............................................................. 5

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013) ......................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................................. 18

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................... 16

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986) ............................................................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ...................................................... 4, 12

*In re Waste Management, Inc. Sec Litig.*,
   2002 WL 35644013 (S.D. Tex. May 10, 2002) ................................. 8

*In re Xcel* ................................................................................................................ 21

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................... 9, 13

*In re: Korean Ramen Antitrust Litigation*,
    Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) ............................................ 13

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011) ............................................................................................ 14

*Katz v. China Century Dragon Media, Inc.*,
    No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ............................ 7

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................ 15

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .............................................................. 11

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................... 9

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................................................ 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989); ...................................................................... 14, 16

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .......................................................................... 14

*Rodman v. Safeway*,
    2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ..................................................... 6

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ............................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 5

*Ross v. Trex Company, Inc.*,
    2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) ................................................... 2

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................................ 2, 9

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ............................................................................. 4

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004)...........................................................8

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .........................................................21

*Tow v. Rigas (In re Adelphia Commun. Corp. Sec. & Litig.)*,
    272 F. App'x 9 (2d Cir. 2008) ...............................................................................11

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012)....................................................................................5

*van Wingerden v. Cadiz, Inc.*,
    No. LACV1503080JAKJEMX, 2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) ..........15

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977)....................................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014)............................................................4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2012)......................................................................5, 6, 7, 16

**Statutes**

15 U.S.C. § 78u-1(a)(6)....................................................................................................5

15 U.S.C. § 78u-4 ............................................................................................................1

15 U.S.C. § 78u-4(a)(4) ............................................................................................x, 20

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020
    Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16))......................................7

Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986) ................12

**Rules**

F.R.C.P. 23 .....................................................................................................................ix

<br>

## NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
## AND REIMBURSEMENT OF LITIGATION EXPENSES
**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, and the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 121), on December 2, 2021, at 9:00 a.m., or as soon thereafter as counsel may be heard, at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 3 –5th Floor, 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman, Lead Counsel Levi & Korsinsky, LLP ("L&K" or "Lead Counsel"), on behalf of itself and additional plaintiffs' counsel, The Rosen Law Firm, P.A. ("Rosen Law") and Glancy Prongay & Murray LLP ("GPM" and with L&K, and Rosen Law, "Plaintiffs' Counsel"), will and hereby does move the Court for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Law, the Apton Declaration, the Declaration of Sarah Evans Regarding Notice Administration ("Evans Decl."), the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.[2]

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated July 30, 2021 (ECF No. 117-2), or the concurrently filed Declaration of Adam M. Apton in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Apton Declaration"). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Apton Declaration.

[2] Defendants take no position with respect to this motion.

1

**STATEMENT OF ISSUES TO BE DECIDED**

2              1.   Whether the Court should approve as fair and reasonable Lead Counsel's application,

3  on behalf of Plaintiffs' Counsel, for an attorneys' fee award in the amount of 25% of the Settlement

4  Fund or $343,750 (*i.e.*, the Settlement Amount, plus interest earned thereon).

5              2.   Whether the Court should approve the request for reimbursement of $34,257.30 in

6  litigation expenses incurred by Plaintiffs' Counsel in this Action.

**MEMORANDUM OF LAW**

Court-appointed Lead Counsel, on behalf of itself, Rosen Law, and GPM, respectfully requests the Court grant the motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $343,750, plus interest earned at the same rate as the Settlement Fund. Lead Counsel also seeks reimbursement of $34,257.30 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action.

## I.   PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $1,375,000 in cash in exchange for the resolution of the Action, represents a very favorable result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiffs were required to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability and damages. The risk of losing was very real, and it was greatly enhanced by the fact that they would be litigating against corporate defendants represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. § 78u-4; *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").[3] Indeed, by the time the Settlement was reached, the Court had granted Defendants' motions to dismiss the First Amended Complaint. *See In re Dropbox Sec. Litig.*, No. 19-CV-06348-BLF, 2020 WL 6161502, at *1 (N.D. Cal. Oct. 21, 2020) and ECF No. 98. Thus, there was no guarantee that this case would have progressed past the pleading stage. Rather, there was strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)

---

[3] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

1   (observing that "Defendants prevail outright in many securities suits."). Despite these risks,

2   Plaintiffs' Counsel collectively worked over 540 hours on behalf of the Settlement Class, and

3   advanced $34,257.30 in costs and expenses, all on a fully contingent basis.

