**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff Ognjen Kuraica
and the Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DROPBOX, INC. SECURITIES LITIGATION | Case No.: 5:19-cv-06348-BLF |
| | **DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION** |
| | Hearing Date: December 2, 2021 Time: 9:00 a.m. Location: Courtroom 3 – 5th Floor Judge: Honorable Beth Labson Freeman |
| This Document Relates To: All Actions | |

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

## TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Declaration of Sarah Evans Concerning: (A) Mailing of Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 2 | Declaration of Adam Apton, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fee and Reimbursement of Litigation Expenses Filed on Behalf of Levi & Korsinsky, LLP |
| 3 | Declaration of Melissa C. Wright, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fee and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP |
| 4 | Declaration of Daniel Tyre-Karp, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fee and Reimbursement of Litigation Expenses Filed on Behalf of The Rosen Law Firm, P.A. |
| 5 | Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) |
| 6 | Table of Law Firm Rates |

i
DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 2

II.   PROSECUTION OF THE ACTION .............................................................................. 5

     A.    Background ......................................................................................................... 5

     B.    Commencement of the Instant Action................................................................. 5

     C.    The Comprehensive Pre-Filing Investigation, Preparation of the FAC, and Defendants' Motion to Dismiss the FAC .......................................................... 5

     D.    Mediation Efforts, Settlement Negotiations, and the Settlement's Preliminary Approval............................................................................................................. 7

III.  THE RISKS OF CONTINUED LITIGATION ............................................................. 8

     A.    Risks to Proving Liability .................................................................................. 8

     B.    Risks to Proving Damages ................................................................................. 8

     C.    Risks Faced in Obtaining and Maintaining Class Certification ............................ 9

     D.    Other Risks....................................................................................................... 10

     E.    The Settlement is Reasonable in Light of the Potential Recovery in the Action .... 10

IV.   PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REGARDING THE NOTICE PROGRAM.......................................................... 11

V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT ............................... 13

VI.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES ......................................................................................... 15

     A.    The Fee Application ......................................................................................... 16

          1.    The Excellent Outcome Achieved is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action........................................ 16

          2.    Standing and Caliber of Opposing Counsel ................................................. 18

          3.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases .................................... 18

          4.    The Reaction of the Settlement Class to the Fee Memorandum ................. 20

     B.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable...... 20

VII. CONCLUSION ............................................................................................................. 22

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

I, Adam M. Apton, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. Court-appointed Lead Counsel Levi & Korsinsky, LLP ("L&K" or "Lead Counsel"), and additional counsel Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm, P.A. ("Rosen Law" and, together with L&K and GPM, "Plaintiffs' Counsel"), are counsel of record for Lead Plaintiff Ognjen Kuraica and Named Plaintiff Rick Gammiere ("Plaintiffs") in the above-captioned action (the "Action").[1]  I oversaw or conducted the day-to-day activities in the Action on behalf of my firms.  I am familiar with the proceedings in this litigation, and have personal knowledge of the matters set forth herein based upon supervising and participating in all aspects of the Action.

2. I respectfully submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the concurrently filed memorandum in support thereof ("Final Approval Memorandum").  As set forth in the Final Approval Memorandum, Plaintiffs seek final approval of the $1,375,000 Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3. I also respectfully submit this declaration in support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and the concurrently filed memorandum in support thereof ("Fee Memorandum"). As set forth in the Fee Memorandum, Lead Counsel, on behalf of Plaintiffs' Counsel, seeks an award of attorneys' fees in the amount of 25% of the Settlement Fund (which, by definition, includes interest accrued thereon), and reimbursement of Litigation Expenses in the total amount of $34,257.30.

4. The Court preliminarily approved the proposed Settlement by Order dated August 3, 2021 (the "Preliminary Approval Order"), and thereby directed notice of the Settlement to be disseminated to the Settlement Class.  *See* ECF No. 121.  Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation and Agreement of Settlement, dated May 14, 2021 (the "Stipulation") (ECF No. 115-2).

a comprehensive notice program under the direction of Lead Counsel, whereby notice was given to potential Settlement Class Members by mail and by publication.

5. In total, 149,712 copies of the Postcard Notice have been disseminated to potential Settlement Class Members and nominees, and thus far only three requests exclusions were received and no objections have been received.

