UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OGNJEN KURAICA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DROPBOX, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-06348-BLF<br><br>**ORDER GRANTING (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>[Re: ECF Nos. 127, 128] |

Before the Court are (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion") and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fees Motion"). *See* ECF Nos. 127, 128. No oppositions have been filed and there are no objectors. The Court held a hearing on the motions on December 2, 2021. For the reasons stated on the record and explained below, the Court GRANTS both motions.

**I.   BACKGROUND**

Plaintiff Jason Michael Deinnocentis filed this action on October 4, 2019, on behalf of himself and others similarly situated. *See* Complaint, ECF No. 1. On January 16, 2021, the case was consolidated with another, Ognjen Kuraica was appointed as Lead Plaintiff for the consolidated action, and Levi & Korskinsky LLP was approved as Lead Counsel for the putative plaintiff class. *See* ECF No. 65.

In their First Amended Complaint, Plaintiffs brought claims against the following

Defendants: (1) Dropbox, Inc. ("Dropbox"); (2) Andrew W. Houston, Ajay V. Vashee, Timothy J. Regan, Arash Ferdowsi, Robert J. Mylod, Jr., Donald W. Blair, Paul E. Jacobs, Condoleezza Rice, R. Bryan Schreier, and Margaret C. Whitman (the "Registration Statement Defendants"); (3) Sequoia Capital XII, L.P., Sequoia Capital XII Principals Fund, LLC, Sequoia Technology Partners XII, L.P., SC XII Management, LLC (the "Sequoia Defendants"); and (4) Goldman Sachs & Co. LLC ("Goldman Sachs"), J.P. Morgan Securities LLC, Deutsche Bank Securities Inc., BofA Securities, Inc. (f/k/a Merrill Lynch, Pierce, Fenner Smith Incorporated), Allen Company LLC, RBC Capital Markets, LLC, Jefferies LLC, Macquarie Capital (USA) Inc., Canaccord Genuity LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Piper Sandler & Co. (f/k/a/ Piper Jaffray Co.) (the "Underwriter Defendants"). *See* ECF No. 68 ¶¶ 12–34. Plaintiffs alleged violations of Section 11 of the Securities Act of 1933 (the "Securities Act") against Dropbox, the Registration Statement Defendants, and the Underwriter Defendants and violations of Section 15 of the Securities Act against the Registration Statement Defendants and the Sequoia Defendants. *See* First Amended Complaint, ECF No. 68 ¶¶ 63–80. Plaintiffs alleged that Dropbox's Registration Statement issued in connection with its March 27, 2018 initial public offering was materially false and misleading for failing to disclose the alleged decline of Dropbox's user conversion rate, which Plaintiffs alleged caused Dropbox to experience a material decline or slowdown in revenue growth. *See generally id.*

On April 16, 2020, Dropbox and the Registration Statement Defendants moved to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 71. The Underwriter Defendants filed a joinder to that motion, *see* ECF No. 74, and the Sequoia Defendants filed a joinder and separate motion to dismiss, *see* ECF No. 73. The Court dismissed the First Amended Complaint on October 21, 2020 with leave to amend. *See* ECF No. 98; ECF No. 104 (corrected order). On January 7, 2021, the Court granted the parties' stipulation to extend the time for Plaintiffs to file an amended complaint until February 22, 2021. *See* ECF No. 106. On February 23, 2021, the parties notified the Court that a settlement in principal had been reached. *See* ECF No. 108. On May 14, 2021, Plaintiffs moved for preliminary approval of the class action settlement. *See* ECF No. 115.

On August 3, 2021, the Court granted preliminary approval of the parties' settlement ("Settlement Agreement"). *See* ECF No. 121. The Settlement Agreement defines the Settlement

Class as follows:

> [A]ll persons who purchased or otherwise acquired Dropbox common stock pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with Dropbox's March 22, 2018 initial public offering.

Stipulation and Agreement of Settlement, ECF No. 115-2 ¶ 1.  Dropbox has agreed to provide a non-reversionary Settlement Fund of $1,375,000. *Id.* ¶¶ 1, 8, 13.  The Settlement Fund is inclusive of taxes, attorneys' fees and costs to Plaintiffs' counsel, individual settlement payments to the Settlement Class, and the Settlement Administrator's fees and costs.  *Id.* ¶ 9.

