**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Attorneys for Lead Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re DROPBOX, INC. SECURITIES LITIGATION | Case No. 5:19-cv-06348-BLF<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   August 31, 2023<br>Time:              9:00 am<br>Location:         Zoom Webinar<br>Judge:            Honorable Beth Labson Freeman |

MOTION FOR DISTRIBUTION
Case No. 5:19-cv-06348-BLF

## NOTICE OF MOTION FOR DISTRIBUTION OF SETTLEMENT FUNDS

PLEASE TAKE NOTICE that, upon the accompanying Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process (the "Bravata Distribution Declaration") submitted by the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or "Claims Administrator"), and the Memorandum in Support of Plaintiff's Motion for Authorization to Distribute Net Settlement Fund, Lead Plaintiff Ognjen Kuraica and Plaintiff Rick Grammiere (collectively, "Plaintiffs") through their counsel, will and hereby do move this Court for entry of the accompanying Proposed Order Granting Authorization to Distribute the Net Settlement Fund.  That order will, *inter alia*: (1) approve SCS's administrative recommendations accepting and rejecting Proofs of Claim Forms submitted in this Action; (2) direct the distribution of 100% of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; (3) direct that distribution checks state "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."; (4) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to deposit or cash their distribution checks in a timely manner; (5) adopt the recommended plan for any funds remaining following the distribution; (6) release claims related to the claims administration process; and (7) provide that the Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as the Court deems appropriate.

The Proposed Order Granting Authorization to Distribute the Net Settlement Fund is filed concurrently herewith.

PLEASE TAKE FURTHER NOTICE that oral argument is not requested unless the matter is contested.

## STATEMENT OF ISSUE TO BE DECIDED

1. Whether the Court should approve the proposed Distribution Plan.

## <u>MEMORANDUM OF POINTS AND AUTHORITY</u>

Lead Plaintiff Ognjen Kuraica ("Plaintiff"), through his counsel, respectfully submits this memorandum of law in support of his motion for entry of the Proposed Order Granting Authorization to Distribute the Net Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action"). The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") is set forth in the accompanying Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process (the "Bravata Distribution Declaration"), which is being submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS").

If entered by the Court, the Distribution Order will, among other things, (1) approve SCS's recommendations accepting and rejecting Claims submitted in the Action; and (2) direct the distribution of the Net Settlement Fund to Claimants whose Claims have been accepted as valid and approved by the Court.

## I.    <u>BACKGROUND</u>

The Stipulation entered by Plaintiffs and Defendants sets forth the terms of the settlement (the "Settlement"), which represents a complete resolution of this Action.  Pursuant to the terms of the Settlement, a cash payment of $1,375,000 was deposited in escrow for the benefit of the Settlement Class.

In accordance with the Preliminary Approval Order, SCS mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and the Proof of Claim Form ("Claim Form") (collectively, the "Notice Packet") to potential Class Members and brokers and other nominees.  Declaration of Sarah Evans Concerning (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated October 28, 2021 (ECF No. 125-1); Supplemental Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; and (B) Report on Requests for Exclusion and Objections, dated November 4, 2021 (ECF No. 129-1).  To date, SCS has mailed a Notice Packet or emailed a direct link to the Notice Packet to 149,730 potential Settlement Class

Members. Bravata Distribution Declaration at ¶ 5.  SCS received and fulfilled a total of 207 requests for the Long Notice and Claim Form from potential Settlement Class Members. *Id.* at ¶ 6.

SCS also sent the Depository Trust Company ("DTC") the Notice Packet for the DTC to publish on the Legal Notice System ("LENS") and published the Summary notice electronically on *Globe Newswire*. *Id.* at ¶¶7-8.

The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form such that it would be postmarked no later than December 29, 2021.  ECF No. 129-1, Ex. A.

SCS also created and maintained a toll-free helpline for inquiries during the course of the administration; created and maintained a settlement website and posted case-specific documents on it; caused the Summary Notice to be published; and provided, upon request, additional copies of the Notice Packet to brokers, nominees, and potential Class Members. *See* ECF No. 125-1 at ¶¶ 9-11.