4   As compensation for Plaintiffs' Counsel's significant efforts and achievements on behalf of

5   the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 25% of the

6   Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class

7   action settlements, whether considered as a percentage of the Settlement Fund or in relation to

8   Plaintiffs' Counsel's lodestar. In fact, the requested fee represents a "negative" or fractional

9   multiplier of 0.84x on Plaintiffs' Counsel's lodestar, which is a strong indication of its

10  reasonableness. *See Ross v. Trex Company, Inc.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16,

11  2013) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their

12  lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re

13  Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The

14  resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and

15  fair based on the time and effort expended by class counsel.").

16  Lead Counsel also seek reimbursement of $34,257.30 in out-of-pocket litigation expenses

17  incurred by Plaintiffs' Counsel in prosecuting this Action. This amount is below the $40,000 limit

18  on Litigation Expenses disclosed in the Notice—which, by definition, included a PSLRA award to

19  Lead Plaintiffs—and it equates to less than 3% of the Settlement Fund. The expenses are reasonable

20  in amount, and were necessarily incurred in the successful prosecution of the Action. Accordingly,

21  they should be approved.

22  For all the reasons set forth herein, and in the Apton Declaration, Lead Counsel respectfully

23  request that the Court award attorneys' fees equal to 25% of the Settlement Fund, approve

24  reimbursement of $34,257.30 in litigation expenses incurred by Plaintiffs' Counsel.

25  **II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

26  The Apton Declaration is an integral part of this submission. For the sake of brevity in this

27  memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and

28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                              Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

1  procedural history of the Action (¶¶16-19); the nature of the claims asserted (¶¶20-25; the

2  negotiations leading to the Settlement (¶¶26-28); and the risks and uncertainties of continued

3  litigation (¶¶30-38).  Additionally, in accordance with this District's Procedural Guidance for Class

4  Action Settlements, the Court is referred to the concurrently filed final approval motion for the

5  history and facts of the case.

6  **III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST**

7      **A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common**

8           **Fund**

9           It is well settled that attorneys who represent a class and are successful in recovering a

10  common fund for the benefit of class members are entitled to a reasonable fee from the common

11  fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a

12  litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his

13  client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, the Ninth Circuit

14  has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve

15  a fund to which others also have  a claim is entitled to recover from the fund the costs of his litigation,

16  including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see*

17  *also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who

18  benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort

19  helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).

20  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by

21  distributing the costs of litigation among those who benefit from the efforts of the litigants and their

22  counsel." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

23      **B.    The Court Should Calculate The Requested Fee As A Percentage Of The**

24           **Common Fund**

25           District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund

26  cases based upon either the percentage-of-the-fund method or the lodestar method.  *See In re*

27  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a

28

settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).  Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used.  *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis.  *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons, among others, Lead Counsel respectfully request that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-

check to assess the reasonableness of the percentage award.  *See Vizcaino*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure ….");  *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

**C.      The Requested Fee's Approval Is Supported By The Factors Considered By Courts In The Ninth Circuit**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances."  *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012);  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases.  *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-51 (9th Cir. 2012)); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011).  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances.  *Vizcaino*, 290 F.3d at 1048-50.  As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

**1.      The Quality Of The Results Achieved Supports The Fee Request**

Courts consistently acknowledge that the quality of the result achieved is the most important factor in determining an appropriate fee award.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046.  Lead Counsel submit that the $1,375,000 proposed Settlement is an excellent result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

1    Here, if Lead Plaintiffs had prevailed in the already once dismissed case, and if the Court

2  and jury subsequently accepted all of Lead Plaintiffs' liability and damages theories, *i.e.*, Lead

3  Plaintiff's ***best case scenario****,* and rejected any negative causation defenses—the total ***maximum***

4  damages would be approximately $35.5 million. Under such a scenario, the $1,375,000 recovery

5  represents approximately 3.8% of the estimated maximum damages potentially available in this

6  Action.

7    This case was not, however, risk free and there were meaningful barriers to recovery.

8  Obstacles included both the well-known general risks of complex securities litigation, as well as the

9  specific risks inherent in this case. *See also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572