## I. INTRODUCTION

6. This is a class action that asserted claims pursuant to Section 11 of the Securities Act of 1933 (the "Securities Act") against Dropbox, Inc. ("Dropbox" or the "Company"), the Individual Defendants[2], and the Underwriter Defendants[3], and under Section 15 of the Securities Act against the Individual Defendants and the Sequoia Defendants.[4] Plaintiffs allege that Dropbox's Registration Statement was materially false and misleading for failing to disclose the alleged decline of Dropbox's user conversion rate, which Plaintiffs alleged had caused Dropbox to experience a material decline and/or slowdown in revenue growth.

7. The proposed Settlement provides for the resolution of all claims in the Action in exchange for a cash payment of $1,375,000 (the "Settlement Amount") for the benefit of the Settlement Class. As detailed herein, Plaintiffs and Plaintiffs' Counsel submit that the proposed Settlement represents a highly favorable result for the Settlement Class considering the procedural posture of the case as well as the significant risks remaining in the litigation, including the fact that the Court had granted Defendants' motions to dismiss making proceeding past the pleading stage a potentially insurmountable obstacle.

---

[2] The "Individual Defendants" are Andrew W. Houston, Ajay V. Vashee, Timothy J. Regan, Arash Ferdowsi, Robert J. Mylod, Jr., Donald W. Blair, Paul E. Jacobs, Condoleezza Rice, R. Bryan Schreier, and Margaret C. Whitman.

[3] The "Underwriter Defendants" are Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities, Inc., RBC Capital Markets, LLC, Jefferies LLC, Macquarie Capital (USA) Inc., Canaccord Genuity LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Piper Sandler & Co.

[4] The "Sequoia Defendants" are Sequoia Capital XII L.P., Sequoia Capital XII Principals Fund, LLC, Sequoia Technology Partners XII, L.P., and SC XII Management, LLC

2

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

8. Additionally, the $1,375,000 cash Settlement Amount is within the range of reasonableness under the circumstances to warrant final approval of the Settlement. As discussed more fully below, Plaintiffs' best-case damages scenario is estimated to be approximately $35.5 million. However, the Court had already: (i) rejected Plaintiffs' assertions that the Company's Reinstatement Statement was materially false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline and/or slowdown in revenue growth; (ii) held that Plaintiffs did not demonstrate Defendants omitted known trends in the Registration Statement; and (iii) found that the claims were time-barred.

9. The $1,375,000 Settlement Amount represents approximately 3.8% of $35.5 million in damages. This percentage of recovery for a securities litigation matter that has been dismissed, is within the range of reasonableness considering the circumstances.

10. Indeed, the Settlement provides a substantial, certain, and immediate recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount (or nothing) after years of additional litigation and delay.

11. The Settlement was reached after two years of contested litigation. Plaintiffs' Counsel's efforts involved, among other things: (i) conducted a comprehensive investigation prior to the filing of the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint" or "FAC"); (ii) fully briefed the various motions to dismiss the FAC filed by the Dropbox Defendants and the Sequoia Defendants;[5] (iii) prepared for and argued the motions to dismiss; (iv) investigated and researched a subsequent amended complaint in light of the Court's motion to dismiss order; (v) in advance of a mediation session, prepared detailed mediation and reply statements outlining Plaintiffs' analyses of the claims and defenses in this case, including the additional content that would have been included in the filed amended complaint if the case had not settled; (vi) engaged in arm's-length negotiations with counsel for Defendants

---

[5] "Dropbox Defendants" means Dropbox and the Individual Defendants.

3

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

during an all-day mediation session on February 11, 2021 which culminated in an agreement in principle to settle the Action; and (vii) negotiated and executed the Stipulation.

12.     In preparation for the mediation, the Parties provided mediator Judge Gary A. Feess (Ret.) of Philips ADR with detailed mediation statements and reply statements outlining their respective analyses of the claims and defenses in this case. After a full day of negotiation, the Parties reached an agreement in principle to resolve the action.  The proposed Settlement is, therefore, the result of arm's-length negotiations between and among well-informed, highly experienced counsel.

13.     Based on the foregoing efforts, Plaintiffs and Plaintiffs' Counsel are well aware of the strengths and weaknesses of the claims and defenses in the Action, and believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

14.     In addition, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable.  As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of Plaintiffs' damages consultant.  The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts.

15.     Finally, Lead Counsel, on behalf of Plaintiffs' Counsel, seeks approval of the request for attorneys' fees and reimbursement of Litigation Expenses as set forth in the Fee Memorandum. As discussed in detail in the accompanying Fee Memorandum, the requested 25% fee is within the range of percentage awards granted by courts in comparable securities class actions.  Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check and warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested out-of-pocket litigation costs of $34,257.30 is also fair and reasonable. Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set

4

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses be approved.