Under the Settlement Agreement, each member of the Settlement Class is required to submit a claim form to receive a distribution from the Settlement Fund.  *Id.* ¶¶ 24, 26.  The Settlement Administrator will determine the validity of each claim and calculate each authorized claimant's distribution according to the following procedure provided in the Long-Form Notice.  *Id.* ¶ 22.  Settlement Class members who purchased shares of Dropbox common stock between March 22, 2018 and August 23, 2018 and held their shares through November 9, 2018 are considered to have a "Recognized Loss" of $1.21 per share.  *See* Long-Form Notice, ECF No. 115-2, Ex. A-1 ¶ 49.  A Settlement Class member's "Recognized Claim" is the sum of his or her "Recognized Loss" amounts for all shares of Dropbox common stock.  *Id.* ¶ 52.  The amount distributed to a particular class member is calculated as his or her Recognized Claim divided by the total amount of Recognized Claims for all authorized claimants and multiplied by the Settlement Fund amount.  *Id.* ¶ 53.  The Settlement Administrator will distribute the resulting amounts to class members entitled to distributions of $10 or more.  *Id*.  If funds remain in the Settlement Fund after distribution, the Settlement Administrator will repeat the process while cost effective, and then the residual funds will go to the *cy pres* recipient Investor Protection Trust.  *Id.*  ¶ 57.  Settlement Class members who did not wish to be bound by the terms of the Settlement Agreement were required to submit written requests for exclusion by November 12, 2021. *Id.* ¶ 24; Evans Suppl. Decl., ECF No. 132-1 ¶ 9.

Following preliminary approval, Strategic Claims services (the "Settlement Administrator") provided notice by mail to 149,712 potential Settlement Class members, with 6,221 returned

3

1  undeliverable, and more than half of these mailed to updated addresses. *Id.* ¶ 4. Further, at least
2  73,076 emails were sent out to customers of a nominee regarding the Settlement. *Id.* ¶ 5. The
3  Settlement Administrator received six requests for exclusion and no objections. *Id.* ¶¶ 9–10.
4      On December 2, 2021, the Court heard both motions and indicated that it would grant final
5  approval and the request for attorney's fees and related expenses.

**II.  MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

    **A.  Rule 23 Certification Requirements**

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

        **i.  The Class Meets the Requirements for Certification Under Rule 23**

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or

4

fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When it granted preliminary approval of this class action settlement, this Court concluded that these requirements were satisfied. *See* ECF No. 121 ¶ 1. The Court is not aware of any facts that undermine that conclusion, but reviews briefly each of the Rule 23 requirements again.

Under Rule 23(a), the Court concludes that joinder of all class members would be impracticable under the circumstances of this case. Since Dropbox sold 36 million shares in its IPO, the members of the class number in the thousands or millions and are located throughout the United States. Prelim. App. Motion, ECF No. 115 at 13; *see Floyd v. Saratoga Diagnostics, Inc.*, No. 20–CV–01520–LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) ("[C]lasses of 40 or more are numerous enough.") (citations omitted). The commonality requirement is met because the key issues in the case are the same for all class members—(a) whether Defendants violated Sections 11 and 15 of the Securities Act; (b) whether Defendants' Registration Statement was negligently prepared and contained material misrepresentations; and (c) the appropriate measure of damages, if any. Plaintiffs' claims are typical of those of the Settlement Class, as they allege that they purchased Dropbox common stock pursuant or traceable to the Registration Statement and were subsequently damaged due to Defendants' conduct just like the other members of the Settlement Class. *See* First Amended Complaint, ECF No. 68 ¶¶ 9, 11; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class representative are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). There is no evidence of any conflict of interest that would preclude Plaintiffs' from acting as class representative or their counsel from acting as Class Counsel, and the Court is not concerned that Class Counsel has not vigorously litigated this action on behalf of the class.

Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case described above predominate over individual questions among the class members. That individual calculations of damages are required does not preclude certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). The Rule 23(b)(3) superiority inquiry looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The Court finds that superiority is satisfied here because prosecuting or defending separate actions at this stage would be impractical and inefficient.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### ii. The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class … may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026–27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement

6

approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026). "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted).

### a. Notice Was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* ECF No. 120 ¶ 8. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of Due Process. *Id.* Plaintiff now provides a declaration from the case manager at the Settlement Administrator explaining the implementation of the plan. *See* Evans Suppl. Dec., ECF No. 132-1. Based on that declaration, 149,712 Postcard Notices were mailed, with 6,221 (approximately 4%) having been returned undeliverable, and more than half of these having been mailed to updated addresses. *Id.* ¶ 4. Further, at least 73,076 emails were sent out to customers of a nominee regarding the Settlement. *Id.* ¶ 5. And a Summary Notice of the Settlement was transmitted electronically over the *GlobeNewswire*. *Id.* ¶ 6. The Settlement Administrator has additionally maintained a toll-free phone line and a webpage for the Settlement. *Id.* ¶¶ 7–8. Based on the implementation details of the notice plan, the Court is satisfied that the Settlement Class has received the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### b. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. First, the Court must consider the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery. Prior to staying the case based on the parties' stipulation regarding settlement, the Court had dismissed Plaintiffs' First Amended Complaint with leave to amend and no further amended complaint had been filed. *See* ECF No. 104. Had Plaintiffs amended their Complaint, they may have been unable to overcome the pleading deficiencies raised by the Court in its dismissal order. *See id.* The Court dismissed Plaintiffs' First Amended Complaint on multiple alternative grounds,

both because (1) Plaintiffs failed to adequately plead their Section 11 or 15 claims and (2) Plaintiffs' claims were barred by the statute of limitations. *See id.* at 15–23.