On December 8, 2021 following the dissemination of the Notice to potential Settlement Class Members and the publication of the Summary Notice as provided for in the Preliminary Approval Order, the Court ordered to enter the Final Judgment (ECF No. 135), granting final approval of the Settlement as fair, reasonable, and adequate.  The Court also approved the Plan of Allocation, which was explained in the Notice sent to potential Settlement Class Members, as fair, reasonable, and adequate.  Claim Forms have now been processed and the Net Settlement Fund is ready to be distributed to Authorized Claimants.  Accordingly, Plaintiffs respectfully ask the Court to enter the Distribution Order.

## II.      CLAIMS ADMINISTRATION

As set forth in the accompanying Bravata Distribution Declaration, through May 17, 2022, SCS has received 12,388 Claim Forms, all of which have been fully processed in accordance with the Court-approved Plan of Allocation.  Bravata Distribution Declaration at ¶9.

SCS has identified 4,677 properly documented valid claims. *Id.* at ¶10(a). 4,653 of the Claims were received or postmarked on or before the Court-approved Claim submission deadline of December 29, 2021. *Id.*, Exhibit B-1.  Twenty-four (24) properly documents valid claims were

MOTION FOR DISTRIBUTION
Case No. 5:19-CV-06348-BLF                                                                                    2

submitted after the December 29, 2021 deadline to file claims for the Settlement and on or before May 17, 2022. *Id.,* Exhibit B-2.

SCS initially identified fifty-two (52) inadequately documents claims. *Id.* at ¶10(b). SCS mailed deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them an opportunity to cure. *Id.*, Exhibit C. Among these fifty-two (52) deficient claims, twenty-two (22) were successfully cured and are considered valid and recommended for approval. *Id.* The remaining thirty (30) claimants either did not respond to the deficiency notice or responded with insufficient documentation and were sent a rejection notice setting forth the reason for their deficiency. *Id.*, Exhibit D. None of the deficient claimants has objected to or contested this determination. *Id.*

In addition to the inadequately documented claims, a total of 7,681 were ineligible for one or more reasons, including: (i) having no Recognized Claims; (ii) having purchased shares outside of the Settlement Class Period; (iii) having sold shares short; (iv) having filed claims for shares that were received or transferred into an account, but not purchased; (v) having filed claims for securities other than Dropbox, Inc. common stock;  (vi) filing duplicate claims; and (vii) withdrawing from filing entity.  *Id.* at ¶10(c), Exhibit E.  SCS also mailed an ineligibility notice to each of the 7,681 claimants and none of them contested SCS's determination. *Id.*, Exhibit F.

The claims administration process is now complete, and SCS has determined that out of the 12,338 claims submitted through May 17, 2022, 4,677 are properly documented valid claims (4,653 were timely and 24 were untimely but otherwise valid).  *Id.* at ¶10(a). Plaintiffs respectfully requests that the Court approve the Claims Administrator's recommendation to accept the timely and valid claims set forth in Exhibit B-1 to the Bravata Distribution Declaration, accept the late but otherwise eligible Claims set forth in Exhibit B-2 to the Bravata Distribution Declaration, and reject those Claims listed in Exhibits D and E to the Bravata Distribution Declaration.

## III.   THE COURT SHOULD APPROVE ACCEPTANCE OF UNTIMELY BUT OTHERWISE ELIGIBLE CLAIMS

It is well settled that a district court has discretion to allow late claims to a settlement fund. *See Lemus v. H & R Block Enters., LLC*, No. C 09-03179 SI, 2013 WL 3831866, at *2 (N.D. Cal.