10  F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action

11  plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree

12  and congressional action.").  For example, the Court had already dismissed the Section 11 claims of

13  the FAC rejecting Lead Plaintiffs' theory that Dropbox's Registration Statement was materially

14  false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the

15  Company to experience a decline and/or slowdown in revenue growth. ECF No. 98 at 15.  The Court

16  also held that Lead Plaintiffs failed to show that Defendants omitted a known material trend from

17  Dropbox's Registration Statement that was not captured in the Company's disclosure of declining

18  revenue and paying user grow rates, dismissing the Section 11 claims premised on Regulation S-K

19  Item 303. *Id*. at 17. Further, the Court dismissed Lead Plaintiffs' Section 15 claims and alternatively

20  found the claims were time-barred. *Id*. at 18, 23.

21    The $1,375,000 recovery equates to approximately 3.8% of $35.5 million in damages Lead

22  Plaintiffs' expert estimates. ¶9.  Moreover, the estimated damages assumes that Lead Plaintiffs are

23  given full credit for each of the respective drops and does not take into account any negative

24  causation defense Defendants would assert.  *Katz v. China Century Dragon Media, Inc.*, No.

25  LACV1102769JAKSSX, 2013 WL 11237202, at *5 (C.D. Cal. Oct. 10, 2013) (recognizing the

26  potential of a negative causation defense was a risk and continued litigation would be protracted,

27  expensive, and complex); *Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX,

28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

2015 WL 12712081, at *6 (C.D. Cal. Aug. 19, 2015) (same), In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages.  *See* Apton Decl., Ex. 5 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)) ("NERA Report").

Given the range of possible results in this litigation, including a strong possibility of no recovery whatsoever, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### 2.    The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues."  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees).  While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness.  This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.").[4]  This Action was no exception.

While Lead Counsel believe that the claims of Lead Plaintiffs and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial risks in the litigation and that Lead Plaintiffs' ability to succeed at trial and obtain a large judgment

---

[4] *See also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain."); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

MOTION FOR AN AWARD OF ATTORNEYS' FEES                          Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

1  was far from certain.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000)

2  ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re*

3  *NASDAQ Market-Makers Antrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course,

4  must be judged as it appeared to counsel at the outset of the case, when they committed their capital

5  (human and otherwise)."); *In re Waste Management, Inc. Sec Litig.,* 2002 WL 35644013, at *28

6  (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the

7  litigation, and not in light of the settlement achieved in the end.").  Nevertheless, Lead Counsel

8  accepted the challenge.

9       "One proxy for assessing risk is whether the litigation followed on the heels of some prior

10  criminal or civil proceeding involving the same parties or subject matter."  *In re Dairy Farmers of*

11  *Am., Inc., Cheese Antitrust Litig.,* 80 F. Supp. 3d 838 (N.D. Ill. 2015) *"*This inquiry provides insight

12  into whether class counsel benefitted from the work of others, which acts a red flag for judges

13  assessing fee petitions."  *Id.*  In the instant case, there were no proceedings initiated by the SEC or

14  DOJ and no journalistic investigation into the allegations at issue.  Rather, "Plaintiffs' counsel (and

15  their teams and experts) were truly the authors of the favorable outcome for the class."  *Meredith*

16  *Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).[5]

17       Moreover, this was not a restatement case.  When companies restate their financials, they

18  are admitting a material misstatement of their financial reporting.  A case predicated on a

19  restatement is, therefore, less risky because the misstatement and materiality elements of a securities

20  fraud claim are already met.  *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL

21  5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases

22  where liability is virtually certain due to a financial restatement).  In short, "[t]his case lacked several

23  strong facts that often support liability (and large settlement valuations) and provide a roadmap for

24  proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or

---

[5] *See also Silverman*, 2012 WL 1597388, at *3 (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case.  Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense.").

DOJ investigation." *In re Centurylink Sales Practices and Sec. Litig.*, 2021 WL 3080960, at *9 (D. Minn. July 21, 2021).

While the focus of the inquiry is on assessing risk at the beginning of the case, it is also important to note that the litigation risks did not end with the filing of the complaint.  Indeed, the risks inherent in this case are highlighted by the Court's dismissal of the Action.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *In re Dropbox Sec. Litig.*, No. 19-CV-06348-BLF, 2020 WL 6161502, at *1 (N.D. Cal. Oct. 21, 2020) and ECF No. 98.