## II.     PROSECUTION OF THE ACTION

### A.     Background

16.     Plaintiffs alleged that Dropbox's Registration Statement was materially false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline and/or slowdown in revenue growth in violation of Sections 11 and 15 of the Securities Act.

17.     Plaintiffs further alleged that the price of Dropbox's common stock was artificially inflated as a result of the Defendants' allegedly false and misleading statements and omissions, and that the price declined when the truth was revealed.

### B.     Commencement of the Instant Action

18.     On October 4, 2019, two class action complaints were filed in the United States District Court for the Northern District of California, styled *Deinnocentis v. Dropbox, Inc., et al.*, Case No. 5:19-cv-06348-BLF (N.D. Cal.) (the "*Deinnocentis* Action") and *Pikal v. Dropbox, Inc.*, et al., Case No. 4:19-cv-06360 (N.D. Cal.) (the "*Pikal* Action").

19.     On December 3, 2019, several competing motions were filed seeking consolidation and appointed of lead plaintiff and lead counsel. On January 16, 2020, the Court issued an Order: (1) consolidating the *Deinnocentis* and *Pikal* Actions, which were re-captioned as *In re Dropbox, Inc. Securities Litigation*, Case No. 5:19-cv-06348-BLF; (2) appointing Mr. Kuraica as Lead Plaintiff for the consolidated action; and (3) approving Lead Plaintiff's selection of L&K as Lead Counsel for the proposed plaintiff class. ECF No. 65

### C.     The Comprehensive Pre-Filing Investigation, Preparation of the FAC, and Defendants' Motion to Dismiss the FAC

20.     In preparation for filing the amended complaint, Plaintiffs' Counsel conducted an extensive factual and legal investigation that included, *inter alia*: (i) detailed review of Dropbox's U.S. Securities and Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after

5

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Dropbox; (iii) research reports by securities and financial analysts; (iv) economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting numerous fact interviews with former employees and other third parties; (vi) review and analysis of other publicly available material and data; and (vii) consultation with a damages expert.

21.    On March 2, 2020, Plaintiffs and named plaintiff Luis Chavez[6] filed and served the FAC. ECF No. 68.  The FAC asserted claims under Section 11 of the Securities Act against Dropbox, the Individual Defendants, and the Underwriter Defendants, as well as claims under Section 15 of the Securities Act against the Individual Defendants and the Sequoia Defendants.  The FAC alleged that Dropbox's Registration Statement was materially false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline and/or slowdown in revenue growth.

22.    The FAC further alleged that the prices of Dropbox's publicly traded securities were artificially inflated as a result of the Defendants' allegedly false and misleading statements and that the price of Dropbox's common stock declined when the truth was revealed.  Plaintiffs asserted these allegations on behalf of themselves and all person who purchased or otherwise acquired Dropbox common stock pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with Dropbox's March 22, 2018 initial public offering (the "IPO").

23.    On April 16, 2020, the Dropbox Defendants filed and served a motion to dismiss the FAC, which both the Underwriter and Sequoia Defendants joined. ECF Nos. 71, 73-74. That same day, the Sequoia Defendants also filed and served a memorandum of points and authorities in support of dismissal of Count II of the FAC on the grounds that Plaintiffs did not adequately allege a violation of Section 15 of the Securities Act as to the Sequoia Defendants. ECF No. 73. Defendants argued that Plaintiffs: did not plead any facts regarding Dropbox's conversion rates; did not allege

[6] On April 8, 2020, additional named plaintiff Luis Chavez moved to voluntarily dismiss his claims without prejudice, which the Court granted the following day.  ECF Nos. 69-70.

6

actionable statements; failed to plead that Dropbox violation a disclosure duty under Item 303 of Regulation S-K; and that Plaintiffs' claims were time barred. ECF No. 71.

24.     On July 13, 2020, Plaintiffs served their papers in opposition and, on August 17, 2020, the various defendants served their reply papers. ECF Nos. 80-81, 84-85. On September 8, 2020, Dropbox Defendants filed and served a notice of recent authority in support of their motion to dismiss. ECF No. 86. On September 24, 2020, the Court heard oral argument on Defendants' motions to dismiss. ECF No. 95.