Second, considering the risk, expense, complexity, and duration of litigation, Plaintiffs would have likely faced significant hurdles in litigating this case, especially given that their First Amended Complaint had been dismissed and no amended complaint had been filed. *See id.*

Third, given the common questions of law and fact in this case, it is likely that the class would have been certified had the case progressed, but Plaintiffs would have faced likely faced opposition from Defendants.

Fourth, the settlement recovery for the class members is substantial given the circumstances of the case. As outlined above, the Court had dismissed the First Amended Complaint with leave to amend and no amended complaint had been filed. *See* ECF No. 104. Under those circumstances, the $1.375 million settlement fund—which is approximately 3.8% of the $35.5 million in estimated maximum damages available in the Action, Apton Decl., ECF No. 129 ¶ 9—is significant. Had Plaintiffs amended their First Amended Complaint, it was far from guaranteed that they could remedy the deficiencies the Court identified in its dismissal order. *See, e.g.,* ECF No. 104 at 14.

Considering the fifth *Hanlon* factor, although there had been little formal discovery prior to settlement, Plaintiffs did significant work investigating the claims, including by working with a private investigator who conducted interviews with former employees and third parties, consulting with experts, and reviewing publicly available information. Final Approval Motion, ECF No. 127 at 17. Further, the parties participated in mediation that provided both sides a better understanding of the issues. *Id.* The Court is satisfied that the parties were sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor five.

Under the sixth *Hanlon* factor, Lead Counsel's conclusion is that the Settlement is fair and reasonable. *Id.* at 18. Lead Counsel has demonstrated their thorough understanding of the strengths and weaknesses of this case and their extensive experience litigating prior securities cases. *See In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

Factor seven is neutral, since there was no government participant in the case.

Under factor eight, the class reaction to the settlement has been favorable. While nearly 150,000 postcard notices were sent out to potential class members and the Summary Notice was published over the *GlobeNewswire*, no objections have been filed and only six potential class members requested exclusion from the class. Evans Suppl. Decl., ECF No. 132-1 ¶¶ 3, 6, 9, 10. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art*, 283 F.Supp.3d 823, 833–34 (N.D. Cal. 2017). Further, SCS has received 1,433 claims—917 of them valid. Evans Decl., ECF No. 129-1 ¶ 14. And 187 potential class members have requested the Long Notice and Claim Form. Evans Suppl. Decl., ECF No. 132-1 ¶ 3.

Based on those factors, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

\*   \*   \*

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

### III. MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Lead Counsel seeks an award of $343,750 in attorneys' fees and $34,257.30 in costs. *See* Fees Motion, ECF No. 128.

#### A. Attorney's Fees and Expenses

##### i. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citations omitted).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citations omitted). This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942 (citations omitted).

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor

10

1 bean counting. ... [courts] may rely on summaries submitted by the attorneys and need not review
2 actual billing records." *Covillo v. Specialtys Cafe*, No. C–11–00594–DMR, 2014 WL 954516, at *6
3 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### ii. Discussion

Lead Counsel seeks an award of attorneys' fees totaling $343,750, which is 25% of the $1,375,000 gross Settlement Fund, in addition to $34,257.30 in costs.

The Court first approves the $34,257.30 in costs. The Court has reviewed Plaintiffs' Counsel's itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this litigation. *See* ECF No. 129-2, Ex. C; ECF No. 129-3, Ex. C; ECF No. 129-4, Ex. C.

The Court also finds the amount of attorneys' fees to be reasonable. Lead Counsel's request is reasonable under the percentage-of-recovery method. The 25% request here is the "benchmark" in this circuit. *Bluetooth*, 654 F.3d at 942. The Court sees no reason that the attorneys' fees here should be reduced below the benchmark percentage. A lodestar cross-check confirms this reasonableness. Lead Counsel states that the total lodestar from inception of this case through settlement is approximately $408,000. Apton Decl., ECF No. 129 ¶ 63. The hourly rates charged by Plaintiffs' Counsel have been approved by multiple courts across California, and the Court finds the number of hours expended to be reasonable. *See* Fees Motion, ECF No. 128 at 18 (listing cases). Using $408,000 as the lodestar results in a negative multiplier of 0.84. "A negative multiple 'strongly suggests the reasonableness of [a] negotiated fee.'" *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021) (quoting *Rosado v. Ebay Inc.*, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)). Accordingly, the requested fee amount is reasonable.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of

11

1  Allocation is GRANTED; and
2  (2)  Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation
3  Expenses is GRANTED.

Dated:  December 8, 2021

_____
BETH LABSON FREEMAN
United States District Judge