July 23, 2013) (citing *In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008)) ("A district court has discretion to allow late claims to a settlement fund."); *see also In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977).  Multiple circuits have held that the court maintains an inherent equitable power to "allow late-filed proofs of claim and late-cured proofs of claim." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *cf. Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1993) (recognizing that "the district court has discretion to extend a class member's time to opt out" of a class settlement). *The Manual for Complex Litigation* also recommends that "[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs." *Manual for Complex Litigation (Fourth)* § 21.662 (2004). Courts regularly permit late-filed claims for "excusable neglect" or "good cause." *See Silber*, 18 F.3d at 1455; *Gypsum*, 565 F.2d at 1128; *see also Valdez*, 289 F. App'x at 206 (noting that district court permitted late-filed claims by claimants with "plausible excuses for not filing timely"). The excusable neglect analysis involves equitable consideration, and the Court may consider factors including the danger of prejudice, the length of time delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, twenty-four (24) of the Proofs of Claim was postmarked or received after the December 29, 2021 submission deadline but were otherwise valid.  Bravata Distribution Declaration at ¶10(a) The total Recognized Loss amount for this untimely filed, but otherwise valid claim, is $612,288.12. *Id.* When the equities are balanced, it would be unfair to prevent an otherwise valid Proof of Claim from recovering from the Net Settlement Fund solely because it was submitted after the cut-off date but while claims were still being processed. *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2009 WL 803382, at *6 (E.D.N.Y. March 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement.").  Therefore, Plaintiffs respectfully request that the Court approve the twenty-four (24) untimely but otherwise valid claim listed in Exhibit B-2 of the Bravata Distribution Declaration.

MOTION FOR DISTRIBUTION
Case No. 5:19-CV-06348-BLF                                                                                              4

Bravata Distribution Declaration at ¶10(a), Exhibit B-2.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date for claims. *See In re TASER Int'l, Inc. Sec. Litig.*, No. CV-05-115-PHX-SRB, 2009 WL 10707825, at *2 (D. Ariz. July 15, 2009) ("[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" (quoting *Reports of the Conference for District Court Judges*, 63 F.R.D. 231, 262 (1973)). Accordingly, it is respectfully requested that the distribution order provide that no untimely claim received that is not already listed on Exhibit B-2 to the Bravata Distribution Declaration be accepted for any reason whatsoever.

For the foregoing reasons, as well as those set forth in the Bravata Distribution Declaration, it is respectfully requested that the Court approve SCS's administrative determinations accepting and rejecting claims.

## IV. THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND AND THOSE ADMINISTERING THE SETTLEMENT

It is also respectfully requested that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxations of the Net Settlement Fund, including Plaintiffs, Lead Counsel, Plaintiffs' damages expert, and SCS (collectively, "Released Persons"), be released and discharged from any and all claims arising out of such involvement, and all Class Members be barred from making any further claim against the Net Settlement Fund or the Released Persons beyond the amount allocated to them.

## V. DISTRIBUTION OF THE NET SETTLEMENT FUND

The Claims Administrator has now finished processing all claims. Plaintiffs request that the Court approve SCS's administrative recommendations to accept the 4,677 claims deemed acceptable (including the 24 late, but otherwise valid claims) listed in Exhibits B-1 and B-2 to the Bravata Distribution Declaration, and to reject the 7,711 claims that SCS has determined are inadequate or ineligible listed in Exhibits D and E to the Bravata Distribution Declaration.

Upon the issuance of the Court's order authorizing distribution, SCS will distribute the entire available balance of the Net Settlement Fund to Authorized Claimants, after deducting the payments previously allowed and requested herein, and after the payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees. Bravata Distribution Declaration at ¶12. Each Authorized Claimant's *pro rata* share of the Net Settlement Fund will be based on each Authorized Claimant's Recognized Claim as compared to the Total Recognized Claims of all Authorized Claimants. *Id* at ¶ 12(a). No distribution will be made on a claim where the potential distribution amount is less than $10.00 in cash. *Id*. To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Plaintiffs propose that all the distribution checks bear the notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*. at ¶ 12(b).

If there is any balance remaining in the Net Settlement Fund after nine (9) months from the initial distribution date (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel recommends that, if economically feasible, such remainder be allocated in a re-distribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who cashed their checks from the initial distribution, and who would receive at least $10.00 from such re-distribution. *Id*. at ¶ 12(c). If Lead Counsel and SCS determine that a second distribution is not feasible in light of its associated costs, the amount remaining in the Net Settlement Fund will be used for a *cy pres* award to Investor Protection Trust, a non-sectarian, non-profit Section 501(c)(3) organization(s), subject to approval by the Court. *Id.*

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Distribution Order submitted herewith.

//

//

//

//

Dated: May __, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

s/ Adam M. Apton
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff Ognjen
Kuraica and the Class*