Lead Plaintiffs faced significant hurdles to surviving a second motion to dismiss as the Court granted the first dismissal on several grounds. The Court: (i) rejected Lead Plaintiffs' assertions that the Company's Reinstatement Statement was materially false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline and/or slowdown in revenue growth; (ii) held that Lead Plaintiffs did not demonstrate Defendants omitted known trends in the Registration Statement; and (iii) found that the claims were time-barred.  As demonstrated by this Court's ruling, Defendants' arguments were not illusory, and there existed a very real risk that Lead Plaintiffs would not be able to survive another pleading. These risks were present from the beginning of the litigation, and had the litigation continued, there is simply no guarantee that the case would have ever progressed past the pleading stage.  *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Even assuming Lead Plaintiffs prevailed past the pleading stage, there still existed major obstacles to ***proving*** liability.  For example, to defeat a summary judgment motion and prevail at trial, Plaintiffs would have to prove by a preponderance of the evidence, among other things, that: (i) the Company's Reinstatement Statement was materially false and misleading as it failed to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline

1   and/or slowdown in revenue growth; and (ii) Defendants were aware of known trends prior to the

2   issuance of the Registration Statement. Each of these are subjective, fact based inquiries, and the

3   trier of fact could easily have determined that the evidence supported Defendants' version of the

4   events.

5       Additionally, Defendants would have continued to assert that Lead Plaintiffs could not

6   establish loss causation for any of the purported disclosures dates, and even if they could, the

7   damages were minimal.   Although Plaintiffs believed that they had meritorious arguments in

8   response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely

9   disparate views on loss causation and damages and had Defendants' negative causation defenses

10  been accepted in whole or part, they would have dramatically limited or foreclosed any potential

11  recovery.  *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages

12  at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with

13  no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,

14  909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a

15  so-called 'battle of experts,' victory is by no means assured."). In sum, the risks posed by litigation

16  were substantial, and they were present every step of the way.

### 3.    The Skill Required And The Quality Of The Work

18      The third factor to consider in determining what fee to award is the skill required and the

19  quality of the work performed.  To this end, courts have recognized that the "prosecution and

20  management of a complex national class action requires unique legal skills and abilities,"

21  *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in

22  determining the appropriate fee award."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D.

23  Cal. June 10, 2005).  "This is particularly true in securities cases because the [PSLRA] makes it

24  much more difficult for securities plaintiffs to get past a motion to dismiss."  *Omnivision*, 559 F.

25  Supp. 2d at 1047.

26      Here, the attorneys at L&K, GPM, and Rosen Law are among the most experienced and

27  skilled practitioners in the securities litigation field, and are firms with long records of successfully

28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

prosecuting securities cases throughout the country, including within this Circuit.  *See* Apton Decl., Exs. 2, 3, and 4 (L&K, GPM, Rosen Law Firm Resumes); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019) ("Lead Counsel [GPM] has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions.").  Lead Counsel respectfully submit that the quality of Plaintiffs' Counsel's efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Plaintiffs' Counsel with the leverage necessary to negotiate a favorable settlement.

In evaluating the quality of Plaintiffs' Counsel's work, it is also important to consider the quality and vigor of opposing counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Defendants in this Action were represented by Wilson Sonsini Goodrich & Rosati P.C., O'Melveny & Myers, LLP, and Quinn Emmanuel Urquhart & Sullivan, LLP, three highly respected law firms with impressive securities lawyers. Their briefs filed in support of Defendants' motions to dismiss reflected a vigorous defense. Plaintiffs' Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### 4.      The Contingent Nature of The Fee and The Financial Burden Carried by Counsel Support The Fee Request

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value

1
2

of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

3
4
5
6
7
8

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

9
10
11
12
13
14
15
16
17
18
19

Here, Plaintiffs' Counsel have to date received no compensation, have invested 540 hours of work equating to a total lodestar of over $400,000, and incurred expenses of $34,257.30 in prosecuting and resolving this Action. Additional work in implementing the Settlement and claims administration will also be required. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Since the inception of this case, Plaintiffs' Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

20
21
22
23
24
25

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict

26
27
28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                     Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

1    in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).[6]

2           And Plaintiffs' Counsel is not alone.  There are many other hard-fought lawsuits where,

3    because of the discovery of facts unknown when the case was commenced, changes in the law during

4    the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent

5    professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel.  *See,*

6    *e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing

7    significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by

8    Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of

9    unbroken circuit court precedent over 40 years).  Indeed, "[p]recedent is replete with situations in

10   which attorneys representing a class have devoted substantial resources in terms of time and

11   advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc., Sec., Deriv.*

12   *& "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[7]  Even plaintiffs who get past

13   summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or

14   on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir.