25.     On October 21, 2020, the Court entered an Order granting Defendants' motions to dismiss with leave to amend, which was then corrected on October 28, 2020. ECF Nos. 98, 104. The Court rejecting Lead Plaintiffs' theory that Dropbox's Registration Statement was materially false and misleading for failing to disclose a decline in Dropbox's conversion rate which caused the Company to experience a decline and/or slowdown in revenue growth. ECF No. 98 at 15.  The Court also held that Plaintiffs failed to show that Defendants omitted a known material trend from Dropbox's Registration Statement that was not captured in the Company's disclosure of declining revenue and paying user grow rates, dismissing the Section 11 claims premised on Regulation S-K Item 303. Further, the Court dismissed Plaintiffs' Section 15 claims and alternatively found the claims were time-barred.

**D.     Mediation Efforts, Settlement Negotiations, and the Settlement's Preliminary Approval**

26.     On February 11, 2021, Lead Counsel and counsel for the Dropbox Defendants participated in a full-day mediation session before Judge Feess of Philips ADR. In advance of that session, Plaintiffs and the Dropbox Defendants each submitted and exchanged detailed mediation statements and reply statements outlining their respective analyses of the claims and defenses in this case. The session culminated in reaching an agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet") executed on February 11, 2021.

27.     Following additional negotiations, the Parties exchanged multiple drafts of—and ultimately executed—the Stipulation dated May 14, 2021. That day, Plaintiffs submitted their Unopposed Motion for Preliminary Approval of Class Action Settlement.

7

28. On August 3, 2021, the Court issued its Preliminary Approval Order. ECF No. 121.

## III. THE RISKS OF CONTINUED LITIGATION

29. The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $1,375,000. As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals. Prior to contemplating a potential trial and likely appeal, the most immediate risk faced by the Settlement Class was the procedural posture of the case—the Court had already granted Defendants' motions to dismiss and another motion to dismiss was anticipated if Plaintiffs amended the complaint. Thus, there was no guarantee that Plaintiffs and the Settlement Class would later achieve any recovery, let alone one greater than $1,375,000.

### A. Risks to Proving Liability

30. In addition to the hurdles of proceeding past the pleading stage and obtaining class action status (discussed below), Plaintiffs and Lead Counsel faced numerous additional risks at summary judgment and trial, including establishing Defendants' liability. Defendants forcefully argued in their motions to dismiss (which the Court granted)—and undoubtedly would have continued to argue at summary judgment and/or trial—that Plaintiffs could not establish the elements of their Securities Act claims.

31. For instance, Defendants would argue that the Registration Statement was not false or misleading, that Defendants did not violate any duty to disclose known trends under Item 303 of Regulation S-K, and that the claims could not be brought as they were time-barred.

### B. Risks to Proving Damages

32. Even assuming that Plaintiffs overcame the above risks and successfully established Defendants' liability, Plaintiffs would have confronted considerable challenges in establishing class-wide damages. Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, Defendants' negative causation defenses, accepted in whole or part, would have dramatically limited or foreclosed any potential recovery.

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

33.    Plaintiffs and Defendants almost certainly would have presented their own damages expert(s), who would have no doubt presented conflicting conclusions and theories for negative causation and the true damages. This "battle of the experts" creates an additional litigation risk because the reaction of a trier of fact to such expert testimony is highly unpredictable, creating uncertainty regarding how much weight a judge or jury will accord the analysis of Defendants' competing experts.

34.    In sum, had any of Defendants' damages arguments been accepted, they could have dramatically limited—if not eliminated—any potential recovery.

**C.    Risks Faced in Obtaining and Maintaining Class Certification**

35.    Defendants likely would have argued against class certification. While Plaintiffs' Counsel analyzed the class question and are confident that all of the Rule 23 requirements would have been met, and that the Court would have certified the proposed class, Plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification. Moreover, even if Plaintiffs successfully obtained class certification, Defendants could have sought permission from the Ninth Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery. Class certification was, by no means, a forgone conclusion.

36.    Additionally, a recent ruling by the United States Supreme Court has made obtaining class certification for Plaintiffs more difficult and could potentially provide additional challenges should the litigation against Defendants proceed. In *Goldman Sachs Grp. v. AR Teacher Ret.*, 141 S.Ct. 1951 (June 21, 2021), the Supreme Court held, in part, that when defendants are seeking to rebut the presumption of reliance established under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as modified by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), courts may consider the generic nature of an alleged misrepresentation as evidence of lack of price impact. Accordingly, courts are now permitted to assess materiality of an alleged misstatement and consider "all evidence relevant to price impact" at the class certification stage. On the plus side for Plaintiffs, the Supreme

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

Court did clarify that defendants bear the burden of persuasion of showing a lack of price impact by a preponderance of the evidence.