15   2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss

16   causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv.*

17   *Traders*, 564 U.S. 135 (2011)).[8]

18          Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainties were

19   there would be no fee without a successful result and such a result would only be realized after

20   _____

21   [6] *See also Gross v. GFI Group, Inc.*, 310 F.Supp.3d 384, 399 (S.D.N.Y., 2018) (GPM served as Co-
     Lead Counsel in case where the Court granted summary judgment for defendants following four
22   years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of
     attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019).

23   [7] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627
     F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation
24   and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours,
     representing lodestar of approximately $48 million).
25
     [8] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of
26   $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D.
     Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following
27   plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)
     (overturning jury verdict for plaintiffs after extended trial).
28

1   substantial amounts of time, effort, and expense were expended.  Nevertheless, Plaintiffs' Counsel

2   committed significant amounts of both time and money to vigorously and successfully prosecute

3   this Action for the benefit of the Settlement Class. Under such circumstances, "[t]he contingent

4   nature of counsel's representation strongly favors approval of the requested fee." *In re NASDAQ*

5   *Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

6           **5.    A 25% Fee Award is Consistent With the Ninth Circuit's Benchmark**

7                  **and Comparable to Attorneys' Fees Award in Similar Cases**

8           In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund

9   as the "benchmark" award for attorneys' fees which then could be "adjust[ed] upward or downward

10  to fit the individual circumstances of this case."  886 F.2d 268, 273 (9th Cir. 1989); *see also Torrisi*

11  *v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark).

12  Despite the considerable effort and risks incurred to reach the Settlement, Plaintiffs' Counsel is

13  seeking the 25% benchmark for attorneys' fees.

14          The requested fee is reasonable when compared to fee awards in similarly-sized securities

15  class action settlements from district courts throughout the Ninth Circuit. *See, van Wingerden v.*

16  *Cadiz, Inc.*, No. LACV1503080JAKJEMX, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017)

17  (awarding fees of 25% of $3 million settlement); *In re Am. Apparel, Inc. S'holder Litig.*, No.

18  CV1006352MMMJCGX, 2014 WL 10212865, at *27 (C.D. Cal. July 28, 2014) (awarding fees of

19  25% of $4.8 million settlement); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF,

20  2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (awarding fees of 25% of $7 million

21  settlement); *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *7

22  (C.D. Cal. Oct. 19, 2009) (awarding fees of 25% of $2 million settlement); *In re Biolase, Inc. Sec.*

23  *Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *8 (C.D. Cal. Oct. 13, 2015) (awarding

24  fees of 25% of $1.75 million settlement).

25          Accordingly, Lead Counsel's fee request is in line with other comparable cases and should

26  be approved.

27

28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

**6.      The Reaction of The Settlement Class Supports The Requested Fee**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048.  Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, and the settlement website. Evans Decl. ¶¶2-9.   The Court-approved Postcard Notice was sent to approximately 150,000 potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published *GlobeNewswire*.  *Id*. at ¶9. A dedicated settlement website was also created (https://www.strategicclaims.net/dropbox/), and all relevant dates and documents—including the Notice, Stipulation, Claim Form and Preliminary Approval Order—were posted thereon.[9]  *Id*. at ¶11.

To date, ***no*** objections to the requested amounts of attorneys' fees and expenses have been received.[10]   The lack of objections is strong evidence that the requested fees and expenses are reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *13 ("By any standard, the lack of objection of the Settlement Class Members favors approval of the Settlement."); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 at *13 (C.D. Cal. July 21, 2008) (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").

**D.      A Lodestar Cross-Check Supports The Requested Fee**

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of

---

[9] Both the Postcard Notice and the Notice informed the Settlement Class that Plaintiffs' Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund.