### D.    Other Risks

37.    Plaintiffs would have to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one.  Lead Counsel knows from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured.  For example, approximately two years ago, GPM lost a six-week antitrust jury trial in this District after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs.  *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.).  Put another way, complex litigation is uncertain, and success in cases like this one is never guaranteed.

38.    Even if Plaintiffs succeeded in proving all elements of their case at trial and obtained a jury verdict, Defendants almost certainly would have appealed.  An appeal not only would have renewed all the risks faced by Plaintiffs—as Defendants would have reasserted all their arguments summarized above—but also would have resulted in significant additional delay.  Given these significant litigation risks, Plaintiffs and Lead Counsel believe that the Settlement represents an excellent result for the Settlement Class.

### E.    The Settlement is Reasonable in Light of the Potential Recovery in the Action

39.    In addition to the attendant risks of litigation discussed above, the Settlement is also fair and reasonable in light of the potential recovery of available damages.  If Plaintiffs had fully prevailed in each of their claims at both summary judgment and after a jury trial, if the Court certified the Settlement Class, and if the Court and jury accepted Plaintiffs' damages theory, Lead Plaintiffs' best-case scenario—estimated total maximum damages are approximately $35.5 million.  However, the Court has already held that Plaintiffs failed to plead the existence of a single false or misleading statement and found that the claims were time barred.

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

40.     Defendants would likely assert a negative causation defense which could have substantially reduced Plaintiffs' maximum damages. In that light, the Settlement amount is even more reasonable.

## IV.     PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REGARDING THE NOTICE PROGRAM

41.     The Preliminary Approval Order (ECF No. 121) directed that the Postcard Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Postcard Notice") be disseminated to the Settlement Class.  The Preliminary Approval Order also set a deadline of November 12, 2021 (21 calendar days prior to the final fairness hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum or to request exclusion from the Settlement Class and set a final fairness hearing date of December 2, 2021 (the "Settlement Hearing").

42.     Pursuant to the Preliminary Approval Order, Lead Counsel instructed SCS, the Court-approved Claims Administrator, to begin disseminating copies of the Postcard Notice and to publish the Summary Notice.  Contemporaneously with the mailing of the Postcard Notice, Lead Counsel instructed SCS to post downloadable copies of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form ("Claim Form") online at https://www.strategicclaims.net/dropbox/ (the "Settlement Website").  Upon request, SCS mailed copies of the Notice and/or Claim Form to Settlement Class Members and will continue to do so until the deadline to submit a Claim Form has passed.

43.     The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online on the Settlement Website.  The Notice contains, among other things, a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of a Settlement Class Member's right to participate in the Settlement, object to the Settlement, the Plan

11

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

of Allocation and/or the Fee Memorandum, or to exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $40,000 which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class.

44.    To disseminate the Postcard Notice, SCS obtained from Defendants' Counsel, through Lead Counsel, the names and addresses of 3,331 record holders of Dropbox common stock that are potential Settlement Class Members.  To date, SCS mailed 149,712 copies of the Postcard Notice to Settlement Class Members by first-class mail.  *See* Declaration of Sarah Evans Concerning: (A) Mailing of Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), ¶6, attached hereto as Exhibit 1.

45.    In addition, SCS maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees (the "Nominee Account Holders") as well as mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups").  *See id.* at ¶5.  At the time of the initial mailing, SCS had a list of 703 Nominee Account Holders and 596 Institutional Groups. *Id.*  On August 27, 2021, SCS caused a letter to be mailed or e-mailed to these 1,299 Nominee Account Holders and Institutional Groups notifying them of the Settlement and requesting that they, within 7 calendar days from the date of the letter, either send a Postcard Notice to their customers who may be beneficial purchasers/owners; email a link to the location of the Long Notice and Claim Form; or provide SCS with a list of the names, mailing addresses, and email addresses of such beneficial owners so that SCS could promptly mail the Postcard Notice directly to them or email them links to the Long Notice and Claim Form. *Id.*

46.    As of October 28, 2021, 149,712 Postcard Notices have been sent to potential Settlement Class Members and their nominees. *See id.* at ¶6. SCS was also notified that one of the nominees emailed 73,076 of its customers to notify them of the Settlement and provided direct links to the Long Notice and Claim Form. *Id.*

12
DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

47.    On September 15, 2021, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be transmitted once over the *GlobeNewswire*. *See id.* at ¶9; Ex. C (copy of publication confirmation).