[10] The last day to file an objection is November 12, 2021.  If any objections are filed, Lead Counsel will address them in a reply brief.

1  attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can

2  demonstrate the fee request's reasonableness").

3        The lodestar method "calculates the fee award by multiplying the number of hours

4  reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account

5  for the risks associated with the representation." *Graulty*, 886 F.2d at 272.  "Calculation of the

6  lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*,

7  618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In the second step of the

8  analysis, a court adjusts the lodestar to take into account, among other things, the time and labor

9  required, the result achieved, the quality of representation, whether the fee is fixed or contingent,

10  the novelty and difficulty of the questions involved, and awards in similar cases.  *See, e.g.*, *Gonzalez*

11  *v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013).  In so doing, "courts have routinely

12  enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d

13  at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check,

14  "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher

15  multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013)

16  ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.");

17  *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding

18  "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues

19  involved, the requisite legal skill and experience necessary, the excellent and quick results obtained

20  for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are

21  customary.").

22        Here, Plaintiffs' Counsel's lodestar is approximately $408,000.    ¶62. Therefore, the

23  requested fee of $343,750 yields a fractional or "negative" multiplier of 0.84x. ¶63. A "multiplier

24  of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the

25  services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D.

26  Cal. 2010) (finding requested fee award was not unreasonable when lodestar cross-check revealed

27  a multiplier of 0.59); *see also In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D.

28

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 5:19-cv-06348-BLF
AND REIMBURSEMENT OF LITIGATION EXPENSES

Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").  Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation." *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019).  This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'"  *Id.* (quoting *Bluetooth*, 654 F.3d at 942).[11]

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiffs' Counsel's lodestar is supported by the Apton Declaration, which includes detailed exhibits showing the hours incurred by each L&K, GPM, and Rosen Law professional that worked on this litigation, broken down by five substantive categories of work. Apton Decl., Exhibits 2, 3, and 4.  In addition, for each attorney or other professional whose time is included in Plaintiffs' Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided.

The current hourly rates for Plaintiffs' Counsel range from $725 to $1,000 for partners and $425 to $750 for associates. *See* Apton Decl., Exhibits 2, 3, and 4.  Lead Counsel believes that these rates are within the range of reasonable fees for attorneys working on complex class-action litigation in this District.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Wells Fargo & Co.*, 2018 WL 6619983, at *14 (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).  Plaintiffs' Counsel's rates for its partners, of counsel attorneys, and associates are also comparable to peer plaintiff and defense firms litigating

---

[11] *See also In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) (noting fractional multiplier meant "every firm was . . . compensated for a small fraction of the time spent on the case").

matters of similar magnitude. *See* Apton Decl., Exhibit 6 (rates charged by defense counsel in complex litigation matters routinely reach as high as $1,500 per hour or higher).

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

## IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).   The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action.  Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

In the aggregate, Plaintiffs' Counsel have incurred expenses in the amount of $34,257.30 while prosecuting the Action, and these expenses are set forth in the Apton Declaration and in each firm's individual supporting declaration.  The largest expense was for the retention of a private

investigation firm, in the amount of $10,000.  ¶80.  Other substantial costs related to: (i) Lead Counsel's retention of experts in the fields of financial analysis and damages, in the amount of $7,500; and (ii) Lead Plaintiff's share of the mediation fees charged by mediator Judge Gary A. Feess, (Ret.) of Phillips ADR, in the amount of $10,000.  ¶¶81-82.  Each of these expenses were critical to Plaintiffs' Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *see also Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").[12]

## V.       CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

Dated: October 28, 2021

**LEVI & KORSINSKY, LLP**

By: *s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff*

---

[12] The Notice informed Settlement Class Members that Lead Counsel intended to apply for the reimbursement for Litigation Expenses "in an amount not to exceed $40,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class."  Evans Decl., Notice (Postcard Notice).

*Ognjen Kuraica and the Class*

**THE ROSEN LAW FIRM, P.A**.
Phillip Kim
Daniel Tyre-Karp
275 Madison Avenue, 40th Floor
New York, NY 10016

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Casey E. Sadler
Melissa Wright
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiffs Luis Chavez and*
*Rick Gammiere and Additional Counsel*
*for the Class*