48.    Lead Counsel also caused SCS to establish the Settlement Website, which became operational on August 24, 2021, to provide Settlement Class Members with information concerning the Settlement, submit a claim online, download copies of the full Notice and Claim Form, as well as copies of the Stipulation, and Preliminary Approval Order.  Evans Decl. at ¶11.

49.    The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the Fee Memorandum or to request exclusion from the Settlement Class is November 12, 2021.  To date, there have been three requests for exclusion have been received.  *Id.* at ¶12.  SCS will file a supplemental affidavit after the November 12, 2021 deadline addressing whether any requests for exclusion have been received.  To date, no objections to the Settlement or the Plan of Allocation have been entered on this Court's docket or have otherwise been received by Plaintiffs' Counsel. *Id.* at ¶13. Lead Counsel will file reply papers by November 24, 2021 that will address any objections that may be received.

V.    **ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT**

50.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $1,375,000 Settlement Amount, plus interest earned thereon less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court (which may include reimbursement to Plaintiffs for their costs and expenses incurred in representing the Settlement Class); and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information postmarked no later than December 29, 2021. *See* Ex. B to Evans Decl. (Notice) at p. 3. As set forth in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the plan of allocation approved by the Court.

51.    The Plan of Allocation is detailed in the long-form Notice.  *See* Ex. B to Evans Decl. (Notice, p. 10).  The full Notice is posted online at the Settlement Website, is downloadable, and

upon request, will be mailed to any potential Settlement Class Member.  The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the Exchange Act, as opposed to losses caused by market, industry, Company-specific factors or factors unrelated to the alleged violations of law, and takes into consideration when each Authorized Claimant purchased and/or sold shares of Dropbox common stock.  *See* Ex. B to Evans Decl. (Notice at ¶¶47-49).

52.     As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund.  *Id.*

53.     The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 11 of the Securities Act and reflects an assessment of the damages that Plaintiffs contends could have been recovered under the theories of liability and damages asserted in the Action.  The Plan of Allocation is based statutory damages.

54.     Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Id.* at ¶53.

55.     An individual Claimant's recovery under the Plan of Allocation will depend on several factors, including the number of valid claims filed by other Claimants and how many shares of Dropbox common stock the Claimant purchased, acquired, or sold during the Settlement Class Period and when that Claimant bought, acquired, or sold the shares.  If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Dropbox stock during the Settlement Class Period. Lead Counsel believes that the Plan of Allocation will result in a fair and

14
DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

56.    The Net Settlement Fund in its entirety will be distributed to Authorized Claimants and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective.  If Lead Counsel, in consultation with the Claims Administrator, deems a further distribution not cost effective, Lead Counsel proposes Investor Protection Trust as the *cy pres* recipient of any residual funds that may remain.

57.    In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Dropbox common stock that were attributable to the conduct alleged in the Complaint. Accordingly, Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

58.    As noted above, as of October 28, 2021, 149,712 copies of the Postcard Notice which directs Settlement Class Members to the Settlement Website containing the Plan of Allocation and advises Settlement Class Members of their right to object to the proposed Plan of Allocation, have been sent to potential Settlement Class Members.  *See* Evans Decl. at ¶6; Ex. B to Evans (Postcard Notice). To date, no objections to the proposed Plan of Allocation have been received or filed on the Court's docket.

## VI.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

59.    In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying to the Court for an award of attorneys' fees of 25% of the Settlement Fund (or $343,750, plus interest earned at the same rate as the Settlement Fund) on behalf of all Plaintiffs' Counsel.  Lead Counsel also requests reimbursement of the out-of-pocket expenses that Plaintiffs' Counsel incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $34,257.30. The legal authorities supporting a 25% fee award are set forth in the

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

accompanying Fee Memorandum, which is being filed contemporaneously herewith.  The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.      The Fee Application

60.      Lead Counsel is applying for a percentage of the common fund fee award to compensate Plaintiffs' Counsel for the services they rendered on behalf of the Settlement Class.  As set forth in the accompanying Fee Memorandum, the percentage method is the best method for determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery.  The lawyers are motivated to obtain the maximum recovery in the shortest amount of time required under the circumstances.  This paradigm minimizes unnecessary drain on the Court's resources.  Notably, the percentage of the fund method has been recognized as appropriate by the Supreme Court and Ninth Circuit for cases of this nature.

61.      Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submit that the requested fee award is fair and reasonable and should be approved.  As discussed in the Fee Memorandum, a 25% fee award is well within the range of percentages awarded in securities class actions with comparable settlements.

#### 1.      The Excellent Outcome Achieved is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action

62.      Attached hereto as Exhibits 2, 3, and 4 are declarations from L&K, GPM, and Rosen Law in support of an award of attorneys' fees and reimbursement of litigation expenses. In accordance this District's Procedural Guidance for Class Action Settlements, included within each supporting declaration is a schedule summarizing the hours by category[7] and lodestar of each firm from the inception of the case through and including October 18, 2021 (except Rosen Law who included their time through October 27), summaries of each attorneys' work performed on the

---

[7] The five categories of litigation include: (i) Initial Investigation and Lead Plaintiff Appointment; (ii) Preparation of Complaints and Factual Investigation; (iii) Research and Briefing the Motions to Dismiss; (iv) Mediation and Settlement; and (v) Miscellaneous Court Filings, including, but not limited to, Stipulations, Status Updates, *etc*.

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

Action, a summary of expenses by category, and a firm resume. Time expended in preparing the application for fees and reimbursement of expenses has not been included. The following is a summary chart of the hours expended and lodestar amounts for the two firms:

| LAW FIRM | LODESTAR |
|---|---|
| LEVI & KORSINSKY, LLP | $119,842.50 |
| GLANCY PRONGAY & MURRAY LLP | $67,470.00 |
| THE ROSEN LAW FIRM, P.A. | $221,673.00 |
| **TOTAL LODESTAR** | **$408,985.50** |

63.    As set forth above and in detail in Exhibits 2, 3, and 4, Plaintiffs' Counsel have collectively expended over 540 hours in the investigation and prosecution of the Action. The resulting total lodestar is $408,985.50. The requested fee of 25% of the Settlement Fund equals $343,750 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a multiplier of less than one (0.84x) to Plaintiffs' Counsel's lodestar, representing a discount in the hourly fees they incurred.

64.    As detailed above, throughout this case, Plaintiffs' Counsel devoted substantial time to the prosecution of the Action. I maintained control of and monitored the work performed by lawyers and other personnel on this case. I personally devoted substantial time to this case, and was personally involved in drafting or reviewing and editing all pleadings, court filings, and other correspondence prepared on behalf of Plaintiffs, communicating with Plaintiffs on a regular basis, engaging with counsel for Defendants on a variety of matters, and were intimately involved in Settlement negotiations. Other experienced attorneys at the firms also drafted, reviewed and/or edited pleadings, court filings, and other correspondence prepared on behalf of Plaintiffs and were involved in Settlement negotiations and other matters. More junior attorneys and paralegals also worked on matters appropriate to their skill and experience level. Throughout the litigation, Plaintiffs' Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

65.    As demonstrated by the firm resumes, attached hereto as Exhibits 2, 3, and 4, Plaintiffs' Counsel are highly experienced and skilled laws firms that focus their practices on

17

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

securities class action litigation.  Indeed, L&K, GPM, and Rosen Law have substantial experience in litigating securities fraud class actions and has negotiated scores of other class settlements, which have been approved in courts throughout the country.  I believe Plaintiffs' Counsel's experience added valuable leverage in the settlement negotiations.

**2.      Standing and Caliber of Opposing Counsel**

66.     The quality of work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, Defendants were represented by Wilson Sonsini Goodrich & Rosati P.C., O'Melveny & Myers, LLP, and Quinn Emmanuel Urquhart & Sullivan, LLP, three very prominent law firms with a national reputations for the tenacious defense of class actions and other complex civil matters.  In the face of this experienced and formidable opposition, Plaintiffs' Counsel were able to develop a case that was sufficiently strong to nonetheless persuade Defendants to settle the case on terms that were highly favorable to the Settlement Class.

**3.      The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

67.     This prosecution was undertaken by Plaintiffs' Counsel on an entirely contingent-fee basis.  From the outset, this Action was an especially difficult and highly uncertain securities case. There was no guarantee that Plaintiffs' Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and to cover the considerable litigation costs required by a case like this one.  With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Plaintiffs' Counsel received no compensation during the course of the Action and have incurred $34,257.30 in out-of-pocket litigation-related expenses in prosecuting the Action.

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

68.    Additionally, the claims for securities fraud had to be developed solely by Plaintiffs' Counsel and Plaintiffs without subpoena power and were hindered by the PSLRA's automatic discovery stay.

69.    Plaintiffs' Counsel also bore the risk that no recovery would be achieved.  As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever.  Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this is never assured.  Plaintiffs' Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in contingent litigation is never assured.  In fact, GPM recently lost a six-week antitrust jury trial in this District after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs.  *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115  (N.D. Cal.).

70.    Moreover, courts have repeatedly recognized having experienced and able counsel enforcing the securities laws and regulations regulating the duties of the officers and directors of public companies is in the public interest.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("[P]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted).  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

71.    Plaintiffs' Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In circumstances such as these, and in consideration of the hard work and the result achieved, I respectfully submit that the requested fee is reasonable and should be approved.

19

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

**4.      The Reaction of the Settlement Class to the Fee Memorandum**

72.      As noted above, as of October 28, 2021, 149,712 copies of the Postcard Notice were disseminated, which advised potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund.  Evans Decl. ¶6; Ex. A to Evan Decl. (Postcard Notice).  In addition, the Court-approved Summary Notice has been transmitted over the *GlobeNewswire*. Evans Decl. at ¶9; Ex. C to Evans Decl. (confirmation of Summary Notice publication).  To date, no objections to the maximum potential attorneys' fees request set forth in the Postcard Notice, Summary Notice, and the long-form Notice have been received or entered on this Court's docket. The deadline to object is November 12, 2021. Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers to be filed by November 24, 2021.

73.      In sum, Plaintiffs' Counsel accepted this case on a contingency basis, committed significant resources to it, and prosecuted it without any compensation or guarantee of success.

74.      Based on the result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, I respectfully submit that a fee award of 25% which equates to a fractional multiplier of 0.84x, is fair and reasonable, and is supported by the fee awards courts in this Circuit and others have granted in other comparable cases.

**B.      Reimbursement of the Requested Litigation Expenses is Fair and Reasonable**

75.      Plaintiffs' Counsel seek a total of $34,257.30 in Litigation Expenses to be paid from the Settlement Fund.

76.      Plaintiffs' Counsel are seeking reimbursement of a total of $34,257.50 in out-of-pocket costs and expenses.

77.      A breakdown by category of these expenses is presented in each Plaintiffs' Counsel's respective declarations. *See* Exhibits 2, 3, and 4 at Exhibit C.

78.      The Postcard Notice, Summary Notice, and long-form Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of expenses in an amount not to exceed $40,000. The total amount requested by Plaintiffs' Counsel and Lead Plaintiff,

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

$34,257.50, falls below the $40,000 cap Settlement Class Members were advised could be sought. To date, no objections have been raised as to the maximum amount of expenses set forth in the Postcard Notice, Summary Notice, and long-form Notice. If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, Lead Counsel will address it in their reply papers.

79. From the beginning of the case, Plaintiffs' Counsel was aware that they might never recover any of their expenses. Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced to prosecute this Action. Accordingly, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

80. The large component of expenses, approximately $10,000 of the total expenses, was expended on the retention of a private investigation firm to assist Plaintiffs' Counsel in their factual investigation into Plaintiffs' claims.

81. Another large component of expenses, approximately $7,500, was expended on the retention of experts in the fields of financial analysis, and damages. The experts were consulted at different points throughout the litigation, including on matters related to the preparation of the amended complaint, on matters relating to the negotiation of the Settlement, and on preparation of the proposed Plan of Allocation.

82. Another large component of expenses, $10,000 of the total expenses, was expended on Plaintiffs' Counsel's share of mediation fees paid to Philips ADR for the services of Judge Feess and his team.

83. The other Litigation Expenses for which Plaintiffs' Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These Litigation Expenses include, among others, costs of on-line legal and factual research, court fees, copying costs, and postage and delivery expenses.

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION

84.     In my opinion, the Litigation Expenses incurred by Plaintiffs' Counsel and Lead Plaintiff were reasonable and necessary to represent the Settlement Class and achieve the Settlement. Accordingly, Lead Counsel respectfully submit that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

## VII.    CONCLUSION

85.     For all the reasons set forth above, I respectfully submit that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate. I further submit that the requested attorneys' fee in the amount of 25% of the Settlement Amount should be approved as fair and reasonable, and the request for reimbursement of $34,257.50 in Litigation Expenses should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 28th day of October 2021.

<i>s/ Adam M. Apton</i><br>
ADAM M. APTON

22

DECLARATION OF ADAM M. APTON IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION